ACCEPTED
15-25-00022-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
9/26/2025 7:45 PM
CHRISTOPHER A. PRINE
CLERK

**No. 15-25-00022-CV**

In the Court of Appeals
For the Fifteenth Judicial District
Austin, Texas

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
9/26/2025 7:45:27 PM
CHRISTOPHER A. PRINE
Clerk

CITY OF COPPELL, TEXAS; CITY OF HUMBLE, TEXAS; CITY OF DESOTO, TEXAS; CITY OF CARROLLTON, TEXAS; CITY OF FARMER'S BRANCH, TEXAS; CITY OF ROUND ROCK, TEXAS,
*Appellants/Cross-Appellees,*

v.

KELLY HANCOCK, ACTING COMPTROLLER OF PUBLIC ACCOUNTS OF THE STATE OF TEXAS,
*Appellee/Cross-Appellant.*

On Appeal from the 201st Judicial District Court, Travis County, Texas
Cause No. D-1-GN-21-003198; consolidated with D-1-GN-21-003203

## AMENDED APPELLEE/CROSS-APPELLANT'S BRIEF

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

STEVEN ROBINSON
Division Chief, Tax Litigation Division

KYLE PIERCE COUNCE
Deputy Division Chief
State Bar No. 24082862
Kyle.Counce@oag.texas.gov
Office of the Attorney General
Tax Litigation Division
P. O. Box 12548
Austin, Texas 78711-2548
T: (512) 463-3112
F: (512) 478-4013

Counsel for Appellee/Cross-Appellant

Oral Argument Requested

**Appellants/Cross-Appellees:**
City of Coppell, Texas
City of Humble, Texas
City of DeSoto, Texas
City of Carrollton, Texas
City of Farmer's Branch, Texas

**Appellate and Trial Counsel for Appellants/Cross-Appellees:**
James B. Harris, Jim.Harris@hklaw.com
Stephen F. Fink, Stephen.Fink@hklaw.com
Reed C. Randel, Reed.Randel@hklaw.com
Richard B. Phillips, Jr., Rich.Phillips@hklaw.com
HOLLAND & KNIGHT LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201
(214) 964-9500

Brandon L. King, Brandon.King@hklaw.com
HOLLAND & KNIGHT LLP
98 San Jacinto Boulevard, Suite 1900
Austin, Texas 78701

**Appellees:**
City of Round Rock, Texas

**Appellate and Trial Counsel for Appellees:**
Cindy Olson Bourland, Bourland@bourlandlaw.com
BOURLAND LAW FIRM, PC
P.O. Box 546
Round Rock, Texas 78680

Bryan Dotson, Bryan.Dotson@chamberlainlaw.com
CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS, & AUGHTRY, P.C.
112 East Pecan Street, Suite 1450
San Antonio, Texas 78205
(210) 278-5844

**Appellee/Cross-Appellant:**
Kelly Hancock, Acting Comptroller of Public Accounts of the State of Texas

**Appellate and Trial Counsel for Appellee/Cross-Appellant:**
Ken Paxton
Brent Webster
Ralph Molina
Austin Kinghorn
Steven Robinson
Kyle Pierce Counce (lead counsel)
Kyle.Counce@oag.texas.gov
Peter Berquist
Peter.Berquist@oag.texas.gov
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-3112

**Former Counsel no longer with Office of the Attorney General:**
Grant Dorfman (currently employed by the Texas Business Court, Eleventh
    Division)
James Lloyd (currently employed by the Office of the Vice President of the United
    States)
Shawn Cowles (currently employed by Dhillon Law Group, Inc.)
Alison Andrews (currently employed by Jackson Walker LLP)
Brittney Johnston (currently employed by McLane
Deborah Rao (currently employed by the State Office of Risk Management)
Matthew T. Kennedy (currently employed by Covenant Clearinghouse, LLC)
Ray Langenberg (Specially Deputized trial counsel, currently employed by the
    Office of the Comptroller of Public Accounts of Texas)

**Former Counsel no longer with Tax Litigation Division:**
Amanda Romenesko (currently employed by the Opinion Committee, Office of the
    Attorney General of Texas)

# TABLE OF CONTENTS

Identity of Parties and Counsel ................................................................i

Index of Authorities .............................................................................v

Record References .................................................................................x

Statement of the Case .........................................................................x

Statement Regarding Oral Argument ................................................x

Issues Presented ................................................................................xi

Statement of Facts ..............................................................................1

    I.      The Parties ...........................................................................1

    II.     Background on Texas local sales and use tax ......................1

    III.   Promulgation of Comptroller Rule 3.334 .............................2

    IV.   Procedural History ...............................................................3

Summary of the Argument .................................................................5

Argument ...............................................................................................7

    I.      Rule 3.334 is a valid exercise of the Comptroller's rulemaking authority because it does not contravene the statutes .........................8

        A.    Rule 3.334(a)(9) defines the term "fulfill" as used within the entire rule .......................................................12

        B.    Rule 3.334(a)(18) defines the phrase "place of business of the seller" as used within the entire rule .................14

        C.    Rule 3.334(b)(5) clarifies what is and is not a "place of business of the seller." ...........................................17

        D.    Rule 3.334(c) does not contravene the Tax Code ....................19

            1.    The rule clarifies that it applies to "all sellers" ..............19

            2.    The rule is not counter to the statutory scheme of the Tax Code ...........................................22

            3.    The trial court improperly overturned language which no party disputed ...............................................23

    II.     The Comptroller's notice complied with the APA ...........................24

A.     The Comptroller's Fiscal Note substantially complied with the APA .................................................................25

      1.     The rulemaking record shows substantial compliance.............................................................26

      2.     The Fiscal Note requirement should not be read to require more than is possible.........................................29

B.     The Comptroller's Adverse Economic Effect Notice substantially complied with the APA.......................................31

III.     The Comptroller substantially complied with the APA's reasoned justification requirement ......................................33

A.     The Comptroller's rulemaking record is exhaustive in its factual summary and rational connection ...............................35

      1.     The Comptroller summarized the factual bases for the Rule .................................................................36

      2.     The Comptroller demonstrated a rational connection between the factual bases and the rule as adopted..............................................................37

      3.     The Comptroller's rational connection was not arbitrary and capricious.............................................40

          a.     The Comptroller considered only the Legislatively mandated factors ...........................41

          b.     The Comptroller did not reach a completely unreasonable result ...........................................44

B.     The Comptroller gave the reasons why the agency disagrees with party submissions and proposals ......................46

Conclusion and Prayer ........................................................................49

Certificate of Compliance ...................................................................51

Index of Appendices ...........................................................................53

# Index of Authorities

**Cases:**                                                                       **Page(s)**

*Bullock v. Hewlett–Packard Co.*,
628 S.W.2d 754 (Tex.1982) ........................................................ 41

*Dall. Cnty. Bail Bond Bd. v. Stein*,
771 S.W.2d 577 (Tex. App.—Dallas 1989, writ denied) ............................. 11

*DuPont Photomasks, Inc. v. Strayhorn*,
219 S.W.3d 414 (Tex. App.—Austin 2006, pet. denied) ............................ 19

*Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*,
518 S.W.3d 318 (Tex. 2017)........................................................22

*Castleman v. Internet Money, Ltd.*,
546 S.W.3d 684 (Tex. 2018) .......................................................22

*City of El Paso v. Pub. Util. Comm'n of Tex.*,
883 S.W.2d 179 (Tex. 1994) .......................................................44

*Combs v. City of Webster*,
311 S.W.3d 85 (Tex. App.—Austin 2009, pet. denied) ...............................1

*Farm & Ranch Freedom All. v. Tex. Dep't. of Agric.*,
No. 03-23-00459-CV, 2025 WL 994190 (Tex. App.—Austin
Apr. 3, 2025, no pet.) (mem. op.).............................................. 14, 38, 41, 44

*First Am. Title Ins. Co. v. Combs*,
258 S.W.3d 627 (Tex. 2008) ........................................................9

*GEO Group, Inc. v. Hegar*,
709 S.W.3d 585 (Tex. 2025).......................................................14

*Gerst v. Nixon*,
411 S.W.2d 350 (Tex. 1966) .......................................................44

*Gulf Coast Coal. of Cities v. Public Util. Coman*,
161 S.W.3d 706, 714 (Tex. App.—Austin 2005, no pet.) ....................... 36, 37

*Harlingen Family Dentistry, P.C. v. Texas Health & Human Servs. Comm'n*,
452 S.W.3d 479 (Tex. App.—Austin 2014, pet. dism'd)..............................9

*Johnson v. City of Fort Worth,*

    774 S.W.2d 653 (Tex.1989) ............................................................. 10

*Lambright v. Texas Parks & Wildlife Dep't,*

    157 S.W.3d 499 (Tex. App.—Austin 2005, no pet.) ............................*passim*

*McCarty v. Tex. Parks & Wildlife Dep't,*

    919 S.W.2d 853 (Tex. App.—Austin 1996, no writ) ......................................8

*Methodist Hosps. of Dallas v. Tex. Indus. Accident Bd.,*

    798 S.W.2d 651 (Tex. App.—Austin, 1990, writ dism'd w.o.j.) ...... 24, 29, 34

*Molinet v. Kimbrell,*

    356 S.W.3d 407 (Tex. 2011) ...........................................................30

*Nat'l Ass'n of Indep. Insurers v. Tex. Dep't of Ins.,*

    925 S.W.2d 667 (Tex. 1996) ...........................................................26

*Nat'l Liab. & Fire Ins. Co. v. Allen,*

    15 S.W.3d 525 (Tex. 2000)..............................................................10

*Patient Advocates of Tex. v. Texas Workers Comp. Comm'n,*

    80 S.W.3d 66 (Tex. App.—Austin 2002), aff'd in part, rev'd in part,

    136 S.W.3d 643 (Tex. 2004)....................................................... 34, 35

*Perry Homes v. Strayhorn,*

    108 S.W.3d 444 (Tex. App.—Austin 2003, no pet.) .................................18

*Reliant Energy, Inc. v. Public Util. Comm'n of Tex.,*

    62 S.W.3d 833 (Tex. App.—Austin 2001, no pet.)................................*passim*

*R.R. Comm'n of Tex. v. ARCO Oil & Gas Co.,*

    876 S.W.2d 473 (Tex. App.—Austin 1994, writ denied) ..................35, 38, 47

*R.R. Comm'n of Tex. v. Lone Star Gas Co., a Div. of Enserch Corp.,*

    844 S.W.2d 679 (Tex. 1992) ........................................................ 11

*R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water,*

    336 S.W.3d 619 (Tex. 2011)............................................................7, 9

*State v. Pub. Util. Comm'n of Tex.,*

    883 S.W.2d 190 (Tex. 1994)......................................................... 11

*State Bd. of Ins. v. Deffebach*,
     631 S.W.2d 794 (Tex. App.—Austin 1982, writ ref'd n.r.e.) ................ 24, 26

*State of Texas Office of Pub. Util. Counsel v. Public Util. Comm'n of Texas*,
     131 S.W.3d 314 (Tex. App.—Austin 2004, pet. denied) ....................... *passim*

*Statewide Convoy Transps. Inc. v. R.R. Comm'n of Tex.*,
     753 S.W.2d 800 (Tex. App.—Austin 1988, no writ) ................................. 41

*Tex. Ass'n of Psychological Assocs. v. Tex. State Bd. of Examiners of Psychologists*,
     439 S.W.3d 597 (Tex. App.—Austin 2014, no pet.) ...................................... 8

*Tex. Medical Ass'n v. Texas Workers Compensation Comm'n*,
     137 S.W.3d 342 (Tex. App.—Austin 2004) ................................ 38, 40–41, 46

*Tex. Mun. Power Agency v. Pub. Util. Comm'n*,
     253 S.W.3d 184 (Tex. 2007) ...................................................................... 11

*Tex. State Examiners of Marriage & Fam. Therapists v. Tex. Med. Ass'n*,
     511 S.W.3d 28, 33 (Tex. 2017) ..................................................................... 8

*Tex. Workers' Comp. Comm'n v. Patient Advocates*,
     136 S.W.3d 643 (Tex. 2004) ...................................................................... 26

*TGS–NOPEC Geophysical Co. v. Combs*,
     340 S.W.3d 432 (Tex. 2011) ......................................................... 10, 11, 14

*Unified Loans, Inc. v. Pettijohn*,
     955 S.W.2d 649 (Tex. App.—Austin 2007, no pet.) .............................. 31, 32

**Statutes and Rules:**

34 Tex. Admin. Code:
     § 3.334 ...................................................................................... *passim*
     § 3.334(a)(9) ............................................................................. *passim*
     § 3.334(a)(17) ................................................................................... 15
     § 3.334(a)(18) ............................................................................ *passim*
     § 3.334(b)(1) ...................................................................................... 23
     § 3.334(b)(1)(A) ................................................................................ 12
     § 3.334(b)(5) ............................................................................. *passim*

§ 3.334(c)................................................................*passim*

§ 3.334(c)(1) ......................................................... 12

§ 3.334(c)(7) ......................................................... 12, 23

Tex. Gov't Code:

§§ 2001.001–2001.091 ...........................................8

§ 2001.023 ..............................................................24

§ 2001.024 ..........................................................*passim*

§ 2001.024(a)(4) .................................................. 25, 26

§ 2001.033 ..............................................................33

§ 2001.033(a)(1)....................................................34

§ 2001.033(a)(1)(A) ...............................................34

§ 2001.033(a)(1)(B) .............................................35, 37

§ 2001.033(a)(1)(C) ............................................46, 48, 49

§ 2001.035 ..............................................................30

§ 2001.035(a).................................................. 24, 31, 34, 37

§ 2001.035(c).................................................. 26, 38, 46

§ 2006.002............................................................ 25, 31, 33

§ 2006.002(c) ......................................................31, 32

Tex. Tax Code:

§ 111.002..............................................................*passim*

§ 111.002(a) ......................................................... 13

§ 151.0595(j) .................................................... 11, 41, 42

§ 151.107 .............................................................. 16

§ 321.001 et seq. ................................................. 1

§ 321.002(a)(3)(A).............................................*passim*

§ 321.002(a)(3)(B) ................................................ 15

§ 321.002(a)(3)(C) ...............................................15, 17

§ 321.203 .............................................................*passim*

§ 321.203(a) ..........................................................2

§ 321.203(b).......................................................15, 20, 21

§ 321.203(c-1) ........................................................................... 13

§ 321.203(c) .............................................................................. 15

§ 321.203(e) ..............................................................................20

§ 321.303..................................................................................16

§ 321.306...........................................................................*passim*

§ 321.312 ...................................................................................2

§ 321.502 ...................................................................................2

§ 322.203 ..........................................................................*passim*

§ 323.306 ..........................................................................*passim*

## Other Authorities:

45 Tex. Reg. 98–115 (Jan. 3, 2020) .......................................................2

45 Tex. Reg. 3499–518 (May 22, 2020)................................................2

47 Tex. Reg. 6158–74 (Sept. 23, 2022) ...............................................3

48 Tex. Reg. 6340–50 (Oct. 27, 2023)................................................3

49 Tex. Reg. 2440–57 (Apr. 29, 2024) .......................................*passim*

49 Tex. Reg. 4797–4808 (June 28, 2024) ...................................*passim*

Tex. Parks & Wild. Code § 77.007(b)(1)–(6)...................................42

Tex. Util. Code § 39.202 ...................................................................42

Ronald Beal, *The Scope of Judicial Review of Agency Rulemaking: The*
    *Interrelationship of Legislating and Rulemaking in Texas*, 39 Baylor L.
    Rev. 597 (1987) .................................................................................24

## RECORD REFERENCES

"CR" refers to the clerk's record. "RR" refers to the court reporter's record, with the volume before RR and the page number after RR.

## STATEMENT OF THE CASE

*Nature of the Case:* This litigation was brought by cities challenging the validity of amendments to Comptroller Rule 3.334 regarding the sourcing of local sales and use taxes to local jurisdictions.

*Trial Court:* The Honorable Karin Crump, Judge of the 250th Civil District Court of Travis County, Texas.

*Disposition:* After a bench trial, the trial court rendered judgment enjoining the Comptroller from enforcing portions of Rule 3.334 and remanding those portions to the Comptroller for further consideration. CR 2799. The judgement also denied claims for relief of some of the plaintiffs. CR 2799. As a result, some of the city plaintiffs have appealed and the Comptroller has cross-appealed. CR 2854–58; 2859–64.

## STATEMENT REGARDING ORAL ARGUMENT

The Comptroller requests oral argument. This appeal presents issues of statutory interpretation and administrative law that are significant to the development of Texas jurisprudence, and will otherwise determine where a sale or use is "consummated" for purposes of sourcing local sales and use taxes. Oral argument will aid the Court in addressing the interplay between the consummation statutes and the agency's rulemaking authority to implement such statutes.

## ISSUES PRESENTED

The Texas Comptroller of Public Accounts began procedures to revise Comptroller Rule 3.334, which governs the place of consummation of a sale for purposes of Texas sales and use tax. *See* 34 Tex. Admin. Code § 3.334; 49 Tex. Reg. 2440-57 (Apr. 19, 2024); 4797-08 (June 28, 2024). Plaintiffs sued under the APA for declarations that the Comptroller improperly promulgated Rule 3.334 by violating rulemaking provisions of the Texas APA. Plaintiffs also sought declarations that Rule 3.334 violated various sales tax statutes. The trial court ruled that the Comptroller had violated the APA and that Rule 3.334 contravened existing statutes and rendered injunctions against enforcement of the rule. The issues presented are:

1. Whether the Comptroller substantially complied with the notice requirements in the APA.

2. Whether the Comptroller substantially complied with the reasoned justification requirement in the APA.

3. Whether Rule 3.334 contravened Chapter 151 and sections 321.203 and 323.203 of the Texas Tax Code.

4. Whether Rule 3.334(a)(18), (b)(5), and (c) contravene sections 321.002(a)(3)(A), 321.203, and 323.203 of the Texas Tax Code.

5. Whether Rule 3.334(c) contravenes the statutory schemes for determining where a sale is consummated under sections 321.203, and 323.203 of the Texas Tax Code.

STATEMENT OF FACTS

I.    The Parties

This is an appeal of a consolidated case where two different sets of municipalities sued the Comptroller to invalidate an administrative rule. First Appellant, Cross-Appellee and plaintiff below, are the Cities of Coppell, Humble, DeSoto, Carrollton, and Farmers Branch, Texas (collectively, "Coppell"). The second plaintiff at the trial court and second Cross-Appellee is the City of Round Rock ("Round Rock", and together with Coppell, the "Plaintiff Cities"). Cross-Appellant, Appellee, and defendant below, is Glenn Hegar, in his Official Capacity as Comptroller of Public Accounts of the State of Texas (the "Comptroller"). Comptroller Hegar resigned on June 30, 2025. Kelly Hancock is the Acting Texas Comptroller of Public Accounts and was automatically substituted into this appeal on July 29, 2025.

II.    Background on Texas local sales and use tax

The Plaintiff Cities are all Texas municipalities subject to the Municipal Sales and Use Tax Act. Tex. Tax Code § 321.001 et seq. Municipal sales tax is imposed on the sale of a taxable item within the municipality in which the sale is "consummated." *Id.* § 321.203. The statutes and administrative rule for determining where a sale is consummated is the core of this case. The term is not explicitly defined in the Texas Tax Code, but the location of consummation is the subject of section 321.203. *Id.* § 321.203; *Combs v. City of Webster*, 311 S.W.3d 85, 95 (Tex. App.—Austin 2009, pet. denied). Where a sale is consummated is relevant to the municipalities in this appeal because that determines which municipality will

1

receive the portion of sales tax that the Comptroller collects and then remits back to cities and other local taxing jurisdictions. *See* Tex. Tax Code §§ 321.203(a), 321.312, 321.502.

The Comptroller promulgated rules that affect consummation determinations of both municipal and county sales taxes. This dispute only involves the consummation provisions of the Municipal Sales Tax Act as found in Texas Tax Code chapter 321, with occasional reference to Chapter 323, the County Sales and Use Tax Act. Most relevant to this dispute is Texas Tax Code section 321.203, which governs consummation of sale for sales tax in municipalities.

## III.    Promulgation of Comptroller Rule 3.334

On January 3, 2020, the Comptroller initiated rulemaking to update its local sales and use tax rule. 45 Tex. Reg. 98-102 (Jan. 3, 2020). The rulemaking would amend Chapter 34 of the Texas Administrative Code section 3.334 ("Rule 3.334"). *Id.* Rule 3.334 governs local sales and use taxes, including determinations of where a sale is consummated for local sales tax purposes. The Comptroller stated that the amendments to Rule 3.334 were to clarify provisions concerning, among others: fulfillment, temporary places of business, places of business receiving more than three orders, traveling salespersons, internet orders, and in-person orders. 45 Tex. Reg. 98 (Jan. 3, 2020). It also reorganized Rule 3.334 for clarity and readability. *Id.* Other changes were made which are not at issue in this appeal.

After the notice and comment period, the Comptroller finally adopted the 2020 version of Rule 3.334. 45 Tex. Reg. 3509 (May 22, 2020). The 2020 version of Rule 3.334 was scheduled to take effect on October 1, 2021. The Plaintiff Cities filed

suit to halt its implementation. The Comptroller repealed, revised, and reamended Rule 3.334 several times between 2021 and 2024.[1] Only the April 2024 amendment, which was adopted in June 2024 (49 Tex. Reg. 4797–808 (June 28, 2024)), is at issue in this appeal.

## IV. Procedural History

Coppell filed its Original Petition on July 12, 2021. CR 6. Round Rock also filed its Original Petition on July 12, 2021. The cases were consolidated on July 13, 2022. CR 1251. Both Coppell and Round Rock amended their petitions, with the final amendments on September 11, 2024. CR 2396; CR 2437. Between the filing of the Original Petitions and the final trial on the merits, the Plaintiff Cities and the Comptroller agreed to a series of temporary injunctions until the court rendered a final judgment. CR 121; 123; 1248; 1338; 1340; 1342; 1344; 1745. Each party attempted several summary judgment motions, none of which are subject to appeal.[2] The version of Rule 3.334 that went to trial and is on appeal in this case was initially published on April 19, 2024 (the "April 2024 Notice") and was adopted on June 28, 2024 (the "June 2024 Order"). 49 Tex. Reg. 2440–57; 49 Tex. Reg. 4797–808.[3]

The case was called for trial on October 14, 2024, in the 250th District Court

---

[1] Rule 3.334 was amended in September 2022 (47 Tex. Reg. 6158–74 (Sept. 23, 2022)), October 2023 (48 Tex. Reg. 6340–50 (Oct. 27, 2023)), and April 2024 (49 Tex. Reg. 2440-57 (Apr. 29, 2024)).

[2] The trial court granted Plaintiff Cities' Partial Motions for Summary Judgment on August 29, 2022. CR 1336. The order remanded Rule 3.334 to the Comptroller "for revision or readoption through established procedures within a reasonable time." CR 1337.

[3] In this brief, the Comptroller will cite to the Texas Register for the April 2024 Notice and the June 2024 Order for readability. Both are available in the Clerk's Record and as trial court exhibits in the Reporter's Record and are included in the Appendix. The April 2024 Notice is at CR 2532–50 and 12 RR 874–91. The June 2024 Order is at CR 2551–62 and 10 RR 301–12.

of Travis County, Judge Karin Crump presiding. 6 RR 1. After a bench trial on the merits, the trial court took the matter under advisement and rendered a judgment on December 3, 2024. CR 2797. The judgment was mixed. A portion of the judgment was in favor of the Plaintiff Cities, with the court ruling that:

1.      The Comptroller did not substantially comply with the notice requirements under the APA;

2.      The Comptroller did not substantially comply with the reasoned justification requirement under the APA;

3.      34 TAC § 3.334(a)(9) contravenes existing statutes by adding a definition at the agency level that the Legislature has not defined in Chapter 151 of the Texas Tax Code and for which Sections 321.203 and 323.203 already provide a detailed statutory scheme for determining where a sale of a taxable item is consummated;

4.      34 TAC 3.334(a)(18), (b)(5), and (c) contravene specific statutory language set forth in Texas Tax Code sections 321.002(a)(3)(A), 321.203, and 323.203; and

5.      34 TAC 3.334(c) [(c)(1) and (c)(2) inclusive] contravenes the statutory schemes for determining where a sale is consummated, under Sections 321.203 and 323.203.

CR 2798. It is these five rulings that the Comptroller appeals.

The Court made an explicit ruling against Coppell (on an issue it raised separately from Round Rock). CR 2798. The remainder of the judgment was in favor of the Comptroller, with the Plaintiff Cities being denied all other relief. CR 2798.

Both Coppell and the Comptroller moved for the trial court to modify the judgment. CR 2800; 2816. The trial court denied the motions. CR 2840; 2841. Coppell requested Findings of Fact and Conclusions of Law, which it later amended

to only Conclusions of Law. CR 2842; 2848. The trial court issued Conclusions of Law on December 30, 2024. CR 2846. The Conclusions of Law are virtually identical to the judgment language. CR 2846. Coppell timely filed a Notice of Appeal on March 3, 2025. CR 2854. The Comptroller also timely filed a Notice of Appeal on March 17, 2025. CR 2859.

## SUMMARY OF THE ARGUMENT

This is an appeal of a bench trial where the trial court invalidated and enjoined parts of Comptroller Rule 3.334. The standard of review is de novo. The Comptroller brings five issues, which are divided into three buckets: (1) Rule 3.334 does not contravene the Texas Tax Code; (2) the Comptroller's rulemaking complied with the APA's notice requirements; and (3) the Comptroller's rulemaking complied with the APA's reasoned justification requirement. This Court should reverse the judgment of the trial court and render judgment in favor of the Comptroller.

I. The trial court wrongly invalidated four parts of Rule 3.334. An administrative rule is invalid under the APA if it contravenes specific statutory language, runs counter to the objectives of the statute, or imposes burdens inconsistent with the statute. Rule 3.334(a)(9) defines the word "fulfill", which is used throughout Rule 3.334 but not used within the statute; the definition is consistent with the statutory language. Rule 3.334(a)(18) defines the phrase "place of business of the seller," and offers examples of what does not meet the definition. The definition expounds on the legislature's partial definition of the phrase, and support for the Comptroller's definition comes when the statute is read as a whole, not in isolation. Rule 3.334(b)(5) clarifies that a computer that operates an automated

5

shopping cart on a website is not a "place of business" for purposes of sales tax consummation. This rule is well within the Legislature's broad grant of rulemaking authority to the Comptroller. Rule 3.334(c) clarifies that the rule applies to "all sellers engaged in business in Texas." This comports precisely with the statute's language and avoids providing special treatment to any sellers.

II. The trial court wrongly found that the Comptroller did not comply with the APA's notice requirements. The APA requires administrative agencies to provide certain notices to the public when considering a rule. Two were at issue in the trial court: the "Fiscal Note" and the "Adverse Economic Impact Notice" requirements. The Legislature's intent in requiring these notices was to give interested parties sufficient notice of a rule's content to permit them to see if they need to participate in the rulemaking process. Whether an agency followed the APA is reviewed under a substantial compliance standard. The Comptroller's Fiscal Note did more than track the statutory language; it gave data and analysis sufficient to put cities and taxpayers on notice of potential financial implications of Rule 3.334. And the Comptroller demonstrated that compliance to the standard the Plaintiff Cities requested would be impossible. The Comptroller's Adverse Economic Impact Notice provided everything required by the statute and more; the Plaintiff Cities simply did not like the Comptroller's conclusions. The Comptroller substantially complied with both the Fiscal Note and Adverse Economic Impact Notice requirements.

III. The trial court wrongly found that the Comptroller did not comply with the APA's reasoned justification requirement. The APA requires administrative agencies to provide a reasoned justification when adopting rules. Substantial

6

compliance is again the standard for review, and the courts are limited to the face of the rulemaking itself. Reasoned justification requires: an agency to summarize the factual bases of the rule, demonstrate a rational connection between the factual bases and the rule, and give reasons why the agency disagreed with comments received during rulemaking.

The Comptroller satisfied each prong. The Comptroller exhaustively gave the factual bases that lead it to adopt the rule, primary amongst them to provide clarity in how sales tax consummation works. Second, a rational connection will not substantially comply with the APA if it was arbitrary and capricious. But a review of the Comptroller's rulemaking record reveals that the rule is a reasonable means to a legitimate objective, and the Comptroller considered only those factors the Legislature required it to consider. And third, the Comptroller gave reasons why it disagreed with each submission opposed to adoption of the rule. The Comptroller demonstrated its substantial compliance with the reasoned justification requirement.

## ARGUMENT

"The gravamen of this dispute . . . is [the Comptroller's] construction of a statute it is charged with administering. The construction of a statute is a question of law [courts] review de novo." *R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011).

## I.  Rule 3.334 is a valid exercise of the Comptroller's rulemaking authority because it does not contravene the statutes.

The Court should reverse the lower court's decision and render judgment in favor of the Comptroller because Rule 3.334 is valid in its entirety under the APA.[4] With a rule validity challenge, the rule is presumed to be valid, and Plaintiff Cities bear the burden of showing it is not. *See, e.g.*, *Tex. State Bd. Of Examiners of Marriage & Family Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 33 (Tex. 2017); *McCarty v. Tex. Parks & Wildlife Dep't*, 919 S.W.2d 853, 854 (Tex. App.—Austin 1996, no writ).

To establish a rule's invalidity, the Plaintiff Cities must demonstrate that the challenged provisions (1) contravene specific statutory language; (2) run counter to the general objective of the statute; or (3) impose additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions. *Tex. Ass'n of Psychological Associates. v. Tex. State Bd. of Examiners of Psychologists*, 439 S.W.3d 597, 603 (Tex. App.—Austin 2014, no pet.). In analyzing a challenged agency rule, a court must "recognize that the Legislature intends an agency created to centralize expertise in a certain regulatory area be given a large degree of latitude in the methods it uses to accomplish its regulation function." *Id.* (internal quotation marks omitted). Further, "[w]hen conferring a power upon an agency, the Legislature also impliedly intends that the agency have whatever powers are reasonably necessary to fulfill its express functions or duties, and the Legislature is not required to include every specific detail or anticipate all [unforeseen]

---

[4] As used herein, "APA" and "Texas APA" refer to the Administrative Procedure Act, codified in Chapter 2001 of the Texas Government Code, which governs rulemaking, contested case procedures, and judicial review of state agency actions. *See* Tex. Gov't Code §§ 2001.001–2001.091.

circumstances when enacting an agency's authorizing statute." *Id.* (internal quotation marks omitted).

An agency's interpretation of a statute that it is charged with enforcing its entitled to "serious consideration," as long as the agency's interpretation is reasonable and "does not contradict the plain language of the statute." *See*, *e.g.*, *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008) (internal quotation marks omitted). As the Supreme Court has explained, "we need not consider whether [the agency's] construction is the only—or the best—interpretation in order to warrant our deference." *Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d at 628.

The Plaintiff Cities failed to carry their burden to show that any subsection of Rule 3.334 that the lower court ruled on (1) contravenes specific statutory language, (2) is counter to the statute's general objectives, or (3) imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions. *See Harlingen Family Dentistry, P.C. v. Tex. Health & Human Services Comm'n*, 452 S.W.3d 479, 482 (Tex. App.—Austin 2014, pet. dism'd); *State, Office of Pub. Util. Counsel v. Pub. Util. Comm'n of Tex.*, 131 S.W.3d 314, 321 (Tex. App.— Austin 2004, pet. denied).

The court below determined that: (1) Rule 3.334(a)(9) contravenes sections 321.203 and 323.203 of the Tax Code which provide for where a sale of a taxable item is consummated; (2) Rules 3.334(a)(18), (b)(5), and (c) contravene "specific statutory language set forth in" sections 321.002(a)(3)(A), 321.203, and 323.203 of the Tax Code; and (3) Rule 3.334(c) contravenes the statutory schemes for determining

where a sale is consummated under sections 321.203 and 323.203 of the Tax Code. CR 2846–47. The trial court repeated these rulings verbatim in its Conclusions of Law. CR 2846. The trial court then enjoined enforcement of each of the rules and remanded them to the Comptroller for further consideration or correction.

Generally, matters of statutory construction are questions of law for courts to decide and, therefore, are subject to de novo review. *See Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex. 1989). When construing a statute, the court's objective is to ascertain and effectuate the Legislature's intent. *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000). The court first reviews the statute's words to discern intent. *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). An undefined term in a statute is typically assigned its ordinary meaning unless a more precise definition is required or dictated by the context of the statute. *Id.*

The Legislature vests in the Comptroller the authority to adopt rules that do not conflict with the laws of this state, the constitution of this state, or the constitution of the United States for the enforcement of the relevant provisions on the collection of taxes and other revenues. Tex. Tax Code § 111.002. Specifically, as to local sales and use taxation, the Comptroller has the authority to adopt reasonable rules that are consistent with the relevant chapters for the administration, collection, reporting, and enforcement of the chapters. Tex. Tax Code §§ 321.306, 322.203, 323.306.

The Legislature did not impose stronger restrictions for the Comptroller to adopt rules, as is seen in some other delegation statutes. *Compare Reliant Energy, Inc. v. Pub. Util. Comm'n of Tex.*, 62 S.W.3d 833, 835 n.1, 841 (Tex. App—Austin 2001, no

pet.), *with* Tex. Tax. Code §§ 111.002, 151.0595(j), 321.306, 322.203, *and* 323.306. Thus, so long as the Rules do not conflict with the laws or Constitution of Texas, or the United States Constitution, and are consistent with the Texas Tax Code, they should be affirmed by this Court.

While "[a]n agency's rules must comport with the agency's authorizing statute … the Legislature does not need to include every specific detail or anticipate all unforeseen circumstances." *State Office of Pub. Util. Counsel*, 131 S.W.3d at 321 (citing *R.R. Comm'n of Tex. v. Lone Star Gas Co., a Div. of Enserch Corp.*, 844 S.W.2d 679, 689 (Tex. 1992)). Likewise, "[i]n ascertaining the scope of an agency's authority, [the court] give[s] great weight to the agency's own construction of a statute." *Tex. Mun. Power Agency v. Pub. Util. Comm'n*, 253 S.W.3d 184, 192 (Tex. 2007) (citing *State v. Pub. Util. Comm'n of Tex.*, 883 S.W.2d 190, 196 (Tex. 1994)). By vesting the Comptroller with the power to make rules and regulations necessary to carry out the enforcement of the provisions of the Tax Code, the Legislature foreclosed the argument that it intended to spell out every detail of tax regulation. *See* Tex. Tax Code §§ 111.002, 321.306, 322.203, 323.306; *State Office of Pub. Util. Counsel*, 131 S.W.3d at 321; *Dall. Cnty. Bail Bond Bd. v. Stein*, 771 S.W.2d 577, 580 (Tex. App.—Dallas 1989, writ denied).

Moreover, the Comptroller's interpretation of the consummation statutes, as the administrative agency charged with enforcing the statutes, is entitled to deference by courts unless it is plainly erroneous or inconsistent with the language of the statute. *See TGS-NOPEC*, 340 S.W.3d at 438. Where there is vagueness, ambiguity,

11

or room for policy determinations in a statute, as there is here, courts defer to the agency's interpretation. *Id.*

### A. Rule 3.334(a)(9) defines the term "fulfill" as used within the entire rule.

Rule 3.334(a)(9) defines the term "fulfill," which is used elsewhere in Rule 3.334. *See, e.g.*, Rule 3.334(c)(1); (c)(7). It also limits the definition by providing what "fulfill" does not mean, such as tracking an order. The challenged portion of Comptroller's Rule 3.334(a)(9), as adopted in the June 2024 Order, reads:

> (9) Fulfill—To complete an order by transferring possession of a taxable item to a purchaser, or to ship or deliver a taxable item to a location designated by the purchaser. The term does not include receiving or tracking an order, determining shipping costs, managing inventory, or other activities that do not involve the transfer, shipment, or delivery of a taxable item to the purchaser or a location designated by the purchaser.

49 Tex. Reg. 2449 (Apr. 19, 2024). Round Rock contended in the trial court that Rule 3.334(a)(9) contravened the Texas Tax Code by "contradicting the language of the Tax Code and its overall purposes and structure." CR 2465. Round Rock complained that the Legislature did not use the terms "fulfill" or "fulfillment" and the Rule was an attempt by the Comptroller to substitute "fulfill" in place of "consummation," because those terms "do not appear in Chapter 321 of the Tax Code. CR 2466. Coppell specifically did not challenge Rule 3.334(a)(9).[5]

The trial court rendered judgment that Comptroller Rule 3.334(a)(9) contravened "existing statutes by adding a definition at the agency level that the

---

[5] In Coppell's Trial Brief, Coppell stated that the offending sections in the 2024 Rule—the only rule on trial—were 34 Tex. Admin. Code §§ (a)(18), (b)(1)(A), and (c)(7). CR 2683 n.1. The statute is not referenced in Coppell's live Petition. To the extent the trial court invalidated Rule 3.334(A)(9) on behalf of Coppell, it erred.

Legislature has not defined in Chapter 151 of the Texas Tax Code and for which Sections 321.203 and 323.203 already provide a detailed statutory scheme for determining where a sale of a taxable item is 'consummated'" CR 2798.

Rule 3.334(a)(9) does not contravene Texas Tax Code sections 321.203 or 323.203. The Rule is consistent with the statutory language because Texas Tax Code Chapter 321 and 323 do not use the term "fulfill," thus Rule 3.334 does not redefine or contradict the Tax Code. Instead, Rule 3.334(a)(9) uses "fulfill" as a single-word descriptor for the acts that qualify a location to be a "place of business," which is consistent with the following language in the Tax Code:

> (c-1) If the retailer has more than one place of business in this state and Subsection (c) does not apply, the sale is consummated at the place of business of the retailer in this state:
>
> (1) from which the retailer ships or delivers the item, if the retailer ships or delivers the item to a point designated by the purchaser or lessee; or
>
> (2) where the purchaser or lessee takes possession of and removes the item, if the purchaser or lessee takes possession of and removes the item from a place of business of the retailer.

Tex. Tax Code § 321.203(c-1). The text of Rule 3.334(a)(9) also provides examples of specific acts that do not qualify as fulfilling an order and thus will not qualify as consummation under Tax Code section 321.203. 49 Tex. Reg. 4801–02 (June 28, 2024). No direct commentary was made by the Plaintiff Cities or others that took part in the rulemaking process as to the substance of section (a)(9).

The Legislature permits the Comptroller to "adopt rules that do not conflict with the laws of this state." Tex. Tax Code § 111.002(a). The Supreme Court of

Texas has recognized the breadth of that mandate just this past year, writing "when the Tax Code's directives are not decisive, the Comptroller's rules may provide further guidance so long as they are reasonable and consistent with state and federal law." *GEO Group, Inc. v. Hegar*, 709 S.W.3d 585, 591 (Tex. 2025) (citing *TGS-NOPEC*, 340 S.W.3d at 438). This must include defining terms that are used in rules but not present in statutes, so long as the terms are not inconsistent with the statute itself. *See Farm & Ranch Freedom All. v. Tex. Dep't of Agric.*, No. 03-23-00459-CV, 2025 WL 994190, at *5 (Tex. App.—Austin Apr. 3, 2025, no pet.) (mem. op.) (noting that when the Legislature confers power upon an agency, it "impliedly intends that the agency have whatever powers are reasonably necessary to fulfill its express functions or duties," and thus it "is not required to include in every specific detail or anticipate all unforeseen circumstances when enacting an agency's authorizing statute.") (internal quotation marks omitted).

Rule 3.334(a)(9) provides further guidance for taxpayers to comply with Tax Code section 321.203. The Comptroller's definition of fulfill is needed to properly administer the statutory language and is based on the Comptroller's assessment of the clarity needed to administer the controlling statutory provisions regarding receipt of orders. Rule 3.334(a)(9) is thus a reasonable interpretation of the statute and should be affirmed.

## B. Rule 3.334(a)(18) defines the phrase "place of business of the seller" as used within the entire rule.

Rule 3.334(a)(18) defines the term "Place of business of the seller," which is used both within the relevant statute and throughout amended Rule 3.334. *See, e.g.*,

Tex. Tax Code §§ 321.203(b), (c); Rule 3.334(a)(17), (b), (c). The Plaintiff Cities challenged only the first three sentences of Rule 3.334(a)(18). CR 2433 (Coppell Plaintiff's Fifth Amended Petition Exhibit A); CR 2611 (Round Rock Trial Brief at 2). Those three sentences read:

> (18) Place of business of the seller - general definition—A place of business of the seller must be an established outlet, office, or location operated by a seller for the purpose of receiving orders for taxable items from persons other than employees, independent contractors, and natural persons affiliated with the seller. An "established outlet, office, or location" usually requires staffing by one or more sales personnel. The term does not include a computer server, Internet protocol address, domain name, website, or software application.

49 Tex. Reg. 2449-50. The phrase "place of business" is partially defined in Chapter 321:

> "Place of business of the retailer" means an established outlet, office, or location operated by the retailer or the retailer's agent or employee for the purposes of receiving orders for taxable items and includes any location at which three or more orders are received by the retailer during a calendar year. A warehouse, storage yard, or manufacturing plant is not a "place of business of the retailer" unless at least three orders are received by the retailer during the calendar year at the warehouse, storage yard, or manufacturing plant.

Tex. Tax Code § 321.002(a)(3)(A). The statute further defines what a place of business of the retailer is not. Tex. Tax Code §§ 321.002(a)(3)(B), (C).

The trial court rendered judgment that Comptroller Rule 3.334(a)(18) contravened "specific statutory language set forth in Texas Tax Code sections 321.002(a)(3)(A), 321.203, and 323.203." CR 2798. Plaintiff Cities contended in the

15

trial court that Rule 3.334(a)(18) contravened the Texas Tax Code because the Comptroller does not have the authority to adopt Rule 3.334(a)(18). CR 2466-67.

Rule 3.334(a)(18) does not contravene Texas Tax Code sections 321.203 or 323.203. The Rule is consistent with the statutory language because each of the three challenged sentences find support within the statutes. The first sentence tracks the statutory language but adds a qualifier that allows facilities to make "in house courtesy sales without becoming a place of business." 49 Tex. Reg. 4799.

The reference to sales personnel in the second sentence of Rule 3.334(a)(18) is consistent with the general objectives of the local tax statutes. First, the "sales personnel" language is consistent with the general objectives of the local tax statutes, as the "place of business" definition in Section 321.203 is also used in sales tax permitting requirements. Tex. Tax Code § 321.303; 49 Tex. Reg. 4799. This is important because a sales tax permit is required if a location has sales personnel. *See* Tex. Tax Code § 151.107.

Second, the Comptroller added "sales personnel" language to provide an objective criterion for buyers, sellers, and auditors to consider: If a facility has sales personnel, it is likely a place of business for purposes of the consummation statute; if it does not, then it is likely not a place of business. 49 Tex. Reg. 4798–99. But the language is not absolute. The Rule says that the presence of sales personnel will "usually" elevate a facility to an established outlet, office, or location under the place of business definitions. 49 Tex. Reg. 4798.

Finally, the third sentence limits place of business by stating what it is not: "a computer server, Internet protocol address, domain name, website, or software

16

application." 49 Tex. Reg. 4799. This definition is consistent with the statutory concept that a place of business usually requires personnel to be present—similar to how a kiosk is specifically defined as not being a place of business. Tex. Tax Code § 321.002(a)(3)(C). Otherwise, any data center that hosts a computer server could become a "place of business" of any retailer leasing space. Moreover, the plain meaning of "place of business," both as read by an ordinary person and as defined within the statute, cannot plausibly be read to include an "internet protocol address, a domain name, or a website" as an established outlet, office, or location. 49 Tex. Reg. 4799. The Comptroller's interpretation of the relevant statute is that the Legislature did not intend that "the receipt of an order by an automated mechanical devise" without the presence of personnel could make the automated device an "established outlet, office, or location" operated by a retailer. *Id.* The Comptroller offered further explanations for Rule 3.334(a)(18) in the April 2024 Notice and June 2024 Order, which support its construction of the statute and the promulgation of the Rule. *See* 49 Tex. Reg. 2446; 49 Tex. Reg. 4799.

The Comptroller's construction of the controlling Tax Code provisions in Rule 3.334 is a faithful embodiment of the plain language of the controlling statutory provisions. The Comptroller's rule provides for administrative expediency, clarity, and consistency for the agency, taxpayers, and the public regarding the application of the consummation statutes and should be found valid.

### C. Rule 3.334(b)(5) clarifies what is and is not a "place of business of the seller."

Rule 3.334(b)(5) clarifies that for a facility to be a "place of business of the seller" there usually need to be sales personnel present. Importantly, it clarifies that certain types of computer-operated shopping systems do not qualify as a "place of business of the seller" for consummation purposes. Plaintiff Cities challenged only two sentences of Rule 3.334(b)(5). CR 2434 (Coppell Plaintiff's Fifth Amended Petition Exhibit A); CR 2611 (Round Rock Trial Brief at 2). The challenged text of Rule 3.334(b)(5) reads:

> A computer that operates an automated shopping cart software program is not an established outlet, office, or location," and does not constitute a "place of business of the seller." A computer that operates an automated telephone ordering system is not "an established outlet, office, or location," and does not constitute a "place of business of the seller."

49 Tex. Reg. 2451.

The trial court rendered judgment that Comptroller Rule 3.334(b)(5) contravened "specific statutory language set forth in Texas Tax Code sections 321.002(a)(3)(A), 321.203, and 323.203." CR 2798. Rule 3.334(b)(5) provides examples of how the application of Rule 3.334(a)(18)—the place of business of the seller—would work.

Rule 3.334(b)(5) does not contravene Texas Tax Code sections 321.203 or 323.203. The Rule stems from similar factual bases as Rule 3.334(a)(18). *See infra* Part I.B. An agency rule need not be limited to parroting the words of the statute and a rule may impose burdens, conditions, or restrictions that are consistent with the

statute. *See State Office of Pub. Util. Counsel*, 131 S.W.3d at 321 ("the legislature does not need to include every specific detail or anticipate all unforeseen circumstances."). A rule may articulate requirements that are not explicitly stated within the statute. *See Perry Homes v. Strayhorn*, 108 S.W.3d 444, 448 (Tex. App.—Austin 2003, no pet.) ("The Comptroller is authorized to adopt rules that clarify and implement the legislation."); *DuPont Photomasks, Inc. v. Strayhorn*, 219 S.W.3d 414, 422 (Tex. App.—Austin 2006, pet. denied) (noting that courts give "serious consideration" to the Comptroller's "construction of [an enabling] statute"). That is precisely what the Comptroller has done here. Moreover, Rule 3.334(b)(5) is consistent with prior Comptroller rules and interpretations of the Tax statutes. *See* 49 Tex. Reg. 4799.

The Rule is consistent with the statutory language because the Comptroller's recognition of the realities of online orders and their effect on local tax collection does not contravene the specific statutory language, is not counter to the statute's general objectives, and does not impose additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions. The Comptroller regulated within its rulemaking authority, as evidenced by the extensive commentary on the history and current state of Comptroller regulation. *See* 49 Tex. Reg. 2440-57; 49 Tex. Reg. 4797-808.

## D.    Rule 3.334(c) does not contravene the Tax Code.

The trial court made two separate rulings regarding Rule 3.334(c), finding that it contravened specific Texas Tax Code sections and that it contravened statutory

19

schemes for determining where a sale is consummated. The trial court erred, and this Court should affirm Rule 3.334(c) in its entirety.

### 1. The rule clarifies that it applies to "all sellers."

The trial court rendered judgment that Comptroller Rule 3.334(c) contravened "specific statutory language set forth in Texas Tax Code sections 321.002(a)(3)(A), 321.203, and 323.203." CR 2798. Rule 3.334(c) concerns the application of consummation rules and permits taxpaying entities to determine to which local jurisdiction their sales tax should be sourced. The relevant but controversial preliminary language of Rule 3.334(c) reads:

> (c) […] The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in Texas, regardless of whether they have no place of business in Texas, a single place of business in Texas, or multiple places of business in Texas.

49 Tex. Reg. 2451. A lengthy set of rules for determining where a sale is consummated then follows. 49 Tex. Reg. 2451-52. But only Rule 3.334(c), (c)(1), and (c)(2) were ruled on by the trial court. CR 2798.

Round Rock contended in the trial court that Rule 3.334(c) contravened the Texas Tax Code by applying to "all sellers engaged in business in Texas, regardless of whether they have no place of business, a single place of business in Texas, or multiple places of business in Texas." CR 2626; 49 Tex. Reg. 2451. Round Rock further argued that taxpayers with a single place of business in Texas are required to receive special treatment under the Tax Code, which states: "if a retailer has only one place of business in this state, all of the retailer's retail sales of taxable items are

20

consummated at that place of business except as provided by Subsection (e)." Tex. Tax Code § 321.203(b).

As explained in the June 2024 Order, the Comptroller disagrees with that assertion. First, Round Rock's claim would ignore that an exception is explicitly within the tax code: "except as provided by Subsection (e)." Tex. Tax Code §§ 321.203(b), (e); 49 Tex. Reg. 4805.

However, when the statute is read as a whole, it is clear that the language in section 321.203(b) was not intended to create special rules for retailers with a single place of business but is merely the first step on a hierarchy of tax sourcing. The remainder of section 321.203 details the further steps a retailer must take in determining where a sale was consummated. When considered in this light, the Comptroller's Rule 3.334(c) is entirely consistent within that hierarchy, and is consistent with the language of section 321.203(b) and the text of Rule 3.334(c). Further, Rule 3.334 helps determine whether a business in fact is a single place of business or not, which helps determine the applicability of section 321.203(b). If a business has only a single place of business, the sale will be consummated there.

Round Rock's interpretation would lead to an absurd result: sales could be sourced to a city that the customer and the product had no connection to. It would be an absurd result to consummate a sale at a location that has no discrete connection with the sale. Under Round Rock's interpretation, consider if a reseller had a single place of business in Austin that consists only of a sales office. The reseller has a fully automated shopping website hosted by a server in Brownsville. A customer who lives in Corpus Christi places an order on the website located in Brownsville. The order is

then fulfilled and shipped from a third-party manufacturer in Dallas and shipped to the customer in Corpus Christi. The sale being consummated in Austin, a city with which the customer did not visit (either in person, by phone, or by internet connection), would be an unreasonable reading of the statute that the Legislature could not have intended—even though the reseller's only place of business was Austin. Moreover, it would permit sellers to game the system to divert sales tax revenues to certain preferred localities. The Texas Supreme Court has held that one must make the logical inferences necessary to "avoid an absurd or nonsensical result that the Legislature could not have intended." *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018) (citing *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 338 (Tex. 2017)).

### 2. The rule is not counter to the statutory scheme of the Tax Code

The trial court rendered judgment that Comptroller Rule 3.334(c) [(c)(1) and (c)(2) inclusive] contravened the "statutory schemes for determining where a sale is consummated, under Sections 321.203 and 323.203." CR 2798. There is no relevant caselaw in Texas courts that helpfully differentiates between when a promulgated rule contravenes specific statutory language versus a statutory scheme. The trial court did not explain why it made separate findings that Rule 3.334(c) violated specific statutory language under sections 321.203 and 323.203, and the statutory scheme of sections 321.203 and 323.203. Specifically, the Plaintiff Cities offered no argument on this issue at the trial on the merits and thus the trial court erred in

holding that Plaintiff Cities met their burden to prove the Rule contravened the statutory schemes for determining where a sale is consummated.

For the purposes of de novo review, the Comptroller reasserts its arguments above that Rule 3.334(c) did not violate any specific statutory language under Sections 321.203 and 323.203 and thus did not violate the statutory scheme.

### 3. The trial court improperly overturned language which no party disputed.

Comptroller Rule 3.334(c) is a comprehensive rule to determine the local taxing jurisdiction in which local sales and use taxes are due. The Final Judgment enjoined the entirety of Rule 3.334(c). CR 2799. While the Court should reverse the Final Judgment and validate the entire provision, at a minimum the Court should reverse the Final Judgment to the extent that it enjoins portions of the Rule that were not disputed.

The language contested by Coppell in the trial court was specifically not invalidated by the trial court. Paragraph (7) states that the location where an order is "received" is the location where an order is "initially received" and that the "location from which a product is shipped shall not be used in determining the location where the order is received by the seller." 34 Tex. Admin. Code § 3.334(c)(7). The trial court's Conclusions of Law did not invalidate paragraph (7). In fact, the Conclusions of Law specifically validated a similar statement in Rule 3.334(b)(1) regarding distribution centers, and the Final Judgment denied the Coppell's request to enjoin Rule 3.334(b)(1). CR 2847 (Conclusions of Law); CR 2798 (Final Judgment). The relevant portion of validated Rule 3.334(b)(1) states:

"Forwarding previously received orders to the facility for fulfillment does not make the facility a place of business." 34 Tex. Admin. Code § 3.334(b)(1); CR 2683. However, if this Court determines that the trial court did enjoin and remand Rule 3.334(c)(7) as part of the trial court's overall ruling, then this Court should reverse the trial court and render judgment that that rule is not void or enjoined.

## II. The Comptroller's notice complied with the APA.

The Texas APA requires an agency to provide public notice of its intent to adopt a rule. Tex. Gov't Code §§ 2001.023, 2001.024. The purposes of the notice requirements are to inform the public of the contents of the proposed rule and to give persons sufficient notice of the rule's content to permit them to ascertain whether protection of their interests requires them to request a hearing and participate in the rulemaking. *State Bd. of Ins. v. Deffebach*, 631 S.W.2d 794, 800 (Tex. App.—Austin 1982, writ ref'd n.r.e.).

Whether an agency complied with the notice requirements is reviewed under the substantial compliance standard. Tex. Gov't Code § 2001.035(a). Substantial compliance does not mean literal and exact compliance with every requirement of a statute, but simply "compliance with the essential" requirements of the statute. *Methodist Hosps. Of Dallas v. Tex. Indus. Acc. Bd.*, 798 S.W.2d 651, 654 (Tex. App.—Austin 1990, writ dism'd w.o.j.). The questions courts look at to determine substantial compliance is "[d]o the acts tendered in satisfaction of a statutory requirement (1) secure the legislative objectives that underline the requirement and (2) come fairly within the character and scope of each action or thing explicitly required by the statute in terms that are concise, specific, and unambiguous." *Id.*

24

(citing Ronald Beal, *The Scope of Judicial Review of Agency Rulemaking: The Interrelationship of Legislating and Rulemaking in Texas*, 39 Baylor L. Rev. 597, 646–47 (1987)).

The trial court ruled that the Comptroller did not substantially comply with the APA's notice requirements, but it did not specify which specific statutes the Comptroller violated. CR 2798, 2847. At trial, the Plaintiff Cities alleged that the Comptroller violated the APA by not meeting the requirements of Texas Government Code section 2001.024(a)(4), which requires a fiscal note (the "Fiscal Note"). CR 2636, 2699. The Fiscal Note must contain certain information when an agency gives notice of a rule. Tex. Gov't Code § 2001.024(a)(4). And separately, Round Rock asserted that the Comptroller violated the APA by not meeting the requirements of Texas Government Code section 2006.002, which requires an agency to give special notice when a rule would have an adverse economic effect on small businesses, micro-businesses, or rural communities (the "Adverse Economic Effect Notice"). CR 2638; Tex. Gov't Code § 2006.002. But the Comptroller's April 2024 Notice and June 2024 Order substantially complied with both the Fiscal Note and the Adverse Economic Effect Notice.

## A. The Comptroller's Fiscal Note substantially complied with the APA.

The APA states that a rule notice must state:

(A)  the additional estimated cost to the state and to local governments expected as a result of enforcing or administering the rule;

(B)     the estimated reductions in costs to the state and to local governments as a result of enforcing or administering the rule;

(C)     the estimated loss or increase in revenue to the state or to local governments as a result of enforcing or administering the rule; and

(D)     if applicable, that enforcing or administering the rule does not have foreseeable implications relating to cost or revenues of the state or local governments;

Tex. Gov't Code § 2001.024(a)(4).

The Texas APA makes clear that the Fiscal Note requirement hinges on substantial compliance. Tex. Gov't Code § 2001.035(c) (The agency must demonstrate "in a relatively clear and logical fashion that the rule is a reasonable means to a legitimate objective."); *See Nat'l Ass'n of Indep. Insurers v. Tex. Dep't of Ins.*, 925 S.W.2d 667, 669 (Tex. 1996). Put in the context of the APA notice requirements, agency compliance depends on the public being informed of the proposed rule and on sufficient notice of the contents of the proposed rule as to allow stakeholders to ascertain whether protection of their interests requires them to take part in the rulemaking process. *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 650 (Tex. 2004); *see Deffebach*, 631 S.W.2d at 800–01. The Comptroller clearly complied here, as Plaintiff Cities all participated in the rulemaking.

### 1.     The rulemaking record shows substantial compliance.

The Comptroller's April 2024 Notice provides the methodology, procedure, and information needed to attempt an accurate prediction as to the revenue of every local jurisdiction and a comprehensive fiscal impact statement. 49 Tex. Reg. 2440–

57. The Comptroller also engaged in further discussions and responded to Plaintiff Cities' comments in the June 2024 Order. 49 Tex. Reg. 4799-808.

The Comptroller's April 2024 Notice addressed the effect on local jurisdictions regarding revenue and the fiscal impact of Rule 3.334. The Comptroller stated that "some vendors may change their reporting methods, which might positively or negatively affect the tax revenue of particular local tax jurisdictions." 49 Tex. Reg. 2441. The Comptroller further specified that it "does not have sufficient data on the business operations of each business to identify and quantify the businesses and transactions that might be affected, and the positive or negative revenue impact on each tax jurisdiction." *Id.* Moreover, "reliable estimates of net changes in revenue by individual jurisdictions for the 1,759 local sales taxing jurisdictions that might stem from compliance with the rule cannot feasibly be produced" by the Comptroller. 49 Tex. Reg. 2443. Thus, quantification would be impossible.

The Comptroller engaged in a substantial examination of the data that would be required to analyze the estimated costs and loss or increase of revenue to local governments. 49 Tex. Reg. 2442-47. For more than five pages and 5,000 words, the Comptroller examined the claims made by each of the parties to this case and addressed the concerns. *See id.* In doing so, the Comptroller demonstrated what would be necessary to prepare a jurisdiction-by-jurisdiction estimate and addressed how infeasible the Plaintiff Cities' demands were.

The Comptroller provided examples of the impossibility of the task in its April 2024 Notice. Regarding fulfillment centers, the Comptroller noted that "the

estimates of the Plaintiff cities and the fulfillment centers in those cities cannot be reliably projected to other cities. The Comptroller does not have data to identify the 'fulfillment centers'; in any particular jurisdiction or statewide—it is not a characteristic that is reported to the agency." 49 Tex. Reg. 2444. Further, "even if [the] agency could identify 'fulfillment centers' from its data, the agency could not assume that the fulfillment centers in other cities are sourcing local tax like the Plaintiff cities' fulfillment centers purportedly are sourcing." *Id.* Indeed, the Comptroller determined that "a fulfillment center could reasonably reach a different conclusion and conclude that it was not automatically a 'place of business' for local tax sourcing purposes." *Id.* The Comptroller then proceeded to explain in five points why it believes it is reasonable that a fulfillment center could come to a different conclusion than the Plaintiff Cities. *Id.* The level of detail required on each individual taxpaying entity throughout the entire state makes such a detailed estimate as the Plaintiff Cities demand impossible.

As another example, the Comptroller outlined the impracticability of preparing a revenue impact estimate based on individual municipalities or large taxpaying entities, stating that "it would require the audit of Dell and any other vendor from whom the city thinks there will be a revenue loss." 49 Tex. Reg. 2445. The Comptroller then laid out the analysis it would have to make. First, "a local sales tax audit of Dell would have to examine all the business locations of Dell to determine which, if any, of the locations were 'places of business' for local tax sourcing purposes." *Id.* Second, "if the comptroller verifies that Dell in fact operated a single 'place of business' in Texas, the comptroller would still have to audit the sourcing

of Dell's sales to determine which sales were complaint and which sales were noncompliant with the proposed rule." *Id.* Third, "the comptroller would have to thoroughly audit Dell and any other vendors from whom Round Rock thinks there will be revenue loss." *Id.* Finally, the Comptroller would be "[r]epeating this audit exercise on a jurisdiction-by-jurisdiction basis across the state." *Id.* The Comptroller also noted that, even with this analysis, "[i]t is also possible that an audit of Dell or other vendors would identify noncompliance with sourcing provisions that are not involved in the disputed rulemaking." *Id.*

Rule 3.334 requires taxpayers to review their current sourcing methodology and come into compliance with the specificities of Rule 3.334. The current method by which any individual taxpayer sources is not known to the Comptroller and cannot feasibly be determined by the Comptroller. 49 Tex. Reg. 2444. Thus, the Comptroller thoroughly prepared revenue impact statements and fiscal impact statements that identified and put the public on notice of the factors and components that would go into such assessments. In doing so, the Comptroller substantially complied with the contested notice requirements of Section 2001.024 of the APA. Tex. Gov't Code § 2001.024; *see Methodist Hosps. of Dallas*, 798 S.W.2d at 654.

Here, the Comptroller provided notice of potential loss of revenue and fiscal impact, detailed out what information it would need to provide a comprehensive analysis, and further explained why the Comptroller would not be able to provide a detailed analysis. The Comptroller substantially complied with the notice requirements of the Texas APA.

## 2. The Fiscal Note requirement should not be read to require more than is possible.

The Texas APA does not predicate a standard of impractical specificity. Otherwise, any rule by the Comptroller where a detailed estimate is not feasible would be voided if challenged in court. Such a precedent delays the uniformity and efficiency in the Comptroller's responsibility to administer the Texas Tax Code and hinders taxpayers' understanding and the implementation of the taxing regulations.

Most importantly, the statutory language itself does not require the Comptroller to prepare a jurisdiction-by-jurisdiction report on the estimated increased or decreased costs or increases or decreases in revenue as a result of the rule. The notice is not required to be as detailed as that. The Comptroller's Chief Revenue Estimator made the estimates as required by the statute. *See* 49 Tex. Reg. 2440–42.

The law does not require impossibilities of any person. It is therefore absurd to find that Texas Government Code sections 2001.024 and 2001.035 demand that the Comptroller provide reports that contain data stated with a precision beyond what is obtainable from what the Comptroller traditionally collects and has, or even taxpayer data which the Comptroller could reasonably collect and analyze. The statute should not be construed as requiring a level of specificity beyond what is realistically possible. *See Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011).

Before the trial court, Plaintiff Cities did not contend that the Comptroller was incorrect in saying it could not ascertain the effect on revenue of the cost to comply with the change in Rule 3.334, or that the Comptroller was incorrect in the

information it would need. CR 2636, 2699. Rather, Plaintiff Cities claimed that it is unfair for the Comptroller to regulate in an area it is charged with enforcing, if it cannot make an exact estimate in every instance of regulation. *Id.* But the standard Plaintiff Cities promote and by which the court below decided is not substantial compliance with the Texas APA.

## B. The Comptroller's Adverse Economic Effect Notice substantially complied with the APA

Round Rock asserted that the "Comptroller did not follow the procedures that protect small businesses and rural communities from adverse economic effects." CR 2638. Round Rock specifically complained that the April 2024 Notice "does not include an economic impact statement or regulatory flexibility analysis." *Id.* Section 2001.024 of the APA requires that the published notice of a rule include "any other statement required by law," and that one such "other statement" is that required by Section 2006.002, the Adverse Economic Effect Notice. *See* Tex. Gov't Code §§ 2001.024, 2006.002(c); *Unified Loans, Inc. v. Pettijohn*, 955 S.W.2d 649, 651 (Tex. App.—Austin 1997, no pet.). Agencies considering adoption of a rule that would have an adverse economic effect on small businesses or rural communities must prepare:

(1) an economic impact statement that estimates the number of small businesses or rural communities subject to the proposed rule, projects the economic impact of the rule on small businesses or rural communities, and describes alternative methods of achieving the purpose of the proposed rule; and

(2) a regulatory flexibility analysis that includes the agency's consideration of alternative methods of achieving the purpose of

the proposed rule.

Tex. Gov't Code § 2006.002(c). Failure to substantially comply with the procedural requirements in Sections 2001.0225 through 2001.034, including Section 2001.024, is grounds to render a rule voidable. Tex. Gov't Code § 2001.035(a).

The Comptroller followed the Adverse Economic Effect Notice requirements found in Section 2006.002(c) of the APA. At the outset, the Comptroller noted that it could not identify and quantify the businesses and transactions that might be affected or the positive or negative revenue impact on each tax jurisdiction. 49 Tex. Reg. 2448.

Then, in a section of its notice titled "Economic impact statement and regulatory flexibility analysis," the Comptroller gave notice of potential effects to small businesses and rural communities. *Id.* First, the Comptroller noted that changes in revenue would tend to be "cities with Local Government Code, Chapter 380 agreements involving rebates of local sales and use tax revenues." *Id.* Then, the Comptroller said that many small businesses would not be affected, as a "small business that has all of its operations at a single location in Texas, including sales and fulfillment, is probably reporting local sales tax to the taxing jurisdiction where it is located, and it will continue that reporting." *Id.* Additionally, to address the agency's consideration of alternative methods of achieving the purpose of the proposed rule, the Comptroller amply detailed the alternatives it considered. *Id.* The Comptroller was required to state the grounds for its conclusions, and it did so. *See Pettijohn*, 955 S.W.2d at 651 (holding that a rulemaking agency must state in the notice some basis in order that interested persons might know and confront that basis in a meaningful

way in their comments).

The Comptroller provided an economic impact statement and regulatory flexibility analysis, explained extensively throughout its notice what information would be needed to make such analysis, and further detailed its commentary and analysis where possible. 49 Tex. Reg. 2448. Thus, the Comptroller has substantially complied with its obligations under Texas Government Code section 2006.002(c) to provide an economic impact statement and regulatory flexibility analysis for small businesses, micro-businesses, and rural communities. Any interested entities were on notice of the Comptroller's economic effect analysis and had the opportunity to contribute meaningfully in the rulemaking process, complying with the Legislature's intent in drafting section 2006.002 of the Texas Government Code. Proper notice was given, and this Court should reverse the trial court and render judgment for the Comptroller.

### III. The Comptroller substantially complied with the APA's reasoned justification requirement.

The APA requires an agency to provide a "reasoned justification" when adopting rules. Tex. Gov't Code § 2001.033. The statute states that the final order adopting a rule must include a reasoned justification for the rule as adopted consisting solely of:

> (A)  a summary of comments received from parties interested in the rule that shows the names of interested groups or associations offering comment on the rule and whether they were for or against its adoption;

> (B)   a summary of the factual basis for the rule as adopted which demonstrates a rational connection between the factual basis for the rule and the rule as adopted; and
>
> (C)   the reasons why the agency disagrees with party submissions and proposals [. . . .]

*Id.* The trial court held that the Comptroller did not substantially comply with the reasoned justification requirement in adopting Rule 3.334. CR 2847. The trial court did not specify how the Comptroller violated the reasoned justification requirement.

There is no serious contention that the Comptroller did not comply with the first element—the requirement that the agency include in its final order "a summary of comments received from parties interested in the rule that shows the names of interested groups or associations offering comment on the rule and whether they were for or against its adoption . . . ." Tex. Gov't Code § 2001.033(a)(1)(A). The Comptroller did just that in its June 2024 Order. 49 Tex. Reg. 4797-808.

Therefore, the Comptroller will address the second two prongs of reasoned justification: in section III.A. below, the Comptroller demonstrates that it provided a summary of factual basis that demonstrates a rational connection between the factual basis and the rule; and in section III.B., below, the Comptroller demonstrates that it gave reasons it disagreed with comments. Tex. Gov't Code § 2001.033(a)(1). Once again, the standard for reviewing an agency's reasoned justification requirement compliance is substantial compliance. Tex. Gov't Code § 2001.033(a)(1); *see Reliant Energy, Inc.*, 62 S.W.3d at 840. An agency rule not adopted in substantial compliance with the APA is voidable. Tex. Gov't Code § 2001.035(a); *Reliant Energy, Inc.*, 62 S.W.3d at 840.

An order adopting a rule will substantially comply with the reasoned justification requirement when it demonstrates "in a relatively clear and logical fashion that the rule is a reasonable means to a legitimate objective." *Patient Advocates of Tex. v. Tex. Workers' Comp. Comm'n*, 80 S.W.3d 66, 73 (Tex. App.—Austin 2002), aff'd in part, rev'd in part, 136 S.W.3d 643 (Tex. 2004) (citing *Methodist Hosps. of Dallas*, 798 S.W.2d at 657-59). The four corners of the agency's final notice must present the agency's justification in a relatively clear, precise, and logical fashion. *Reliant Energy, Inc.*, 62 S.W.3d at 840.

When reviewing an agency order for a reasoned justification, a court should look to the full order. *See Lambright v. Tex. Parks & Wildlife Dep't*, 157 S.W.3d 499, 504 (Tex. App.—Austin 2005, no pet.). This includes both the preamble and reply comments. *See Patient Advocates of Tex.*, 80 S.W.3d at 72-74 (discussing how the reasoned justification requirement was met by explanation contained in the preamble). The full April 2024 Notice and June 2024 Order were provided to the trial court as exhibits and are contained in the Appendix to this brief.

But the trial court is not to review beyond the rule making record. *Lambright*, 157 S.W.3d at 504. By requiring an agency to expressly state the reasoned justification for a rule, the Legislature did not intend to create a situation where the underlying factual accuracy of the events, conditions, and circumstances received and relied upon by the agency would be attacked. *ARCO Oil & Gas Co.*, 876 S.W.2d at 480. Instead, courts simply apply an arbitrary and capricious standard in determining whether an agency order has substantially complied with the reasoned justification requirement. *Id.* at 490-91; *see also State Office of Pub. Util. Counsel*, 131 S.W.3d at 328.

**A.** **The Comptroller's rulemaking record is exhaustive in its factual summary and rational connection**

The second element in the reasoned justification requirement is that the agency includes in its final order "a summary of the factual basis for the rule as adopted which demonstrates a rational connection between the factual basis for the rule and the rule as adopted . . . ." Tex. Gov't Code § 2001.033(a)(1)(B).

**1.** **The Comptroller summarized the factual bases for the Rule.**

The Comptroller's extensive factual support for Rule 3.334 is summarized in the June 2024 Order. 49 Tex. Reg. 4797. But there is little guidance within the APA on how the factual bases for the rule must be summarized. Courts, however, have said that so long as the factual bases can be gleaned from the entirety of the rulemaking, it will be held to substantially comply. *Gulf Coast Coal. of Cities v. Pub. Util. Comm'n*, 161 S.W.3d 706, 714 (Tex. App.—Austin 2005, no pet.) (examining the final order in its entirety and accepting factual basis when provided in summary of comments.).

In its June 2024 Order, the Comptroller started by summarizing the background leading to the need to adopt Rule 3.334. *See* 49 Tex. Reg. 4797-98 ("Summary of the Factual Bases for the Rule – Background"). The Comptroller stated that many of the provisions (which are unchallenged here) of amended Rule 3.334 were promulgated to implement legislative bills or address compliance with a Supreme Court case. 49 Tex. Reg. 4798. Other factual bases are listed throughout the order.

Importantly, the Comptroller gave factual bases summaries for the parts of Rule 3.334 that were challenged by Plaintiff Cities: Rule 3.334(a)(18), (b)(5), and (c). *See* 49 Tex. Reg. 4798, 4799, 4801, 4805, 4807. Below is a list of section headings, each of which contains factual bases in the paragraphs that follow:

- Summary of the Factual Bases for the Rule – Background

- Summary of the Factual Bases for the Rule - Subsection (a)(18) - The definition of "place of business of the seller."

- Summary of the Factual Bases for the Rule - Subsection (b)(5) - A facility without sales personnel is usually not a "place of business of the seller."

- Summary of the Factual Bases for the Rule - Subsections (b)(1) and (c)(7) - Distributions centers, manufacturing plants, storage yards, and warehouses, and when and where an order is "received."

- Summary of the Factual Bases for the Rule - Subsection (c) - Application of the consummation rules.

49 Tex. Reg. 4797-806. The Plaintiff Cities may not like the factual bases summarized, but it is not plausible to contend that the Comptroller did not summarize them. The summary is extensive, appears within the June 2024 Order, and substantially complies with the statutory requirements. Tex. Gov't Code § 2001.033(a)(1)(B).

### 2. The Comptroller demonstrated a rational connection between the factual bases and the rule as adopted.

The APA requires that an agency's reasoned justification must include summarized factual bases for its rule that demonstrate "a rational connection between the factual basis for the rule and the rule as adopted . . . ." Tex. Gov't Code

§ 2001.033(a)(1)(B). An agency substantially complies with the requirement when it explains how and why it reached its conclusion. *State Office of Pub. Util. Counsel*, 131 S.W.3d at 327 (citing Tex. Gov't Code § 2001.035(a)). Any question of substantial compliance must be determined solely from the face of the adopting order. *Gulf Coast Coal. Of Cities*, 161 S.W.3d at 713. In substantially complying with the reasoned justification requirement, the agency only must minimally demonstrate "in a relatively clear and logical fashion that the rule is a reasonable means to a legitimate objective." Tex. Gov't Code § 2001.035(c); *see Farm & Ranch Freedom All.*, 2025 WL 994190, at *7. A reviewing court examines whether the agency's explanation of the facts and policy concerns it relied on when it adopted the rule demonstrates that the agency considered all the factors relevant to the objectives of the agency's delegated rulemaking authority and engaged in reasoned decision-making. *See ARCO Oil & Gas Co.*, 876 S.W.2d at 491. An agency adopting a rule need not demonstrate that its rulemaking decision is the only reasonable or factually defensible policy alternative. *Texas Medical Ass'n v. Tex. Workers' Compensation Comm'n*, 137 S.W.3d 342, 354 (Tex. App.—Austin 2004).

In other words, the Comptroller's order adopting the Rule should explain how and why the Comptroller reached its conclusion. *See, e.g, State Office of Pub. Util. Counsel*, 131 S.W.3d at 327; *Reliant Energy, Inc.*, 62 S.W.3d at 840. Thus, the Comptroller needs only to demonstrate that there is a rational connection between the rule and the factual material it has received or otherwise considered, and that the rule was a legitimate and factually defensible choice that complies with the multiple statutory requirements of the code. *Id.*

The Comptroller demonstrated a rational connection between the factual basis and the rule as adopted. The Comptroller extensively discussed the factual, policy, and legal bases for Rule 3.334, based on both the agency's research and commentary made during the rulemaking process in its final order. The Comptroller's initial preamble in the April 2024 Notice, bolstered by its additional comments and summary in the June 2024 Order, clearly and exhaustively explain the Comptroller's reasons for adopting Rule 3.334. Both the notice and the order are abound with demonstrations of the rational connection.

For example, the Comptroller provided a detailed factual summary for the promulgation of Rule 3.334(a)(18). The Comptroller explained that local sales and use taxes are generally sourced to where a sale is consummated. Tex. Tax Code § 321.203; 49 Tex. Reg. 4798. There are a few potential locations to where a local sales tax can be sourced: where the order was received, fulfilled, or delivered to the customer. Tex. Tax Code § 321.203. Sourcing is affected by the manner in which the order is placed, which involves determining where the seller's "place of business" in Texas is located. *Id.* The Tax Code defines "place of business of the retailer" in 82 words. Tex. Tax Code § 321.002(a)(3)(A). But "place of business" is a term of art, and many business activities can be conducted at a location without that location becoming a "place of business" for local tax sourcing. The statutory definition for "place of business" sets forth a combination of elements that lead to the Comptroller's interpretation that one factor indicating whether a location is a "place of business" is the presence of sales personnel. Thus, the Comptroller promulgated Rule 3.334(a)(18), which sets forth additional criteria for determining if a location is

a place of business—none of which are inconsistent with the underlying statutory definition. Instead, the additional criteria help taxpayers and the government to objectively determine whether a location is a "place of business" which provides clarity and certainty to relatively complicated process of sales tax sourcing.

The Comptroller engaged in similarly detailed explanations for the three other challenged rule provisions: Rule 3.334(a)(9) at 49 Tex. Reg. 4801–02; Rule 3.334(b)(5) at 49 Tex. Reg. 4799; and Rule 3.334(c) at 49 Tex. Reg. 4805. Moreover, the Comptroller gave summaries that demonstrate the rational connection for all of promulgated Rule 3.334 in both the April 2024 Notice and June 2024 Order.

The Comptroller's extensive explanation of the facts and policy concerns relied on in adopting the rule demonstrates that it considered all the factors relevant to the objectives of its delegated rulemaking authority and engaged in reasoned decision-making. Therefore, under the arbitrary and capricious standard, the Comptroller substantially complied with the reasoned-justification requirement of the APA.

As noted above, the Comptroller need not demonstrate that its rulemaking decision is the only reasonable or factually defensible policy alternative. *Tex. Medical Ass'n*, 137 S.W.3d at 354. Rather, the Comptroller needs only to demonstrate that there is a rational connection between the rule and the factual material it has received or otherwise considered, and that the rule was a legitimate and factually defensible choice that complies with the statutory requirements of the code. *Id.*

### 3. The Comptroller's rational connection was not arbitrary and capricious.

Courts review a challenge to the rational connection requirement using an "arbitrary and capricious" standard and not presuming that facts exist to support the agency's order. *Id.* at 353. An agency acts arbitrarily if, in making a decision, it commits any of the following errors: (1) omits from its consideration a factor that the Legislature intended the agency to consider in the circumstances; (2) includes in its consideration an irrelevant factor; or (3) reaches a completely unreasonable result after weighing only relevant factors. *Statewide Convoy Transps. Inc. v. R.R. Comm'n of Tex.*, 753 S.W.2d 800, 804 (Tex. App.—Austin 1988, no writ); *see also Bullock v. Hewlett-Packard Co.*, 628 S.W.2d 754, 756 (Tex. 1982) (stating a rule is arbitrary and capricious when it lacks a legitimate reason to support it). The Comptroller will demonstrate its compliance with these standards.

### a. The Comptroller considered only the Legislatively mandated factors.

An agency's reasoned justification is arbitrary if in making its rational connection the agency omits from consideration a factor the Legislature intended the agency to consider in the circumstances or includes in its consideration an irrelevant factor. *Farm & Ranch Freedom All.*, 2025 WL 994190, at *7 (citing *Lambright*, 157 S.W.3d at 505). In determining the factors, courts "consider each substantive element set out in the statute." *Reliant Energy, Inc.*, 62 S.W.3d at 841. The Comptroller properly considered all legislatively mandated factors and did not consider any irrelevant factors.

The Legislature has granted the Comptroller broad discretion in adopting

rules related to the Texas Tax Code. *See, e.g.*, Tex. Tax Code §§ 111.002, 151.0595(j), 321.306, 322.203. In considering whether an agency has omitted from its consideration a legislatively intended factor, or considered an irrelevant factor, courts have looked to the express mandates from the Legislature. For example, the Third Court found that the Public Utility Commission of Texas' ("PUC") statutory mandate was to "protect the public interest to and in the establishment of a fully competitive electric power industry." *Reliant Energy, Inc.*, 62 S.W.3d 833 at 841. In adopting rules, the PUC was mandated to "make and enforce rules necessary to protect customers … consistent with the public interest." *Id.* at 835 n.1. And the Legislature expressed specifically how the PUC was to adjust certain fuel charges. *Id.* at 841 (citing Tex. Util. Code § 39.202). If the PUC failed to follow those legislative factors in its rulemaking, it would have failed in its reasoned justification. *Id.*

The Legislature is well equipped to require an agency to explicitly consider certain factors, as they have done with many agencies. For example, at issue in *Lambright* was a Texas Parks and Wildlife Department rule reducing the shrimping season and expanding nursery areas. *Lambright*, 157 S.W.3d at 502. The Legislature required Parks and Wildlife to consider six factors before issuing rules regarding the catching, possession, purchase, and sale of shrimp. *See* Tex. Parks & Wild. Code § 77.007(b)(1)–(6).

The Legislature's grant to the Comptroller is not nearly so limiting. No explicit factors are found in the statutes enacted by the Legislature, as with the PUC or Parks and Wildlife. *See, e.g*, Tex. Tax Code §§ 111.002, 151.0595(j), 321.306,

322.203, 323.306. To the extent the rule-making delegation does contain factors, they are generally to "adopt rules that do not conflict with the laws of this state or the constitution of this state or the United States for the enforcement … and collection of taxes." Tex. Tax Code § 111.002. More specifically, the grants of legislative authority that the Comptroller cited in the April 2024 Notice and June 2024 Order put the following restrictions on the Comptroller's rules:

- To "reflect changes in the power of this state to collect taxes and enforce the provisions of this title due to changes in the constitution or laws of the United States and judicial interpretations thereof." Tex. Tax Code § 111.102(a).

- Be "consistent with [Chapter 321] for the administration, collection, reporting, and enforcement of this chapter." Tex. Tax Code § 321.306.

- Be "consistent with [Chapter 322] for the administration, collection, and enforcement of this chapter and for the reporting of taxes imposed under this chapter." Tex. Tax Code § 322.203.

- Be "consistent with [Chapter 323] for the administration, collection, reporting, and enforcement of this chapter." Tex. Tax Code § 323.306.

Those are the only factors the Legislature has required the Comptroller to consider. For purposes of reasoned justification, the Comptroller need show only that Rule 3.334 does not conflict with the laws or constitution and that they are promulgated for the enforcement and collection of taxes, as articulated in the above statutes.

The Comptroller did just that. Its June 2024 Order reflects that the principal policy reason for the adoption of the rule is to provide guidance to taxpayers and auditors regarding the application of the local sales and use tax consummation

statutes. 49 Tex. Reg. 4797. The rational connection between the factual basis for the rule and the rule as adopted is amply demonstrated within the June 2024 Order. *See* 49 Tex. Reg. 4801-07. First, it explained how the use of sales personnel is consistent with the general objectives of the local tax statute and detailed why the term "place of business" must be read within the context of the Tax Code and why in the statutory context, the term has a narrower meaning than ordinary usage. 49 Tex. Reg. 4798. The Comptroller next expanded on the controlling statutes' singular usage of "the place of business." 49 Tex. Reg. 4802. And the Comptroller explained how its understanding of the statute, as reflected in the rule, provides clarification regarding the consummation statutes and means they can be applied with greater certainty. *Id.* Additionally, regarding the treatment of single places of business, the Comptroller explained that its interpretation is reasonable under the controlling statute, and how a conflicting interpretation would lead to no rational connection or sufficient governmental interest in the state's local taxation scheme. 49 Tex. Reg. 4805. These explanations contained within the June 2024 Order show that the Comptroller not only considered the proper legislative factors, but demonstrated the rational connection between the factual bases and the rule as adopted.

### b. The Comptroller did not reach a completely unreasonable result.

An agency acts arbitrarily in making a decision if it reaches a completely unreasonable result after weighing only relevant factors. *Farm & Ranch Freedom All.*, 2025 WL 994190, at *7 (citing *Lambright*, 157 S.W.3d at 505). Courts should avoid striking down agency action unless they feel competent to find that the agency has

clearly acted unreasonably. *Gerst v. Nixon*, 411 S.W.2d 350, 360 n.8 (Tex. 1966).[6]

Neither Round Rock nor Coppell offered another explanation for how the Comptroller's rule was a completely unreasonable result. And there is nothing in the four corners of the June 2024 Order that allowed for the trial court to conclude that the Comptroller reached an unreasonable result. Nevertheless, some examples of the reasonableness of the result are offered:

- The Comptroller offered a reason for adoption of the rule as "to provide guidance to taxpayers and auditors regarding the application of the local sales and use tax consummation statutes." 49 Tex. Reg. 4797.

- The Comptroller explained that the "sales personnel" language in its definition of place of business of a retailer is to provide an objective criterion for buyers, sellers, and auditors to consider. 49 Tex. Reg. 4798.

- The Comptroller explained how the sales personnel language is consistent with the general objectives of the local tax statute. 49 Tex. Reg. 4799.

- The Comptroller explained that broad, every-day usage of the term "place of business" does not include computer servers, Internet protocol addresses, and websites. 49 Tex. Reg. 4799.

- The Comptroller explained that its interpretation is practical and will facilitate uniformity and ease of administration for taxpayers and auditors. 49 Tex. Reg. 4799.

---

[6] This language comes from dicta from a footnote in the 1966 Supreme Court of Texas. It is in fact the court quoting a law review article about the benefits of administrative agency rules. It appears to be the source for the "unreasonable result" line of inquiry. *See also City of El Paso v. Pub. Util. Comm'n of Tex.*, 883 S.W.2d 179, 184 (Tex. 1994) (citing *Gerst* and stating "An agency's decision is arbitrary … if the agency: (1) failed to consider a factor the legislature directs it to consider; (2) considers an irrelevant factor; or (3) weighs only relevant factors that the legislature directs it to consider but still reaches a completely unreasonable result.").

- The Comptroller concluded that the best way to treat computer servers consistently and coherently is to uniformly recognize that they are not an "established outlet, office, or location" and do not constitute places of business of the seller. 49 Tex. Reg. 4799.

"To satisfy the reasoned justification requirement, an agency's order adopting a rule must explain how and why the agency reached the conclusion it did." *Reliant Energy, Inc.*, 62 S.W.3d at 839. The four corners rule requires that a reviewing court consider the adequacy of the agency's reasoned justification from the rulemaking record itself. *Lambright*, 157 S.W.3d at 504. Extrinsic material is forbidden. *Id.* (stating that "[a] reviewing court must confine its search for a reasoned justification to the four corners of the order finally adopting the rule . . . ."). The Comptroller met its obligation to show there is a rational connection between the rule and the factual material it has received or otherwise considered, and that the rule was a legitimate and factually defensible choice that complies with the multiple statutory requirements of the code. *See Tex. Medical Ass'n*, 137 S.W.3d at 342.

## B. The Comptroller gave the reasons why the agency disagrees with party submissions and proposals.

As part of its reasoned justification, an agency must outline the reasons why the agency disagrees with party submissions and proposals that were submitted as part of the notice and comment rulemaking procedure. *See* Tex. Gov't Code § 2001.033(a)(1)(C). The Comptroller specifically addressed why it disagreed with each and every party submission and proposal in its June 2024 Order. The Comptroller's responses are sufficient to satisfy the substantial compliance requirement of the APA. Tex. Gov't Code § 2001.035(c). The Comptroller's responses demonstrate in a clear and logical fashion that the rule is a reasonable

46

means to a legitimate objective. Tex. Gov't Code § 2001.035(c). The reasonableness of the responses to all party submissions and proposals is apparent from the face of the June 2024 Order. *See* 49 Tex. Reg. 4797-808.

To comply with Texas Government Code section 2001.033, the Comptroller needs only to provide the reasons why the agency disagrees with Round Rock's comments. Tex. Gov't Code § 2001.033(a)(1)(C); *Reliant Energy, Inc.*, 62 S.W.3d at 843. As outlined above in Part III.A and this Part III.B, the Comptroller provided an extensive reasoned justification as to why it disagreed with the submitted comments, as well as a reasoned justification for the rule as a whole. Here, the four corners of the agency's June 2024 Order presents the agency's reasoned justification in a "relatively clear, precise, and logical fashion." *ARCO Oil & Gas Co.*, 876 S.W.2d at 492.

At trial, Round Rock made claims that the Comptroller did not adequately address its comments. Round Rock asserted that the June 2024 Order did not address its comments requesting a reasoned justification in three specific areas: (1) the APA's Notice Requirements; (2) the Comptroller's Authority to adopt the Rule; and (3) Small and Micro-Businesses. CR 2639. The Comptroller responded sufficiently to each comment as demonstrated below, such that this Court should reverse the trial court's judgment and render judgment in favor of the Comptroller.

First, Round Rock asserted that, "[t]he Comptroller's inability to comply with the notice requirements of the Administrative Procedure Act means the Comptroller cannot adopt the rule amendments." CR 2639. As explained in Parts II.A and II.B above, the Comptroller substantially complied with the notice requirements of the

47

APA. The City of Round Rock improperly framed the Comptroller's detailed and thorough explanation of each notice requirement of the APA as an inability to comply. *See* 49 Tex. Reg. 4808. The Comptroller gave reasons why the agency disagreed with Round Rock's notice comments.

Second, Round Rock claimed "[t]he Comptroller does not have the authority to adopt Rule 3.334(c)." CR 2639. The Comptroller responded with a "statement of the statutory and other authority under which the rule is adopted" detailing Sections 111.002, 321.306, 322.203, and 323.306 of the Tax Code as providing statutory authority for the Comptroller's actions. 49 Tex. Reg. 4808. Further, throughout its order detailing the bases on which it has the authority to adopt the provision, the Comptroller explained how the June 2024 Order is within the scope of the controlling statutes. 49 Tex. Reg. 4805. Round Rock's dislike of the Comptroller's exercise of its legislatively granted rulemaking authority does not equate to a lack of delegation of rulemaking authority by the Legislature or the Comptroller's permitted use of this authority. Nor does it show that the Comptroller did not substantially comply with the APA when it made its responses to Round Rock's comments in the June 2024 Order.

Finally, Round Rock argued that the Comptroller did not address its comment that "[t]he addition of (b)(6) does nothing to reduce the adverse economic effects of Rule 3.334 on small and micro-businesses." CR 2639. The Comptroller responded that it had considered small and micro-businesses in its June 2024 Order. 49 Tex. Reg. 4806-07. The Comptroller explained that it would presume these businesses conducted all their business operations out of a single location. *Id.* From this record,

the Comptroller clearly considered any "adverse economic effects of Rule 3.334 on small and micro-businesses" and took steps in the rulemaking to ameliorate those effects. CR 2639.

Coppell did not make a specific complaint about the adequacy of the Comptroller's responses under Texas Government Code section 2001.033(a)(1)(C). *See, e.g,* CR 2396 (Coppell Fifth Amended Petition); CR 2682 (Coppell Trial Brief). However, in its trial brief, Coppell complained that the Rule "contradicts the evidence contained in comments" that Coppell submitted to the Comptroller. CR 2693. But the Comptroller responded to the comments made by Coppell and its representatives. 49 Tex. Reg. 4797, 4799, 4804, & 4807. Coppell did complain that it submitted the report of an expert who opined on how websites work. CR 2693. Coppell asserted that the Rule "contradicts this evidence, and is, therefore, unreasonable and arbitrary and capricious." CR 2693. But it is not necessary that every opining expert agrees with the basis for the rules. To the extent the trial court ruled against the Comptroller on Texas Government Code section 2001.033(a)(1)(C) grounds, the judgment should be reversed.

## CONCLUSION AND PRAYER

In cases involving rule making, the only evidence the reviewing court should consider is the four-corners of the rule itself. That includes the April 2024 Notice and the June 2024 Order. The entirety of both documents were part of the trial record and are attached in the Appendix. Together, the two notices comprise a lengthy and comprehensive administrative record that show the Comptroller has substantially complied with the APA. This case is far from the sort where an agency

49

hand-waved away its responsibilities to keep the public informed of the reasons for a rule. The thorough and thoughtful analysis engaged in by experts at the Comptroller's office in adopting Rule 3.334 should not be lightly overturned.

For the above reasons, Appellee/Cross-Appellant requests that the Court reverse the judgment of the trial court and render judgment that Appellee/Cross-Appellant substantially complied with the APA, provided a "reasoned justification" for the rule, and hold that Rule 3.334 is valid in its entirety.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

STEVEN ROBINSON
Division Chief, Tax Litigation Division

*/s/ Kyle Pierce Counce*
KYLE PIERCE COUNCE
Deputy Division Chief
State Bar No. 24082862
T: (512) 463-3112
Kyle.Counce@oag.texas.gov

PETER BERQUIST
Assistant Attorney General
State Bar No. 24131255
T: (512) 936-1383
Peter.Berquist@oag.texas.gov

Tax Litigation Division
P. O. Box 12548
Austin, Texas 78711-2548
F: (512) 478-4013

Counsel for Appellee/Cross-Appellants

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirement of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains 13,606 words, excluding any parts exempted by Tex. R. App. 9.4(i)(1), as counted by the computer program used to prepare this document.

/s/ Kyle Pierce Counce
KYLE PIERCE COUNCE

## CERTIFICATE OF SERVICE

I certify that a copy of this document was served on all counsel of record by e-mail and/or e-service on September 26, 2025.

James B. Harris
Jim.Harris@hklaw.com
Stephen F. Fink
Stephen.Fink@hklaw.com
Reed C. Randel
Reed.Randel@hklaw.com
Richard B. Phillips, Jr.
Rich.Phillips@hklaw.com
HOLLAND & KNIGHT LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201
(214) 964-9500

Brandon L. King
Brandon.King@hklaw.com
HOLLAND & KNIGHT LLP
98 San Jacinto Boulevard, Suite 1900
Austin, Texas 78701
*Counsel for Appellants/Cross-Appellees*

Cindy Olson Bourland
Bourland@bourlandlaw.com
BOURLAND LAW FIRM, PC
P.O. Box 546
Round Rock, Texas 78680

Bryan Dotson
Bryan.Dotson@chamberlainlaw.com
CHAMBERLAIN, HRDLINKA, WHITE, WILLIAMS, & AUGHTRY, P.C.
112 East Pecan Street, Suite 1450
San Antonio, Texas 78205
(210) 278-5844
*Counsel for Appellee*

/s/ Kyle Pierce Counce
KYLE PIERCE COUNCE

51

# INDEX OF APPENDICES

Final Judgment ..................................................................................Appendix A

Conclusions of Law................................................................................ Appendix B

49 Tex. Reg. 2440–57 (Apr. 29, 2024) ("April 2024 Notice") ..............Appendix C

49 Tex. Reg. 4797–4808 (June 28, 2024) ("June 2024 Order")............ Appendix D

# APPENDIX A

CAUSE NO. D-1-GN-21-003198*

(Consolidated with D-1-GN-21-003203)

| | | |
|---|---|---|
| CITY OF COPPELL, TEXAS, | § | IN THE DISTRICT COURT OF |
| CITY OF HUMBLE, TEXAS, | § | |
| CITY OF DESOTO, TEXAS, | § | |
| CITY OF CARROLLTON, TEXAS, | § | |
| CITY OF FARMERS BRANCH, TEXAS, and | § | |
| CITY OF ROUND ROCK, TEXAS, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | TRAVIS COUNTY, TEXAS |
| v. | § | |
| | § | |
| GLENN HEGAR, in his official capacity | § | |
| as Comptroller of Public Accounts of | § | |
| the State of Texas, | § | |
| | § | |
| *Defendant*. | § | 201ST JUDICIAL DISTRICT |
| | § | (*Assigned to the 250th District) |

**FINAL JUDGMENT**

On October 14–16, 2024, the Court heard the merits of these consolidated causes. Attorneys James Harris and Reed Randel appeared for Plaintiffs City of Humble, Texas; City of Desoto, Texas; City of Carroll, Texas; City of Coppell, Texas; and City of Farmers Branch, Texas (the Coppell Plaintiffs). Attorneys Cindy Olsen Bourland and Bryan Dotson appeared for Plaintiff City of Round Rock, Texas (the Round Rock Plaintiff). Attorneys Kyle Counce and Ray Langenberg appeared for Defendant Comptroller of Public Accounts of the State of Texas (the Comptroller). The parties announced ready and proceeded to trial.

After careful consideration of the evidence and arguments of counsel, the Court renders judgment as follows:

The Court FINDS that Section 321.002(a)(3)(A) of the Tax Code requires a determination of whether at least three orders were received by the retailer during the calendar year. Therefore, the Court cannot prospectively declare Fulfillment Centers as places of business.

Accordingly, the Court FINDS that Coppell Plaintiffs' request to declare Fulfillment Centers receiving only Website Orders places of business under the 2016 version of 34 TAC § 3.334 should be and is DENIED.

The Court FINDS that 34 TAC § 3.334(a)(9) contravenes existing statutes by adding a definition at the agency level that the Legislature has not defined in Chapter 151 of the Texas Tax Code and for which Sections 321.203 and 323.203 already provide a detailed statutory scheme for determining where a sale of taxable item is "consummated."

The Court FINDS that 34 TAC § 3.334(a)(18), (b)(5), and (c) contravene specific statutory language set forth in Texas Tax Code sections 321.002(a)(3)(A), 321.203, and 323.203.

The Court FINDS that 34 TAC § 3.334(c) [(c)(1) and (c)(2) inclusive] contravenes the statutory schemes for determining where a sale is consummated, under Sections 321.203 and 323.203.

The Court FURTHER FINDS that the Comptroller did not substantially comply with the notice requirements under the APA.

The Court FURTHER FINDS that Defendant Comptroller did not substantially comply with the "reasoned justification" requirement under the APA.

IT IS JUDICIALLY DECLARED that 34 TAC § 3.334 or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the Coppell Plaintiffs.

IT IS JUDICIALLY DECLARED that 34 TAC § 3.334 or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the Round Rock Plaintiff.

IT IS THEREFORE ORDERED that Defendant Comptroller of Public Accounts of the State of Texas is hereby PERMANENTLY ENJOINED from enforcing 34 TAC § 3.334, subsections (a)(9), (a)(18), (b)(5), and (c), effective July 4, 2024, and those subsections are hereby REMANDED to the Comptroller of Public Accounts of the State of Texas for further consideration not inconsistent with Chapters 151, 321, and 323 of the Texas Tax Code.

All other relief not expressly granted herein is DENIED. This judgment finally disposes of all parties and all claims and is appealable.

Signed on this third day of December 2024,

_____
KARIN CRUMP
JUDGE PRESIDING
250th DISTRICT COURT

# APPENDIX B

CAUSE NO. D-1-GN-21-003198*

(Consolidated with D-1-GN-21-003203)

| | | |
|---|---|---|
| CITY OF COPPELL, TEXAS,<br>CITY OF HUMBLE, TEXAS,<br>CITY OF DESOTO, TEXAS,<br>CITY OF CARROLLTON, TEXAS,<br>CITY OF FARMERS BRANCH, TEXAS, and<br>CITY OF ROUND ROCK, TEXAS, | §<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT OF |
| *Plaintiffs*, | §<br>§ | |
| v. | §<br>§ | TRAVIS COUNTY, TEXAS |
| GLENN HEGAR, in his official capacity<br>as Comptroller of Public Accounts of<br>the State of Texas, | §<br>§<br>§<br>§ | |
| *Defendant*. | §<br>§ | 201ST JUDICIAL DISTRICT<br>Assigned to the 250th District Court |

**CONCLUSIONS OF LAW**

On December 3, 2024, the Court issued its Final Judgment for this cause. The Coppell Plaintiffs' Request for Findings of Fact and Conclusions of Law was filed on December 23, 2024. On December 30, 2024, the Coppell Plaintiffs informed the Court that they have "concluded that findings of fact are unnecessary in this case [and] therefore withdraw that portion of the December 3, 2024 request for findings of fact." Accordingly, the Court hereby issues the following Conclusions of Law:

1.  34 Texas Administrative Code (TAC) § 3.334(a)(9) contravenes existing statutes by adding a definition at the agency level that the Legislature has not defined in Chapter 151 of the Texas Tax Code and for which Sections 321.203 and 323.203 already provide a detailed statutory scheme for determining where a sale of taxable item is "consummated."

2.  34 TAC § 3.334(a)(18), (b)(5), and (c) contravene specific statutory language set forth in Texas Tax Code sections 321.002(a)(3)(A), 321.203, and 323.203.

CONCLUSIONS OF LAW
Cause No. D-1-GN-21-003198 (Consolidated)

3. 34 TAC § 3.334(c) [(c)(1) and (c)(2) inclusive] contravenes the statutory schemes for determining where a sale is consummated, under Sections 321.203 and 323.203.

4. 34 TAC § 3.334(b)(1)(A), when read in conjunction with its (b)(1)(B), is a descriptive statement of those circumstances when a distribution center, manufacturing plant, storage yard, warehouse, or similar facility "is a place of business of the seller" within the meaning of Texas Tax Code section 321.002(a)(3)(A). As such, 34 TAC § 3.334(b)(1)(A) is a statement of qualification by which such a location may be considered a place of business of the seller under Section 321.002(a)(3)(A).

5. The Comptroller did not substantially comply with the notice requirements under the Administrative Procedure Act (APA).

6. The Comptroller did not substantially comply with the "reasoned justification" requirement under the APA.

7. 34 TAC § 3.334 or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the Coppell Plaintiffs.

8. 34 TAC § 3.334 or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the Round Rock Plaintiff.

Signed on the 30th day of December 2024.

_____
KARIN CRUMP
Judge Presiding, 250th District Court

CONCLUSIONS OF LAW
Cause No. D-1-GN-21-003198 (Consolidated)

# APPENDIX C

The department has determined that the rule as proposed will not affect rural communities, as it does not directly regulate any rural community.

The department has not drafted a local employment impact statement under the Administrative Procedures Act, §2001.022, as the agency has determined that the rule as proposed will not impact local economies.

The department has determined that Government Code, §2001.0225 (Regulatory Analysis of Major Environmental Rules), does not apply to the proposed rule.

The department has determined that there will not be a taking of private real property, as defined by Government Code, Chapter 2007, as a result of the proposed rule.

In compliance with the requirements of Government Code, §2001.0221, the department has prepared the following Government Growth Impact Statement (GGIS). The rule as proposed, if adopted, will not create a government program; not result in an increase or decrease in the number of full-time equivalent employee needs; not result in a need for additional General Revenue funding; not affect the amount of any fee; create a new regulation (to prohibit "canned" hunting of mountain lions and establish trapping rules); not expand an existing regulation; neither increase nor decrease the number of individuals subject to regulation; and not positively or adversely affect the state's economy.

Comments on the proposed rule may be submitted to Richard Heilbrun, Texas Parks and Wildlife Department, 4200 Smith School Road, Austin, Texas 78744; (512) 389-8104; email: richard.heilbrun@tpwd.texas.gov or via the department website at www.tpwd.texas.gov.

The new rule is proposed under the authority of Parks and Wildlife Code, §67.004, which requires the commission by regulation to establish any limits on the taking, possession, propagation, transportation, importation, exportation, sale, or offering for sale of nongame fish or wildlife that the department considers necessary to manage the species.

The proposed new rule affects Parks and Wildlife Code, Chapter 67.

*§65.950.   Mountain Lions (Puma concolor).*

(a)    In this section "captivity" means the state of being held under control, or kept caged, penned, or trapped.

(b)    No person in this state may:

(1)    hunt a mountain lion that is in captivity;

(2)    release a mountain lion from captivity for purposes of:

(A)    being hunted;

(B)    training dogs;

(3)    allow a live mountain lion to be captured in a trap or snare for more than 36 hours; or

(4)    conduct, promote, assist, or advertise an activity prohibited by this subsection.

(c)    This section does not:

(1)    prohibit a person from humanely dispatching a lawfully trapped mountain lion; or

(2)    apply to the use of snares designed to break away or disassemble with 285 pounds of force or less.

The agency certifies that legal counsel has reviewed the proposal and found it to be within the state agency's legal authority to adopt.

Filed with the Office of the Secretary of State on April 8, 2024.

TRD-202401417
James Murphy
General Counsel
Texas Parks and Wildlife Department
Earliest possible date of adoption: May 19, 2024
For further information, please call: (512) 389-4775



# TITLE 34.  PUBLIC FINANCE

# PART 1.   COMPTROLLER OF PUBLIC ACCOUNTS

## CHAPTER 3.   TAX ADMINISTRATION
## SUBCHAPTER O.   STATE AND LOCAL SALES AND USE TAXES

### 34 TAC §3.334

The Comptroller of Public Accounts proposes the repeal of §3.334, concerning local sales and use taxes. The comptroller repeals existing §3.334 to replace it with new §3.334.  The repeal of §3.334 will be effective the date the new §3.334 takes effect.

*Brief explanation of the proposed rulemaking.*

It has been called to the comptroller's attention that the October 27, 2023 notice of proposed rulemaking did not contain a statement of fiscal implications for small businesses or rural communities as required by Government Code, Chapter 2006. See (48 TexReg 6340) (October 27, 2023). Therefore, the comptroller is proposing to repeal the adopted rule as proposed in the October 27, 2023 notice of proposed rulemaking. The comptroller is simultaneously proposing to readopt the text of the rule effective on January 5, 2024, with amendments, under the same number and title, with the repeal to be effective as of the date of the adopted rule.

*Fiscal note.*

Brad Reynolds, Chief Revenue Estimator, has determined that repeal of the current rule is of no consequence apart from facilitation of adoption of a new substitute §3.334 and has no fiscal implications in and of itself.  The fiscal implications of the repeal are the same as the fiscal implication of the proposed new substitute §3.334. The statements in this fiscal note are supplemented by the additional statements in the preamble to the proposed new §3.334, which the comptroller will propose to adopt concurrently with this proposed repeal.

Brad Reynolds has determined the following for each year of the first five years that the proposed repeal and the substitute new rule will be in effect.

*The additional estimated cost to the state and to local governments expected as a result of enforcing or administering the rule.*

There will be no additional estimated cost to the state and to local governments expected as a result of enforcing or administering the proposed repeal of the existing rule and concurrent new rule.

The proposed amendments explain the manner in which the comptroller intends to apply the consummation statutes. The explanation should lead to greater taxpayer compliance, and less audit resources required to enforce or administer the rule.

*The estimated reductions in costs to the state and to local governments as a result of enforcing or administering the rule.*

There will be no estimated reductions in costs to the state and to local governments as a result of enforcing or administering the proposed repeal of the existing rule and the concurrent new rule. Local governments do not administer the tax, and the comptroller will not be reducing the size of its audit staff as a result of the rule.

*The estimated loss or increase in revenue to the state or to local governments as a result of enforcing or administering the rule, and the foreseeable implications relating to cost or revenues of the state or local governments.*

Change in sourcing of transactions subject to local sales taxation could result in net change in sales tax revenue of local taxing entities generally, which may be significant for some jurisdictions. Most, but not all, reductions in taxable transactions sourced to some jurisdictions would be increases in taxable transactions sourced to other jurisdictions. If the comptroller repeals the existing rule and concurrently adopts the proposed new rule, it is estimated that there could be a $28.5 million reduction in aggregate local sales tax levies sourced to unincorporated areas without local sales tax or with cumulative local county and special district tax rates less than the cumulative local rates that applied at the locations where the taxable transactions were formerly sourced. A $28.5 million reduction in aggregate local tax levies would result in reduced state service charge revenue of $570,000.

Reliable estimates of net changes in revenue for each of the 1,759 local sales taxing jurisdictions that might stem from compliance with the proposed repeal of the existing rule and concurrent adoption of new rule cannot feasibly be produced by the comptroller.

*Public benefits and costs.*

Brad Reynolds, Chief Revenue Estimator, has determined the following for each year of the first five years that the existing rule will be repealed and the proposed new rule will be in effect.

The public will benefit from greater clarity regarding the consummation standards, making compliance easier.

There may be additional economic costs to a person required to comply with the proposed repeal of the existing rule and adoption of the new rule. The rule may cause some vendors to realize that they are noncompliant. If the vendors come into compliance by changing from single-location reporting to multiple-location reporting, their compliance burden may increase. And if vendors change from multiple-location reporting to single-location reporting, their compliance burden may diminish.

*Local employment impact statement.*

For the first five years that the existing rule will be repealed and the proposed new rule will be in effect, the effect on local economies and employment, if any, cannot be determined. To the extent that the repeal of the existing rule and the proposed new rule leads to greater awareness and compliance with the local tax consummation standards, some vendors may change their reporting methods, which might positively or negatively affect the tax revenue of particular local tax jurisdictions. Whether a change in local tax revenue might increase or decrease the provision of local government services to an extent that would affect local economic activity or employment would depend on discretionary actions of the governing body or the electorate of an affected jurisdiction, and cannot be determined.

*Government growth impact statement.*

Brad Reynolds, Chief Revenue Estimator, has determined the following for each year of the first five years that the existing rule will be repealed and the proposed new rule will be in effect: the amendment will not create or eliminate a government program; will not require the creation or elimination of employee positions; will not require an increase or decrease in future legislative appropriations to the comptroller; will not require an increase or decrease in fees paid to the comptroller; will not create a new regulation; will increase the number of individuals subject to the rule's applicability because sellers without a physical presence in a local tax jurisdiction will be required to collect local use tax if they are required to collect state use tax; and will not positively or adversely affect this state's economy.

*Economic impact statement and regulatory flexibility analysis.*

A "rural community" is a municipality with a population of less than 25,000. The comptroller estimates that there are 1,098 such rural communities, of which 1,017 impose a sales tax and may have revenue affected by compliance with the rule.

A "small business" is a legal entity, including a corporation, partnership, or sole proprietorship, that: (A) is formed for the purpose of making a profit; (B) is independently owned and operated; and (C) has fewer than 100 employees or less than $6 million in annual gross receipts. The Comptroller estimates that there are 470,000 businesses with fewer than 100 employees, and 377,000 businesses with annual gross receipts less than $6 million; the sum of these two estimates would overstate the number of small businesses, as many businesses would be expected to have both fewer than 100 employees and less than $6 million in annual gross receipts.

To the extent that the repeal of the existing rule and the adoption of the proposed new rule leads to greater awareness and compliance with the local tax consummation standards, some vendors may change their reporting methods, which might positively or negatively affect the tax revenue of particular local tax jurisdictions. As previously explained, the comptroller does not have sufficient data on the business operations of each business to identify and quantify the businesses and transactions that might be affected, and the positive or negative revenue impact on each tax jurisdiction.

It is conceivable that repeal of the existing rule and adoption of the proposed new rule may cause some vendors, small or large, to realize that they are noncompliant. If the vendors come into compliance by changing from single-location reporting to multiple-location reporting, their compliance burden may increase.

The repeal of the existing rule and the adoption of the proposed new rule will expand the local tax collection obligations of remote sellers - out-of-state sellers that collect state use tax must also collect local sales tax. The expansion of the remote seller local tax collection obligation may benefit small businesses in Texas by reducing the perception of customers that purchases from out-of-state sellers are preferable because out-of-state sellers charge less sales or use tax than the small businesses in Texas.

The proposed new rule adds subsection (b)(6):

"If a small business or a micro-business operates a single location out of which it conducts all of its business activities, the

comptroller will presume that the location is a place of business of the seller."

To the extent that repeal of the existing rule facilitates the adoption of the proposed new rule, the repeal will simplify the collection of local sales tax for many small businesses and micro-businesses.

*Public hearing*

The comptroller will hold a hearing to take public comments, on May 9, 2024, at 9:00 a.m. in Room 2.034 of the Barbara Jordan Building, 1601 Congress Avenue, Austin, Texas 78701. Interested persons may sign up to testify beginning at 8:30 a.m. and testimony will be heard on a first come first serve basis beginning at 9:00 a.m. All persons will have 10 minutes to present their testimony and shall also provide their testimony in writing prior to their oral testimony.

*Comments*

You may submit comments on the proposal to Jenny Burleson, Director, Tax Policy Division, P.O. Box 13528 Austin, Texas 78711 or to the email address: tp.rule.comments@cpa.texas.gov. The comptroller must receive your comments no later than 30 days from the date of publication of the proposal in the *Texas Register*.

*Statement of the statutory or other authority under which the rulemaking is proposed.*

The repeal is proposed under Tax Code, §§111.002 (Comptroller's Rule; Compliance; Forfeiture), 321.306 (Comptroller's Rules), 322.203 (Comptroller's Rules), and 323.306 (Comptroller's Rules), which authorize the comptroller to adopt rules to implement the tax statutes.

*Sections or articles of the code affected.*

The repeal affects Tax Code, §151.0595 (Single Local Tax Rate for Remote Sellers); Tax Code, Chapter 321, Subchapters A, B, C, D, and F; Tax Code, Chapter 322; and Tax Code, Chapter 323.

*§3.334. Local Sales and Use Taxes.*

The agency certifies that legal counsel has reviewed the proposal and found it to be within the state agency's legal authority to adopt.

Filed with the Office of the Secretary of State on April 8, 2024.

TRD-202401426
Jenny Burleson
Director, Tax Policy Division
Comptroller of Public Accounts
Earliest possible date of adoption: May 19, 2024
For further information, please call: (512) 475-2220



**34 TAC §3.334**

The Comptroller of Public Accounts proposes new §3.334, concerning local sales and use taxes. The comptroller proposes new §3.334 to readopt the text of existing §3.334 proposed for repeal, with the addition of paragraph (b)(6).

*Brief explanation of the proposed rule.*

In January 2020, the comptroller initiated a rulemaking to update its local sales and use tax rule. The comptroller subsequently adopted amendments in 2020, 2023, and 2024. (49 TexReg 53) (January 5, 2024), (48 TexReg 391) (January 27, 2023), (45 TexReg 3499) (May 22, 2020). The amendments implemented House Bill 1525, 86th Legislature, 2019, which placed local sales and use tax collection responsibilities on marketplace providers. The amendments also implemented House Bill 2153, 86th Legislature, 2019, which set a single local use tax rate that remote sellers may elect to use. The amendments also expanded the local sales tax collection responsibilities of sellers based on the United States Supreme Court decision in *South Dakota v. Wayfair, Inc.,* 138 S. Ct. 2080 (June 21, 2018). These amendments have been noncontroversial.

The rulemaking made other revisions to the text, which are now the subject of litigation in Cause No. D-1-GN-21-003198, *City of Coppell, Texas, et al. v. Glenn Hegar,* in the 201st District Court of Travis County Texas. The Plaintiff cities claim that the agency did not comply with the rulemaking procedures in Government Code, §2001.024 and Government Code, Chapter 2006. The purpose of this rulemaking is to address those claims by proposing the readoption of the rule, with amendments, and a more complete statement of the elements required by Government Code, §2001.024 and Government Code, Chapter 2006.

The comptroller proposes to add the following definitions:

"Micro-business--a legal entity, including a corporation, partnership, or sole proprietorship, that:

(A) is formed for the purpose of making a profit;

(B) is independently owned and operated; and

(C) has not more than 20 employees."

"Small business--a legal entity, including a corporation, partnership, or sole proprietorship, that:

(A) is formed for the purpose of making a profit;

(B) is independently owned and operated; and

(C) has fewer than 100 employees or less than $6 million in annual gross receipts."

The definition of "independently owned and operated business" is taken from the Attorney General of Texas' Government Code Chapter 2006 Small Businesses and Rural Communities Impact Guidelines updated in December 2017.

The definitions of "micro-business" and "small business" are taken from Government Code, Chapter 2006.

The comptroller further proposes to add subsection (b)(6):

"If a small business seller or a micro-business seller operates a single location out of which it conducts all of its business activities, the comptroller will presume that the location is a place of business of the seller."

*Fiscal note.*

Brad Reynolds, Chief Revenue Estimator, has determined the following for each year of the first five years that the rule will be in effect. The fiscal note considers the effect of the prior 2020, 2023, and 2024 amendments to the rule, as well as the amendments in this proposal.

*The additional estimated cost to the state and to local governments expected as a result of enforcing or administering the rule.*

There will be no additional estimated cost to the state and to local governments expected as a result of enforcing or administering the proposed rule. The proposed amendments explain the man-

ner in which the comptroller intends to apply the consummation statutes. The explanation should lead to greater taxpayer compliance, and less audit resources required to enforce or administer the rule.

*The estimated reductions in costs to the state and to local governments as a result of enforcing or administering the rule.*

There will be no estimated reductions in costs to the state and to local governments as a result of enforcing or administering the rule amendments. Local governments do not administer the tax, and the comptroller will not be reducing the size of its audit staff as a result of the rule.

*The estimated loss or increase in revenue to the state or to local governments as a result of enforcing or administering the rule, and the foreseeable implications relating to cost or revenues of the state or local governments.*

Change in sourcing of transactions subject to local sales taxation could result in net change in sales tax revenue of local taxing entities generally, with the net change quite significant for some jurisdictions. Most, but not all, reductions in taxable transactions sourced to some jurisdictions would be increases in taxable transactions sourced to other jurisdictions. But to the extent that transactions previously sourced within an incorporated municipality would be sourced to an unincorporated area without a cumulative local tax rate levied by municipal (pursuant to a limited purpose annexation agreement), county, and/or special purpose taxing authorities commensurate with the cumulative local tax rate levied by the municipal, county, and/or special purpose taxing authorities applicable where the transactions were formerly sourced, there would be a reduction in aggregate local sales tax levies and consequent reduction in state service charge revenues under §§ 321.503, 322.303, and 323.503, Tax Code.

For reasons further discussed, reliable estimates of net changes in revenue by individual jurisdictions for the 1,759 local sales taxing jurisdictions that might stem from compliance with the rule cannot feasibly be produced by the comptroller. Even if the requisite audits of potentially affected sales tax permittees in every jurisdiction could be timely performed to support such estimation, the sales tax permittees are not static entities. It would not be plausible to assume that those who currently source local tax to a location that is not a place of business as defined in the rule would not adjust their operations to qualify such locations as places of business and consequently not be obligated to change the sourcing of local tax.

Plaintiff cities allege that portions of the proposed rule are invalid, that the proposed rule "dramatically" or "fundamentally" changes the former rule, that compliance with the proposed rule will require vendors to change to existing reporting methods, and that the changes to existing reporting methods will result in the loss of revenue to the cities.

One consultant estimated that the City of Carrollton would have a likely net loss of $1.1 to $2 million; that the City of Coppell would have a likely net loss of $18.8 million of $30.8 million, that the City of DeSoto would have a likely net loss of $5.1 million, that the City of Farmers Branch would have a likely net loss of $600,000 to $1.8 million, and the City of Humble would have a likely net loss of $5.6 million. The consultant did not provide the comptroller with data to support these calculations and he declined to identify the vendors that he predicted would have to change their reporting methods.

The comptroller does not have sufficient data to verify these calculations or to make similar estimates for other jurisdictions. The agency does have data regarding the amount of sales tax receipts that that a vendor reports to local jurisdictions. But, that data does not prove that the vendor is incorrectly reporting, that the vendor would change its reporting as a result of the rule amendments, or that specific jurisdictions would gain or lose tax revenue as a result of the rule amendments. Those determinations would require an understanding of the business operations of the vendor to determine which business locations were "places of business" for purposes of local tax sourcing. Then, the comptroller would have to examine individual transactions to determine the location where the orders were received, the location where the orders were fulfilled, and the location where the order was delivered, since all three locations are potential sourcing locations. Then, the comptroller would have to compare that information with how the vendor has been reporting local tax on each transaction, identify the circumstances, if any, that would require the vendor to change its methods of reporting as a result of the rule, and determine the dollar value for each transaction. The comptroller does not have sufficient information on the individual vendors to make this determination.

The consultant's explanation of his methodology confirms that the comptroller does not have sufficient data on hand, and that the comptroller could not reasonably acquire the necessary data to perform a study for every jurisdiction. The consultant identified and researched the "top tier" taxpayers for the cities in his study, and then conducted research to determine who they were selling to and whether any sales were made other than through websites. The research ranged from interviews with local employees, to passive research on web pages, job postings, certificate of occupancy maps/filings, and in some instances, purchases were made as well as physical visits to the taxpayer's locations. From this research, the consultant identified "suspect" taxpayers and estimated the value of their shipment outside of the city. In doing this work, the consultant estimated that he spent forty hours per jurisdiction. The comptroller does not have the time or resources to conduct what is essentially an audit of the tens of thousands of permitted taxpayers to identify noncompliant taxpayers and then estimate the extent of their noncompliance.

With the exception of the City of Round Rock, the Plaintiff cities have alleged that their jurisdictions have a particular type of taxpayer that is primarily affected - "fulfillment centers" that ship orders to customers. According to the cities, the fulfillment centers are sourcing local tax to the cities in which they are located, pursuant to Tax Code, §321.203(c-1)(1), which provides that a sale is consummated at the place of business of the retailer from which the retailer ships or delivers the item. For subsection (c-1)(1) to apply, a fulfillment center has to be a "place of business of the retailer" for local sales tax sourcing purposes. The term "place of business of the retailer" (hereinafter "place of business") is defined by Tax Code, §321.002(a)(3)(A) to include a location at which three or more orders are received during a calendar year.

The Plaintiff cities contend that the fulfillment centers are properly sourcing local tax to the cities in which they are located because every fulfillment center is automatically a "place of business." The theory is that a fulfillment center is automatically a "place of business" because it has to "receive" orders as a necessary prerequisite to fulfilling the orders, and a fulfillment center can be expected to "receive" three or more orders in a calendar year.

Subsection (c)(7) of the proposed rule now explicitly states that the location where an order is "received" for purposes of local sales tax sourcing is the location where the order is *initially* received. Therefore, under the proposed rule, a fulfillment center that processes orders forwarded from another location is not automatically a "place of business" for local tax sourcing. The Plaintiff cities contend that if the fulfillment centers in their jurisdiction begin sourcing local sales tax to other cities, they will lose millions of dollars in tax revenue.

The merits of the conflicting interpretations are discussed in the preambles of the previous rulemakings. The issue here is the effect on local tax revenue, and whether the comptroller can reliably estimate the effect on cities, individually or collectively. The estimates of the Plaintiff cities and the fulfillment centers in those cities cannot be reliably projected to other cities. The comptroller does not have data to identify the "fulfillment centers" in any particular jurisdiction or statewide - it is not a characteristic that is reported to the agency.

And, even if agency could identify "fulfillment centers" from its data, the agency could not assume that the fulfillment centers in other cities are sourcing local tax like the Plaintiff cities' fulfillment centers purportedly are sourcing. For reasons enumerated to the Revenue Estimating Division by agency counsel, it is comptroller's opinion that a fulfillment center could reasonably reach a different conclusion, and conclude that it was not automatically a "place of business" for local tax sourcing purposes, as claimed by the Plaintiff cities.

First, the text of former §3.334(h)(3) indicated that a fulfillment center is not automatically a "place of business" for local sourcing (emphasis added):

"(3) Consummation of sale. The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in this state, regardless of whether they have a place of business in Texas or multiple places of business in the state.

...

(B) Order received at a place of business in Texas, fulfilled at a location that is not a place of business. When an order that is placed over the telephone, through the Internet, or by any means other than in person is received by the seller at a place of business in Texas, and the seller *fulfills the order at a location that is not a place of business of the seller in Texas, such as a warehouse or distribution center,* the sale is consummated at the place of business at which the order for the taxable item is received.

...

(D) Order fulfilled within the state at a location that is not a place of business. When an order is received by a seller at any location other than a place of business of the seller in this state, and

the seller *fulfills the order at a location in Texas that is not a place of business of the seller,* then the sale is consummated at the location in Texas to which the order is shipped or delivered, or the location where it is transferred to the purchaser."

(41 TexReg 260, 265) (2016) (former 34 Tex. Admin. Code §3.334(h)(3), emphasis added); (39 TexReg 9597, 9606) (2014) (former 34 Tex. Admin. Code §3.334(h)(3), emphasis added).

Second, the consummation rules in former §3.334(h)(3) were augmented with an explicit provision for fulfillment centers, which the former rule referred to as "distribution centers" (emphasis added):

"(2) *Distribution centers,* manufacturing plants, storage yards, warehouses, and similar facilities.

(A) A *distribution center,* manufacturing plant, storage yard, warehouse, or similar facility operated by a seller at which the seller receives three or more orders for taxable items during the calendar year is a place of business.

(B) If a salesperson who receives three or more orders for taxable items within a calendar year is assigned to work from, or to work at, a *distribution center,* manufacturing plant, storage yard, warehouse, or similar facility operated by a seller, *then* the facility is a place of business.

(C) If a location that is a place of business of the seller, such as a sales office, is in the same building as a *distribution center,* manufacturing plant, storage yard, warehouse, or similar facility operated by a seller, *then* the entire facility is a place of business of the seller."

(41 TexReg 260, 263) (2016) (former 34 Tex. Admin. Code §3.334(e)(2), emphasis added); (39 TexReg 9597, 9605) (2014) (former 34 Tex. Admin. Code §3.334(e)(2), emphasis added).

If a distribution center were automatically a "place of business" for local tax sourcing as the Plaintiff cities contend, subparagraphs (B) and (C) would not be required - there would be no need for a salesperson or a sales office to "then" make the distribution center a "place of business" for local tax sourcing purposes.

Third, in addition to its rule, the comptroller distributed Publication 94-105, sometimes called the "Local Sales and Use Tax Bulletin - Guidelines for Collecting Local Sales and Use Tax," or "Tax Topics - Guidelines of Collecting Local Sales and Use Tax" (Guidelines). These Guidelines were posted on the comptroller's website and indexed in the comptroller's State Tax Automated Research System. Since at least 2007, the Guidelines referred to a "location within the state that is not a place of business (such as a warehouse or distribution center)." *E.g.,* STAR Accession No. 200902596L (February 2009). The Guidelines were intended as a general guide and not as a comprehensive resource. But, an ordinary reader would not walk away with the impression that a taxpayer's fulfillment center was automatically a "place of business" for purposes of local tax sourcing.

Fourth, in 2016, the comptroller rewrote the Guidelines to be even more specific regarding fulfillment centers: "The warehouse from which the person ships those items is not a place of business, unless the warehouse separately qualifies as a place of business." STAR Accession No. 201606995L (June 1, 2016).

And, fifth, in 2019, a comptroller letter ruling discussed fulfillment centers, referring to the former rule, then in effect: "Scenario One: Taxpayer Retailer operates fulfillment centers in Texas that are not open to the public. ... When an order is received at a location that is not a place of business and is *fulfilled in Texas at a location that is not a place of business,* the sale is consummated at the location in Texas to which the order is shipped. *See* §3.334(h)(3)(D). For Scenario One, local sales and use tax is due based on the location where the order is delivered." STAR Accession No. 201906015L (June 13, 2019) (emphasis added).

If the Plaintiff cities and their consultant's study are right about how the various fulfillment centers in their cities reported local tax, those fulfillment centers must have either disregarded the comptroller's prior written guidance, overlooked the guidance, or interpreted the guidance as being the opposite of what the comptroller intended. But, it cannot be assumed that fulfillment

centers in other cities have also disregarded, overlooked, or interpreted the prior rulings in such a way that they will have to change their reporting as a result of the proposed rule. So, even if the comptroller could identify the permitted locations that are fulfillment centers, the revenue implications of the proposed rule cannot be reliably extrapolated from the study conducted on behalf of the Plaintiff cities.

Furthermore, the cities' calculations of revenue loss assume the proposed rule would force fulfillment centers to begin sourcing local tax to other cities, when that is not the case. The Legislature set a low threshold for a location to be a "place of business" for local tax sourcing - the receipt of three or more orders during a calendar year. A fulfillment center that is not a "place of business" under the proposed rule could easily become one by directly receiving three or more orders. The Plaintiff cities have alleged that it is easier to source local tax to one jurisdiction than to source to many. So, a fulfillment warehouse would have an incentive to become a "place of business." And, a fulfillment center with a tax sharing agreement with a city would have an even greater incentive to make the minor adjustments required to become a "place of business," so as to maintain the return on its revenue sharing agreement. Therefore, even if the potential tax revenue loss from fulfillment centers could be reliably measured, it is unreasonable to assume that no fulfillment center would take remedial efforts to continue its sourcing procedures.

The City of Round Rock has asserted claims that are different from or in addition to the claims of the other Plaintiff cities. The City has suggested that the proposed rule will radically change the way that Texas retailers with one place of business in Texas will source local tax. However, for enumerated reasons, agency counsel advises that it should be assumed that in most instances, the proposed rule will not change the sourcing of products sold by Texas retailers with one place of business in Texas.

First, the proposed rule does not change the comptroller's previous application of the statute, which does not recognize special treatment for vendors with a "single place of business" for purposes of local tax sourcing. Proposed subsection (c) states in relevant part:

"The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in Texas, regardless of whether they have no place of business in Texas, a single place of business in Texas, or multiple places of business in Texas."

The language in the proposed rule has the same effect as the language in the prior 2014 and 2016 versions of the rule - no special treatment for vendors with a single "place of business":

"The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in this state, regardless of whether they have a place of business in Texas or multiple places of business in the state."

(41 TexReg 260, 265) (2016) (former 34 Tex. Admin. Code §3.334(h)(3); (39 TexReg 9597, 9606) (2014) (former 34 Tex. Admin. Code §3.334(h)(3)).

Second, the proposed rule should have little impact on most businesses that are a single place of business in the ordinary sense of the word - *i.e.,* all operations are conducted at a single location. If orders are received and fulfilled in a single facility, local sales tax will continue to be sourced to that location. A typical example would be a retail store.

The City of Round Rock suggests that a single facility that conducts all transactions through automated shopping cart software may be affected, since a software application does not constitute a "place of business." However, the threshold for becoming a "place of business" is very low, including the receipt by sales personnel of three or more orders per year. If a vendor occasionally engages with a customer directly, such as by telephone or email, as the final step in receiving an order under subsection (c)(7), the vendor's location should be a "place of business" for local tax sourcing, even if orders are ordinarily processed by the vendor's automated software. To ease the burden on auditors, and on small businesses and micro-businesses that operate out of a single location, proposed subsection (b)(6) presumes that is the case.

Third, sales made by through a marketplace by a seller with a single place of business will not be affected because those orders are sourced to destination by Tax Code, §321.203(e-1).

The City of Round Rock claims that Dell Technologies has a single place of business in the city and suggests that Dell is sourcing all of its local sales tax collections to the City of Round Rock. The city further claims that it will lose a significant amount of local sales tax revenue under the proposed rule. However, when the comptroller served third party discovery on Dell to understand how Dell's current business operations would be affected by the proposed rule, both Round Rock and Dell objected. Dell insisted that the inquiry should only be "conducted under the applicable sections of the Texas Tax Code" in Chapter 111 -- in other words, an audit.

This discovery dispute illustrates the impracticability of preparing a revenue impact estimate for the City of Round Rock - it would require the audit of Dell and any other vendors from whom the city thinks there will be a revenue loss. A local sales tax audit of Dell would have to examine all the business locations of Dell to determine which, if any of the locations were a "place of business" for local tax sourcing purposes. And, if the comptroller verified that Dell in fact operated a single "place of business" in Texas, the comptroller would still have to audit the sourcing of Dell's sales to determine which sales were compliant and which sales were noncompliant with the proposed rule. For example, Dell purports to have a sales force in Round Rock. Assuming that orders generated by that sales force are received in Round Rock and not fulfilled from a "place of business" elsewhere in Texas, those sales would still be sourced to Round Rock. And, any orders fulfilled from Dell's "place of business" in Round Rock would still be sourced to Round Rock. And, any orders delivered in Round Rock would still be sourced to Round Rock. Therefore, to meaningfully determine the revenue impact of the proposed rule on the City of Round Rock, the comptroller would have to thoroughly audit Dell and any other vendors from whom Round Rock thinks there will be a revenue loss.

Repeating this audit exercise on a jurisdiction-by-jurisdiction basis across the state is infeasible. Audits are not quick or easy. Considerable time and effort is required to acquire and analyze taxpayer data. Taxpayers are understandably reluctant to furnish confidential business data. And, the data varies in degree of accessibility. The average duration of an audit in fiscal year 2023 was 450 days, and the average number auditor hours spent on an audit was 80.5 hours.

It is also possible that an audit of Dell or other vendors would identify noncompliance with sourcing provisions that are not involved in the disputed rulemaking. For example, if Dell were sourcing marketplace sales to the City of Round Rock rather than

to the delivery location specified by statute, Dell would have to change its sourcing methods and the City of Round Rock would suffer a revenue loss. But, that revenue loss should be attributed to the marketplace statute enacted by the Legislature, not the proposed comptroller rule.

This possibility is real. During the 2020 rulemaking, the City of San Marcos filed comments claiming that the proposed rule would cause the city to lose $7-8 million in local sales tax revenue generated by a Best Buy call center, with the net effect of economic development incentive revenue loss estimated at $3.4 million. Best Buy also filed comments stating that it created a subsidiary called Best Buy Texas.com LLC and sourced the local tax for all of its Internet and telephone sales to the City of San Marcos. This would mean that if a resident of the City of Houston placed an online order from Houston and picked up the item at an affiliated Best Buy Stores outlet in Houston, Best Buy Texas.com LLC would collect local sales tax for the City of San Marcos. However, it appears that the Best Buy website was actually operated by a different Best Buy affiliate, which would make it a marketplace provider as defined in Tax Code, §151.0242(a)(2). Under the marketplace statute, local tax is sourced to the location where the item is shipped or delivered or at which possession is taken by the purchaser. Thus, any loss to the City of San Marcos of local sales tax revenue from the sale to the Houston resident would be the result of compliance with the marketplace statute. And the loss of tax revenue would not be attributable to the rule. The loss resulting from compliance with the statute would occur without regard to whether the proposed rule was adopted.

The comptroller has considered various other comments of the Plaintiff cities and others to the effect that the proposed rule will dramatically change local tax sourcing and concluded that the comments do not accurately apply the proposed rule. The comptroller disagrees with the allegation that the proposed rule will "dramatically change where a sale is consummated if the Comptroller interprets the change to require destination sourcing when a sale is made online using a retailer's website, even if the retailer has only one place of business." And, the comptroller disagrees with the allegation that "sales made by way of websites using the Internet are treated as having been consummated where the taxable item is delivered to the buyer instead of where the order for the item is received and fulfilled by the seller." The consummation hierarchy in subsection (c) does not require the alleged results.

The comptroller has amended the definition of "place of business of the seller" in subsection (a)(18) to provide that the term does not include a computer server, Internet protocol address, domain name, website, or software application. While the discussion of computer servers was added to the rule in 2020, the comptroller had previously advised taxpayers that the location of the server does not create a "place of business" for purposes of the local tax collection and that orders placed on a website or though applications and processed and routed by servers are not "received at" a place of business. *See* STAR Accession Nos. 200510723L (October 6, 2005), 200605592L (May 17, 2006), and 201906015L (June 13, 2019).

The comptroller has also amended the definition of "place of business of the seller" in subsection (a)(18) to provide that staffing by one or more sales personnel is usually required. The statement is not a requirement, but an objective criterion that will often be an important factor in determining whether an outlet, office, or location is a "place of business." In the January

2023 rulemaking, the comptroller explained how the reference to sales personnel is a logical extension of prior comptroller statements, including prior statements regarding fulfillment warehouses and computer servers. *See* (48 TexReg 391, 398) (2023).

Agency counsel has advised that there are several instances in which the rule proposed for readoption is substantively different than the 2016 version of the rule. Subsection (c)(2)(B)(ii) provides that a seller required to collect state use tax must also collect local use tax. This provision expands the collection responsibilities of sellers, which, formerly were obligated to collect local use tax only if they were engaged in business in the local jurisdiction. This provision should have a positive, but indeterminant revenue effect on all local jurisdictions.

The proposed rule, as compared with the 2016 version, adds provisions that the sourcing of marketplace sales is based on destination, because the consummation statute was amended in 2019 by House Bill 1525 to require that result. The fiscal note for House Bill 1525 estimated a probable revenue gain for local governments. However, because House Bill 1525 was already in effect, and rulemaking is not required to effectuate the legislation, the comptroller is assigning no fiscal implication to the rule revision incorporating House Bill 1525, other than a potential increase in compliance with the statute.

The proposed rule, as compared with the 2016 version, also adds provisions for remote sellers to apply a single local tax rate, as authorized by House Bill 2153 in 2019. The fiscal note for House Bill 2153 stated:

"There would be no significant fiscal implications for local governments in the aggregate; there could be some variance in distribution of revenue among jurisdictions compared with the distribution that would occur were all remote sellers required to collect and remit tax at applicable local combined rates, but the extent of such variance cannot be determined and would not be expected to be significant in relation to the total allocations of local sales and use tax revenues."

The comptroller is assigning no fiscal implication to the rule revision incorporating House Bill 2153, since the statute went into effect before the rulemaking, and rulemaking was not required to implement the statute.

The proposed rule, as compared with the 2016 version, alters the treatment of a "traveling salesperson," which was previously defined as: "A seller, or an agent or employee of a seller, who visits potential purchasers in person to solicit sales, and who does not carry inventory ready for immediate sale, but who may carry samples or perform demonstrations of items for sale." Former §3.334(h)(4) provided: "Orders taken by traveling salespersons are received by the seller at the administrative office or other place of business from which the traveling salesperson operates." (41 TexReg 260, 265) (2016) (former 34 Tex. Admin. Code §3.334(h)(4)). The former rule did not further explain the location from which the traveling salesperson operates.

Subsection (b)(4) of the proposed rule replaces the traveling salesperson language with a provision for an order that is received by a salesperson who is not at a place of business when the salesperson receives the order. Subsection (b)(4) provides that the order is treated as being received at the location from which the salesperson operates. Subsection (b)(4) further provides that the location from which the salesperson operates is the principal fixed location where the salesperson conducts work-related activities.

Commenters have reported that the orders from some traveling salespersons have been sourced to the location to which the traveling salesperson is "assigned," even though the traveling salesperson may conduct principal work-related activities from another location. In these situations, the proposed rule might result in a change to local tax sourcing. However, the significance of this change is indeterminant. The comptroller does not have data to identify traveling salespersons as defined under the former rule, and does not have data to identify the instances in which a traveling salesperson has been "assigned" to a location from which the salesperson does not conduct principal work-related activities. And, if the agency could identify those instances, without conducting extensive audits, the agency would still not know which instances would result in a change of sourcing. For example, if the order is fulfilled from a "place of business," the location of the salesperson is irrelevant.

In summary, due to both to the number of taxing jurisdictions and lack of pertinent, detailed information regarding the specific circumstances of the myriad businesses reporting local sales and use taxes, estimation of fiscal effects of the proposed rule, whether of dollar amounts or merely sign of change, on an individual jurisdiction by jurisdiction basis is infeasible of execution.

The comptroller recognizes that compliance with the proposed rule could result in changes to the local tax reporting methods of some vendors. As a result, there could be loss or increase in revenue to individual local governments. A revenue loss to one local government will often but not always be a revenue gain to others. There will also be revenue gains experienced by all local tax jurisdictions from the expansion of the use tax collection obligations of remote, out-of-state sellers. For the reasons previously stated, the aggregate net gain or loss cannot be reliably estimated by the comptroller from available or reasonably accessible data.

The comptroller has been provided with estimates that some cities will experience net revenue losses. However, the comptroller has not been provided with sufficient information to verify the estimates, and the data from the estimates cannot be extrapolated to other local tax jurisdictions. That said, the estimates of anticipated revenue losses provided by Plaintiffs and others in comments to proposed rulemakings are accepted as valid good faith estimates and may serve as a basis for estimating a minimum amount of revenue from online sales associated with locations that are not places of business as defined in the rule, that will be subject to different sourcing if the affected sales tax permittees cannot or choose not to modify their procedures in order to qualify such business locations as places of business for purposes of local sales tax sourcing. As those estimates were constructed from 2020 data and there has been significant inflation as well as real economic growth since then, they are scaled up by a factor of 1.35 to yield a minimum estimate of $110 million on a current annual basis that may be lost to those cities, plus another $80 million that may be lost to the other local taxing jurisdictions imposing tax at the affected locations, for a total of $190 million of gross revenue reductions, of which 85% or $161.5 million would be estimated gains to other local taxing jurisdiction, and 15% or $28.5 million would be reduction in aggregate local sales tax levies sourced to unincorporated areas without local sales tax or with cumulative local county and special district tax rates less than the cumulative local rates that applied at the locations where the taxable transactions were formerly sourced. A $28.5 million reduction in aggregate local tax levies would result in reduced state service charge revenue of $570,000.

*Public benefits and costs.*

Brad Reynolds, Chief Revenue Estimator, has determined the following for each year of the first five years that the rule will be in effect.

The public will benefit from greater clarity regarding the consummation standards, making compliance easier.

There may be additional economic costs to a person required to comply with the rule. It is conceivable that the rule may cause some vendors to realize that they are noncompliant. If the vendors come into compliance by changing from single-location reporting to multiple-location reporting, their compliance burden may increase. And if vendors change from multiple-location reporting to single-location reporting, their compliance burden may diminish.

*Local employment impact statement.*

For the first five years that the rule will be in effect, the effect on local economies and employment, if any, cannot be determined. To the extent that the proposed rule leads to greater awareness and compliance with the local tax consummation standards, some vendors may change their reporting methods, which might positively or negatively affect the tax revenue of particular local tax jurisdictions. Whether a change in local tax revenue might increase or decrease the provision of local government services to an extent that would affect local economic activity or employment would depend on discretionary actions of the governing body or the electorate of an affected jurisdiction, and cannot be determined.

*Government growth impact statement.*

Brad Reynolds, Chief Revenue Estimator, has determined the following for each year of the first five years that the rule will be in effect: the amendment will not create or eliminate a government program; will not require the creation or elimination of employee positions; will not require an increase or decrease in future legislative appropriations to the comptroller; will not require an increase or decrease in fees paid to the comptroller; will not create a new regulation; will increase the number of individuals subject to the rule's applicability because sellers without a physical presence in a local tax jurisdiction will be required to collect local use tax if they are required to collect state use tax; and will not positively or adversely affect this state's economy.

*Economic impact statement and regulatory flexibility analysis.*

A statement of fiscal implications for small businesses or rural communities under Government Code, Chapter 2006 is normally not required for a comptroller rule because the rule is proposed under Tax Code, Title 2. In this instance, the rule is proposed under both Title 2 (State Taxation) and Title 3 (Local Taxation). So, the comptroller provides the following statement.

A "rural community" is a municipality with a population of less than 25,000. The comptroller estimates that there are 1,098 such rural communities, of which 1,017 impose a sales tax and may have revenue affected by compliance with the rule.

A "small business" is a legal entity, including a corporation, partnership, or sole proprietorship, that: (A) is formed for the purpose of making a profit; (B) is independently owned and operated; and (C) has fewer than 100 employees or less than $6 million in annual gross receipts. The Comptroller estimates that there are 470,000 businesses with fewer than 100 employees, and 377,000 businesses with annual gross receipts less than $6 million; the sum of these two estimates would overstate the num-

ber of small businesses, as many businesses would be expected to have both fewer than 100 employees and less than $6 million in annual gross receipts.

To the extent that the proposed rule leads to greater awareness and compliance with the local tax consummation standards, some vendors may change their reporting methods, which might positively or negatively affect the tax revenue of particular local tax jurisdictions. As previously explained, the comptroller does not have sufficient data on the business operations of each business to identify and quantify the businesses and transactions that might be affected, and the positive or negative revenue impact on each tax jurisdiction.

Although the fiscal implications for local tax jurisdictions cannot be quantified without additional information, several observations can be made. First, the cities asserting that the clarifications provided by the rule will result in changes in sourcing and reporting of local taxes, with consequent reductions in their revenues, tend to be cities with Local Government Code, Chapter 380 agreements involving rebates of local sales and use tax revenues. And, cities with Government Code, Chapter 380 agreements involving distribution or fulfillment centers tend to be larger than rural communities. Of the 1,017 rural communities imposing sales tax, 45 have Chapter 380 agreements involving sales tax on file with the comptroller. Almost all of those involve rebates of sales tax to physical shopping centers or restaurants, or of sales tax paid on equipment or building materials, and would unlikely be affected by a change in sourcing of online sales associated with locations that are not places of business; two of the 45 communities that are not party to the suit against the comptroller appear to involve distribution or fulfillment centers and could be affected if the centers will not qualify as places of business (in Grand Prairie and Waxahachie). Five of the six cities currently suing the Comptroller have populations greater than 25,000. The comptroller has not verified the assertions of revenue shifting. But, if the assertions are correct, the revenue shifting away from cities with Chapter 380 agreements may result in positive revenues for the smaller rural communities from whom the revenues have been diverted.

Second, although the comptroller does not have sufficient information to determine the number of small businesses that may change their local tax reporting as a result of greater awareness and compliance with the local tax consummation standards, it is reasonable to assume that many small businesses will not be affected. A small business that has all of its operations at a single location in Texas, including sales and fulfillment, is probably reporting local sales tax to the taxing jurisdiction where it is located, and it will continue that reporting. Non-marketplace orders fulfilled from that location will continue to be consummated at that location pursuant to §3.334(c)(1) or (c)(2)(A). And, sales of a small business that are through a marketplace are already subject to destination sourcing performed by the marketplace provider. Nevertheless, in some circumstances, it is conceivable that the rule may cause some vendors, small or large, to realize that they are noncompliant. If the vendors come into compliance by changing from single-location reporting to multiple-location reporting, their compliance burden may increase.

Third, the proposed rule expands the local tax collection obligations of remote sellers - out-of-state sellers that collect state use tax must also collect local sales tax. The expansion of the remote seller local tax collection obligation may benefit small businesses in Texas by reducing the perception of customers that purchases from out-of-state sellers are preferable because out-of-state sellers charge less sales or use tax than the small businesses in Texas.

Since the comptroller initiated its rulemaking in 2020, the agency has considered ways to minimize the potential adverse impact on small businesses. In the fall of 2020, the agency added a multi-address search capability to its local sales tax rate locator. And in the spring of 2021, the agency added downloadable address files to determine local tax rates. And, in the winter of 2023, the agency added map search and latitude/longitude search options.

In addition, the comptroller is proposing to add subsection (b)(6):

"If a small business or a micro-business operates a single location out of which it conducts all of its business activities, the comptroller will presume that the location is a place of business of the seller."

The comptroller cannot make a location a "place of business" by rule if the statute does not allow it. But, the agency can presume that a location is a "place of business" based on indicative facts, such as a small, independent business that conducts all of its business operations out of a single location. If extraordinary facts are presented to the agency, the presumption may be rebutted.

The agency has considered other alternatives to reduce the adverse impact on small businesses and micro-businesses, such as allowing small or micro-businesses to source local sales tax to their principal place of business, or establishing a single local sales tax rate for small or micro-businesses that would be distributed similar to the distribution of the single local sales tax collected by remote sellers. However, because these proposals would require amendments to the consummation statutes, the comptroller does not have the regulatory flexibility to implement these proposed methods.

*Public hearing*

The comptroller will hold a hearing to take public comments, on May 9, 2024, at 9:00 a.m. in Room 2.034 of the Barbara Jordan Building, 1601 Congress Avenue, Austin, Texas 78701. Interested persons may sign up to testify beginning at 8:30 a.m. and testimony will be heard beginning at 9:00 a.m. on a first come first serve basis. All persons will have 10 minutes to present their testimony and shall also provide their testimony in writing prior to their oral testimony.

*Comments*

You may submit comments on the proposal to Jenny Burleson, Director, Tax Policy Division, P.O. Box 13528 Austin, Texas 78711 or to the email address: tp.rule.comments@cpa.texas.gov. The comptroller must receive your comments no later than 30 days from the date of publication of the proposal in the *Texas Register*.

*Statement of the statutory or other authority under which the rule is proposed to be adopted.*

Tax Code, §§111.002 (Comptroller's Rule; Compliance; Forfeiture), 321.306 (Comptroller's Rules), 322.203 (Comptroller's Rules), and 323.306 (Comptroller's Rules) authorize the comptroller to adopt rules to implement the tax statutes.

*Sections or articles of the code affected.*

Tax Code, §151.0595 (Single Local Tax Rate for Remote Sellers); Tax Code, Chapter 321, Subchapters A, B, C, D, and F; Tax Code, Chapter 322; and Tax Code, Chapter 323 are affected.

*§3.334. Local Sales and Use Taxes.*

(a) Definitions. The following words and terms, when used in this section, shall have the following meanings, unless the context clearly indicates otherwise.

(1) Cable system--The system through which a cable service provider delivers cable television or bundled cable service, as those terms are defined in §3.313 of this title (relating to Cable Television Service and Bundled Cable Service).

(2) City--An incorporated city, municipality, town, or village.

(3) City sales and use tax--The tax authorized under Tax Code, §321.101(a), including the additional municipal sales and use tax authorized under Tax Code, §321.101(b), the municipal sales and use tax for street maintenance authorized under Tax Code, §327.003, the Type A Development Corporation sales and use tax authorized under Local Government Code, §504.251, the Type B Development Corporation sales and use tax authorized under Local Government Code, §505.251, a sports and community venue project sales and use tax adopted by a city under Local Government Code, §334.081, and a municipal development corporation sales and use tax adopted by a city under Local Government Code, §379A.081. The term does not include the fire control, prevention, and emergency medical services district sales and use tax authorized under Tax Code, §321.106, or the municipal crime control and prevention district sales and use tax authorized under Tax Code, §321.108.

(4) Comptroller's website--The comptroller's website concerning local taxes located at: https://comptroller.texas.gov/taxes/sales/.

(5) County sales and use tax--The tax authorized under Tax Code, §323.101, including a sports and community venue project sales and use tax adopted by a county under Local Government Code, §334.081. The term does not include the county health services sales and use tax authorized under Tax Code, §324.021, the county landfill and criminal detention center sales and use tax authorized under Tax Code, §325.021, or the crime control and prevention district sales and use tax authorized under Tax Code, §323.105.

(6) Drop shipment--A transaction in which an order is received by a seller at one location, but the item purchased is shipped by the seller from another location, or is shipped by the seller's third-party supplier, directly to a location designated by the purchaser.

(7) Engaged in business--This term has the meaning given in §3.286 of this title (relating to Seller's and Purchaser's Responsibilities).

(8) Extraterritorial jurisdiction--An unincorporated area that is contiguous to the corporate boundaries of a city as defined in Local Government Code, §42.021.

(9) Fulfill--To complete an order by transferring possession of a taxable item to a purchaser, or to ship or deliver a taxable item to a location designated by the purchaser. The term does not include receiving or tracking an order, determining shipping costs, managing inventory, or other activities that do not involve the transfer, shipment, or delivery of a taxable item to the purchaser or a location designated by the purchaser.

(10) Independently owned and operated business--A self-controlling entity that is not a subsidiary of another entity or otherwise subject to control by another entity, and that is not publicly traded.

(11) Itinerant vendor--A seller who travels to various locations for the purpose of receiving orders and making sales of taxable items and who has no place of business in this state. A person who sells items through vending machines is also an itinerant vendor. A salesperson that operates out of a place of business in this state is not an itinerant vendor.

(12) Kiosk--A small stand-alone area or structure:

(A) that is used solely to display merchandise or to submit orders for taxable items from a data entry device, or both;

(B) that is located entirely within a location that is a place of business of another seller, such as a department store or shopping mall; and

(C) at which taxable items are not available for immediate delivery to a purchaser.

(13) Local taxes--Sales and use taxes imposed by any local taxing jurisdiction.

(14) Local taxing jurisdiction--Any of the following:

(A) a city that imposes sales and use tax as provided under paragraph (3) of this subsection;

(B) a county that imposes sales and use tax as provided under paragraph (5) of this subsection;

(C) a special purpose district created under the Special District Local Laws Code or other provisions of Texas law that is authorized to impose sales and use tax by the Tax Code or other provisions of Texas law and as governed by the provisions of Tax Code, Chapters 321 or 323 and other provisions of Texas law; or

(D) a transit authority that imposes sales and use tax as authorized by Transportation Code, Chapters, 451, 452, 453, 457, or 460 and governed by the provisions of Tax Code, Chapter, 322.

(15) Marketplace provider--This term has the meaning given in §3.286 of this title.

(16) Micro-business--A legal entity, including a corporation, partnership, or sole proprietorship, that:

(A) is formed for the purpose of making a profit;

(B) is independently owned and operated; and

(C) has not more than 20 employees.

(17) Order placed in person--An order placed by a purchaser with the seller while physically present at the seller's place of business regardless of how the seller subsequently enters the order.

(18) Place of business of the seller - general definition--A place of business of the seller must be an established outlet, office, or location operated by a seller for the purpose of receiving orders for taxable items from persons other than employees, independent contractors, and natural persons affiliated with the seller. An "established outlet, office, or location" usually requires staffing by one or more sales personnel. The term does not include a computer server, Internet protocol address, domain name, website, or software application. The "purpose" element of the definition may be established by proof that the sales personnel of the seller receive three or more orders for taxable items at the facility during the calendar year. Additional criteria for determining when a location is a place of business of the seller are provided in subsection (b) of this section for distribution centers, manufacturing plants, storage yards, warehouses and similar facilities; kiosks; and purchasing offices. An outlet, office, facility, or any location that contracts with a retail or commercial business to process for that business invoices, purchase orders, bills of lading, or other equivalent records onto which sales tax is added, including an office operated for the purpose of buying and selling taxable goods to be used or consumed by the retail or commercial business, is not a place of business

of the seller if the comptroller determines that the outlet, office, facility, or location functions or exists to avoid the tax legally due under Tax Code, Chapters 321, 322, and 323 or exists solely to rebate a portion of the tax imposed by those chapters to the contracting business. An outlet, office, facility, or location does not exist to avoid the tax legally due under Tax Code, Chapters 321, 322, and 323 or solely to rebate a portion of the tax imposed by those chapters if the outlet, office, facility, or location provides significant business services, beyond processing invoices, to the contracting business, including logistics management, purchasing, inventory control, or other vital business services.

(19)    Purchasing office--An outlet, office, facility, or any location that contracts with a retail or commercial business to process for that business invoices, purchase orders, bills of lading, or other equivalent records onto which sales tax is added, including an office operated for the purpose of buying and selling taxable goods to be used or consumed by the retail or commercial business.

(20)    Remote Seller--As defined in §3.286 of this title, a remote seller is a seller engaged in business in this state whose only activity in the state is:

(A)    engaging in regular or systematic solicitation of sales of taxable items in this state by the distribution of catalogs, periodicals, advertising flyers, or other advertising, by means of print, radio, or television media, or by mail, telegraphy, telephone, computer data base, cable, optic, microwave, or other communication system for the purpose of effecting sales of taxable items; or

(B)    soliciting orders for taxable items by mail or through other media including the Internet or other media that may be developed in the future.

(21)    Seller--This term has the meaning given in §3.286 of this title and also refers to any agent or employee of the seller.

(22)    Small business--A legal entity, including a corporation, partnership, or sole proprietorship, that:

(A)    is formed for the purpose of making a profit;

(B)    is independently owned and operated; and

(C)    has fewer than 100 employees or less than $6 million in annual gross receipts.

(23)    Special purpose district--A local governmental entity authorized by the Texas legislature for a specific purpose, such as crime control, a local library, emergency services, county health services, or a county landfill and criminal detention center.

(24)    Storage--This term has the meaning given in §3.346 of this title (relating to Use Tax).

(25)    Temporary place of business of the seller--A location operated by a seller for a limited period of time for the purpose of selling and receiving orders for taxable items and where the seller has inventory available for immediate delivery to a purchaser. For example, a person who rents a booth at a weekend craft fair or art show to sell and take orders for jewelry, or a person who maintains a facility at a job site to rent tools and equipment to a contractor during the construction of real property, has established a temporary place of business. A temporary place of business of the seller includes a sale outside of a distribution center, manufacturing plant, storage yard, warehouse, or similar facility of the seller in a parking lot or similar space sharing the same physical address as the facility but not within the walls of the facility.

(26)    Transit authority--A metropolitan rapid transit authority (MTA), advanced transportation district (ATD), regional or subregional transportation authority (RTA), city transit department (CTD),

county transit authority (CTA), regional mobility authority (RMA) or coordinated county transportation authority created under Transportation Code, Chapters 370, 451, 452, 453, 457, or 460.

(27)    Two percent cap--A reference to the general rule that, except as otherwise provided by Texas law and as explained in this section, a seller cannot collect, and a purchaser is not obligated to pay, more than 2.0% of the sales price of a taxable item in total local sales and use taxes for all local taxing jurisdictions.

(28)    Use--This term has the meaning given in §3.346 of this title.

(29)    Use tax--A tax imposed on the storage, use or other consumption of a taxable item in this state.

(b)    Determining the place of business of a seller.

(1)    Distribution centers, manufacturing plants, storage yards, warehouses, and similar facilities.

(A)    A distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller for the purpose of selling taxable items where sales personnel of the seller receive three or more orders for taxable items during the calendar year from persons other than employees, independent contractors, and natural persons affiliated with the seller is a place of business of the seller. Forwarding previously received orders to the facility for fulfilment does not make the facility a place of business.

(B)    If a location that is a place of business of the seller, such as a sales office, is in the same building as a distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller, then the entire facility is a place of business of the seller.

(2)    Kiosks. A kiosk is not a place of business of the seller for the purpose of determining where a sale is consummated for local tax purposes. A seller who owns or operates a kiosk in Texas is, however, engaged in business in this state as provided in §3.286 of this title.

(3)    Purchasing offices.

(A)    A purchasing office is not a place of business of the seller if the purchasing office exists solely to rebate a portion of the local sales and use tax imposed by Tax Code, Chapters 321, 322, or 323 to a business with which it contracts; or if the purchasing office functions or exists to avoid the tax legally due under Tax Code, Chapters 321, 322, or 323. A purchasing office does not exist solely to rebate a portion of the local sales and use tax or to avoid the tax legally due under Tax Code, Chapters 321, 322, or 323 if the purchasing office provides significant business services to the contracting business beyond processing invoices, including logistics management, purchasing, inventory control, or other vital business services.

(B)    In making a determination under subparagraph (A) of this paragraph, as to whether a purchasing office provides significant business services to the contracting business beyond processing invoices, the comptroller will compare the total value of the other business services to the value of processing invoices. If the total value of the other business services, including logistics management, purchasing, inventory control, or other vital business services, is less than the value of the service to process invoices, then the purchasing office will be presumed not to be a place of business of the seller.

(C)    If the comptroller determines that a purchasing office is not a place of business of the seller, the sale of any taxable item is deemed to be consummated at the place of business of the seller from whom the purchasing office purchased the taxable item for resale and local sales and use taxes are due according to the following rules.

*(i)* When taxable items are purchased from a Texas seller, local sales taxes are due based on the location of the seller's place of business where the sale is deemed to be consummated, as determined in accordance with subsection (c) of this section.

*(ii)* When the sale of a taxable item is deemed to be consummated at a location outside of this state, local use tax is due based on the location where the items are first stored, used or consumed by the entity that contracted with the purchasing office in accordance with subsection (d) of this section.

(4) An order that is received by a salesperson who is not at a place of business of the seller when the salesperson receives the order is treated as being received at the location from which the salesperson operates. Examples include orders that a salesperson receives by mail, telephone, including Voice over Internet Protocol and cellular phone calls, facsimile, and email while traveling. The location from which the salesperson operates is the principal fixed location where the salesperson conducts work-related activities. The location from which a salesperson operates will be a place of business of the seller only if the location meets the definition of a "place of business of a seller" in subsection (a)(16) of this section on its own, without regard to the orders imputed to that location by this paragraph.

(5) A facility without sales personnel is usually not a "place of business of the seller." A vending machine is not "an established outlet, office, or location," and does not constitute a "place of business of the seller." Instead, a vending machine sale is treated as a sale by an itinerant vendor. See subsections (a)(10) and (c)(6) of this section. However, a walk-in retail outlet with a stock of goods available for immediate purchase through a cashier-less point of sale terminal at the outlet would be "an established outlet, office, or location" so as to constitute a "place of business of the seller" even though sales personnel are not required for every sale. A computer that operates an automated shopping cart software program is not an established outlet, office, or location," and does not constitute a "place of business of the seller." A computer that operates an automated telephone ordering system is not "an established outlet, office, or location," and does not constitute a "place of business of the seller."

(6) If a small business or a micro-business operates a single location out of which it conducts all of its business activities, the comptroller will presume that the location is a place of business of the seller.

(c) Local sales tax - Consummation of sale - determining the local taxing jurisdictions to which sales tax is due. Except for the special rules applicable to remote sellers in subsection (i)(3) of this section, direct payment permit purchases in subsection (j) of this section, and certain taxable items, including taxable items sold by a marketplace provider, as provided in subsection (k) of this section, each sale of a taxable item is consummated at the location indicated by the provisions of this subsection. The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in Texas, regardless of whether they have no place of business in Texas, a single place of business in Texas, or multiple places of business in Texas.

(1) Consummation of sale - order received at a place of business of the seller in Texas.

(A) Order placed in person. Except as provided by paragraph (3) of this subsection, when an order for a taxable item is placed in person at a seller's place of business in Texas, including at a temporary place of business of the seller in Texas, the sale of that item is consummated at that place of business of the seller, regardless of the location where the order is fulfilled.

(B) Order not placed in person.

*(i)* Order fulfilled at a place of business of the seller in Texas. When an order is received at a place of business of the seller in Texas and is fulfilled at a place of business of the seller in Texas, the sale is consummated at the place of business where the order is fulfilled.

*(ii)* Order not fulfilled at a place of business of the seller in Texas. When an order is received at a place of business of the seller in Texas and is fulfilled at a location that is not a place of business of the seller in Texas, the sale is consummated at the place of business where the order is received.

(2) Consummation of sale - order not received at a place of business of the seller in Texas.

(A) Order fulfilled at a place of business of the seller in Texas. When an order is received at a location that is not a place of business of the seller in Texas or is received outside of Texas, and is fulfilled from a place of business of the seller in Texas, the sale is consummated at the place of business where the order is fulfilled.

(B) Order not fulfilled from a place of business of the seller in Texas.

*(i)* Order fulfilled in Texas. When an order is received at a location that is not a place of business of the seller in Texas and is fulfilled from a location in Texas that is not a place of business of the seller, the sale is consummated at the location in Texas to which the order is shipped or delivered, or at which the purchaser of the item takes possession.

*(ii)* Order not fulfilled in Texas. When an order is received by a seller at a location that is not a place of business of the seller in Texas, and is fulfilled from a location outside of Texas, the sale is not consummated in Texas. However, a use is consummated at the first point in Texas where the item is stored, used, or consumed after the interstate transit has ceased. A taxable item delivered to a point in Texas is presumed to be for storage, use, or consumption at that point until the contrary is established. Local use tax should be collected as provided in subsection (d) of this section. Except as provided in subsection (i)(3) of this section, a remote seller required to collect state use tax under §3.286(b)(2) of this title must also collect local use tax.

(3) Exception for qualifying economic development agreements entered into before January 1, 2009, pursuant to Tax Code, §321.203(c-4) - (c-5) or §323.203(c-4) - (c-5). This paragraph is effective until September 1, 2024. If applicable, the local sales tax due on the sale of a taxable item is based on the location of the qualifying warehouse, which is a place of business of the seller, from which the item is shipped or delivered or at which the purchaser of the item takes possession.

(4) Local sales taxes are due to each local taxing jurisdiction with sales tax in effect where the sale is consummated. Local use tax may also be due if the total amount of local sales taxes due does not reach the two percent cap, and the item purchased is shipped or delivered to a location in one or more different local taxing jurisdictions, as provided in subsection (d) of this section.

(5) Multiple special purpose district taxes, multiple transit authority sales taxes, or a combination of the two may apply to a single transaction. If the sale of a taxable item is consummated at a location within the boundaries of multiple special purpose districts or transit authorities, local sales tax is owed to each of the jurisdictions in effect at that location. For example, a place of business of the seller located in the city of San Antonio is within the boundaries of both the San Antonio Advanced Transportation District and the San Antonio Metropolitan Transit Authority, and the seller is required to collect sales tax for both transit authorities. Similarly, a place of business of the seller in Flower Mound is located within the boundaries of two special purpose districts,

the Flower Mound Crime Control District and the Flower Mound Fire Control District, and the seller is responsible for collecting sales tax for both special purpose districts.

(6) Itinerant vendors; vending machines.

(A) Itinerant vendors. Sales made by itinerant vendors are consummated at, and itinerant vendors must collect sales tax based upon, the location where the item is delivered or at which the purchaser of the item takes possession. Itinerant vendors do not have any responsibility to collect use tax.

(B) Vending machines. Sales of taxable items made from a vending machine are consummated at the location of the vending machine. See §3.293 of this title (relating to Food; Food Products; Meals; Food Service) for more information about vending machine sales.

(7) The location where the order is received by or on behalf of the seller means the physical location of a seller or third party such as an established outlet, office location, or automated order receipt system operated by or on behalf of the seller where an order is initially received by or on behalf of the seller and not where the order may be subsequently accepted, completed or fulfilled. An order is received when all of the information from the purchaser necessary to the determination whether the order can be accepted has been received by or on behalf of the seller. The location from which a product is shipped shall not be used in determining the location where the order is received by the seller.

(d) Local use tax. The provisions addressing the imposition of state use tax in §3.346 of this title also apply to the imposition of local use tax. For example, consistent with §3.346(e) of this title, all taxable items that are shipped or delivered to a location in this state that is within the boundaries of a local taxing jurisdiction are presumed to have been purchased for use in that local taxing jurisdiction as well as presumed to have been purchased for use in the state.

(1) General rules.

(A) When local use taxes are due in addition to local sales taxes as provided by subsection (c) of this section, all applicable use taxes must be collected or accrued in the following order until the two percent cap is reached: city, county, special purpose district, and transit authority. If more than one special purpose district use tax is due, all such taxes are to be collected or accrued before any transit authority use tax is collected or accrued. See subparagraphs (D) and (E) of this paragraph.

(B) If a local use tax cannot be collected or accrued at its full rate without exceeding the two percent cap, the seller cannot collect it, or any portion of it, and the purchaser is not responsible for accruing it.

(C) If a seller collects a local sales tax on an item, or a purchaser accrues a local sales tax on an item, a use tax for the same type of jurisdiction is not due on the same item. For example, after a city sales tax has been collected or accrued for an item, no use tax is due to that same or a different city on that item, but use tax may be due to a county, special purpose district, or transit authority. Similarly, if one or more special purpose district sales taxes have been collected or accrued for an item, no special purpose district use tax is due on that item, and if one or more transit authority sales taxes have been collected or accrued for an item, no transit authority use tax is due on that item.

(D) Collection or accrual of use tax for multiple special purpose districts. If more than one special purpose district use tax is in effect at the location where use of an item occurs, the special purpose district taxes are due in the order of their effective dates, beginning

with the earliest effective date, until the two percent cap is met. The effective dates of all special purpose district taxes are available on the comptroller's website. However, if the collection or accrual of use tax for the district with the earliest effective date would exceed the two percent cap, the tax for that district is not due and the seller or purchaser should determine, following the criteria in subparagraphs (A) - (C) of this paragraph, whether use tax is due for the district that next became effective.

(i) If the competing special purpose district taxes became effective on the same date, the special purpose district taxes are due in the order of the earliest date for which the election in which the district residents authorized the imposition of sales and use tax by the district was held.

(ii) If the elections to impose the local taxes were held on the same date, the special purpose district taxes are due in the order of the earliest date for which the enabling legislation under which each district was created became effective.

(E) Collection or accrual of use tax for multiple transit authorities. If more than one transit authority use tax is in effect at the location where use of an item occurs, and the two percent cap has not been met, the transit authority taxes are due in the order of their effective dates, beginning with the earliest effective date, until the two percent cap is met. The effective dates of all transit authority taxes are available on the comptroller's website. However, if the collection or accrual of use tax for the authority with the earliest effective date would exceed the two percent cap, the tax for that authority is not due and the seller or purchaser should determine, following the criteria in subparagraphs (A) - (D) of this paragraph, whether use tax is due for the authority that next became effective.

(i) If the competing transit authorities became effective on the same date, the transit authority taxes are due in the order of the earliest date for which the election in which the authority residents authorized the imposition of sales and use tax by the authority was held.

(ii) If the elections to impose local taxes were held on the same date, the transit authority use taxes are due in the order of the earliest date for which the enabling legislation under which each authority was created became effective.

(2) General use tax rules applied to specific situations. The following fact patterns explain how local use tax is to be collected or accrued and remitted to the comptroller based on, and subject to, the general rules in paragraph (1) of this subsection.

(A) Sale consummated outside the state, item delivered from outside the state or from a location in Texas that is not operated by the seller - local use tax due. Except as provided in subsection (i)(3) of this section, if a sale is consummated outside of this state according to the provisions of subsection (c) of this section, and the item purchased is either shipped or delivered to a location in this state as designated by the purchaser from a location outside of the state, or if the order is drop shipped directly to the purchaser from a third-party supplier, local use tax is owed based upon the location in this state to which the order is shipped or delivered or at which the purchaser of the item takes possession. The seller is responsible for collecting the local use tax due on the sale. If the seller does not collect the local use taxes due on the sale, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller according to the provisions in paragraph (1) of this subsection. For example, if an order for a taxable item is received by a seller at a location outside of Texas, and the order is shipped to the purchaser from a location outside of the state, local use tax is due based upon the location to which the order is shipped or delivered or at which the purchaser of the item takes possession.

(B)  Sale consummated in Texas outside a local taxing jurisdiction, item delivered into one or more local taxing jurisdictions - local use tax due. If a sale is consummated at a location in Texas that is outside of the boundaries of any local taxing jurisdiction according to the provisions of subsection (c) of this section, and the order is shipped or delivered to the purchaser at a location in this state that is within the boundaries of one or more local taxing jurisdictions, local use tax is due based on the location to which the items are shipped or delivered or at which the purchaser of the item takes possession.  The seller is responsible for collecting the local use taxes due on the sale, regardless of the location of the seller in Texas.  If the seller fails to collect any local use taxes due, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller.

(C)  Sale consummated in any local taxing jurisdictions imposing less than 2.0% in total local taxes - local sales taxes and use taxes due.  If a sale is consummated at a location in Texas where the total local sales tax rate imposed by the taxing jurisdictions in effect at that location does not equal 2.0% according to the provisions of subsection (c) of this section, and the item is shipped or delivered to the purchaser at a location in this state that is inside the boundaries of a different local taxing jurisdiction, additional local use tax may be due based on the location to which the order is shipped or delivered or at which the purchaser of the item takes possession, subject to the two percent cap.  The seller is responsible for collecting any additional local use taxes due on the sale, regardless of the location of the seller in Texas. See subsection (i) of this section. If the seller fails to collect the additional local use taxes due, the purchaser is responsible for accruing such taxes and remitting them directly to the comptroller.

(i)  Example one - if an order is received in person at a place of business of the seller, such that the sale is consummated at the location where the order is received as provided under subsection (c)(1)(A) of this section, and the local sales tax due on the sale does not meet the two percent cap, additional local use taxes are due based on the location to which the order is shipped or delivered or at which the purchaser of the item takes possession, subject to the provisions in paragraph (1) of this subsection.

(ii)  Example two - if a seller receives an order for a taxable item at a seller's place of business in Texas, and the seller ships or delivers the item from an out-of-state location to a location in this state as designated by the purchaser, local sales tax is due based upon the location of the place of business of the seller where the order is received.  If the local sales tax due on the item does not meet the two percent cap, use taxes, subject to the provisions in paragraph (1) of this subsection, are due based upon the location where the items are shipped or delivered or at which the purchaser of the item takes possession.

(e)  Effect of other law.

(1)  Tax Code, Title 2, Subtitles A (General Provisions) and B (Enforcement and Collection), Tax Code, Chapter 141 (Multistate Tax Compact) and Tax Code, Chapter 151 (Limited Sales, Excise, and Use Tax) apply to transactions involving local taxes.  Related sections of this title and comptroller rulings shall also apply with respect to local taxes.  This includes authorities such as court cases and federal law that affect whether an item is taxable or is excluded or exempt from taxation.

(2)  Permits, exemption certificates, and resale certificates required by Tax Code, Chapter 151, shall also satisfy the requirements for collecting and remitting local taxes, unless otherwise indicated by this section or other sections of this title. For example, see subsection (n) of this section concerning prior contract exemptions.

(3)  Any provisions in this section or other sections of this title related to a seller's responsibilities for collecting and remitting lo-cal taxes to the comptroller shall also apply to a purchaser if the seller does not collect local taxes that are due.  The comptroller may proceed against the seller or purchaser for the local tax owed by either.

(f)  Tax rates.  Except as otherwise provided by law, no local governmental entity may adopt or increase a sales and use tax if, as a result of the adoption or increase of the tax, the combined rate of all sales and use taxes imposed by local taxing jurisdictions having territory in the local governmental entity would exceed 2.0% at any location within the boundaries of the local governmental entity's jurisdiction. The following are the local tax rates that may be adopted.

(1)  Cities. Cities may impose sales and use tax at a rate of up to 2.0%.

(2)  Counties.  Counties may impose sales and use tax at rates ranging from 0.5% to 1.5%.

(3)  Special purpose districts. Special purpose districts may impose sales and use tax at rates ranging from 0.125% to 2.0%.

(4)  Transit authorities.  Transit authorities may impose sales and use tax at rates ranging from 0.25% to 1.0%.

(g)  Jurisdictional boundaries, combined areas, and city tax imposed through strategic partnership agreements.

(1)  Jurisdictional boundaries.

(A)  City boundaries. City taxing jurisdictional boundaries cannot overlap one another and a city cannot impose a sales and use tax in an area that is already within the jurisdiction of another city.

(B)  County boundaries. County tax applies to all locations within that county.

(C)  Special purpose district and transit authority boundaries.  Special purpose districts and transit authorities may cross or share boundaries with other local taxing jurisdictions and may encompass, in whole or in part, other local taxing jurisdictions, including cities and counties. A geographic location or address in this state may lie within the boundaries of more than one special purpose district or more than one transit authority.

(D)  Extraterritorial jurisdictions.  Except as otherwise provided by paragraph (3) of this subsection concerning strategic partnership agreements and subsection (l)(5) of this section concerning the City of El Paso and Fort Bliss, city sales and use tax does not apply to taxable sales that are consummated outside the boundaries of the city, including sales made in a city's extraterritorial jurisdiction. However, an extraterritorial jurisdiction may lie within the boundaries of a special purpose district, transit authority, county, or any combination of the three, and the sales and use taxes for those jurisdictions would apply to those sales.

(2)  Combined areas. A combined area is an area where the boundaries of a city overlap the boundaries of one or more other local taxing jurisdictions as a result of an annexation of additional territory by the city, and where, as the result of the imposition of the city tax in the area in addition to the local taxes imposed by the existing taxing jurisdictions, the combined local tax rate would exceed 2.0%. The comptroller shall make accommodations to maintain a 2.0% rate in any combined area by distributing the 2.0% tax revenue generated in these combined areas to the local taxing jurisdictions located in the combined areas as provided in Tax Code, §321.102 or Health and Safety Code, §775.0754.  Combined areas are identified on the comptroller's website. Sellers engaged in transactions on which local sales or use taxes are due in a combined area, or persons who must self-accrue and remit tax directly to the comptroller, must use the combined area local code when reporting the tax rather than the codes for the individual

city, county, special purpose districts, or transit authorities that make up the combined area.

(3) City tax imposed through strategic partnership agreements.

(A) The governing bodies of a district, as defined in Local Government Code, §43.0751, and a city may enter into a limited-purpose annexation agreement known as a strategic partnership agreement. Under this agreement, the city may impose sales and use tax within all or part of the boundaries of a district. Areas within a district that are annexed for this limited purpose are treated as though they are within the boundaries of the city for purposes of city sales and use tax.

(B) Counties, transit authorities, and special purpose districts may not enter into strategic partnership agreements. Sales and use taxes imposed by those taxing jurisdictions do not apply in the limited-purpose annexed area as part of a strategic partnership agreement between a city and an authorized district. However, a county, special purpose district, or transit authority sales and use tax, or any combination of these three types of taxes, may apply at locations included in a strategic partnership agreement between a city and an authorized district if the tax is imposed in that area by the applicable jurisdiction as allowed under its own controlling authorities.

(C) Prior to September 1, 2011, the term "district" was defined in Local Government Code, §43.0751 as a municipal utility district or a water control and improvement district. The definition was amended effective September 1, 2011, to mean a conservation and reclamation district operating under Water Code, Chapter 49.

(h) Places of business of the seller and job sites crossed by local taxing jurisdiction boundaries.

(1) Places of business of the seller crossed by local taxing jurisdiction boundaries. If a place of business of the seller is crossed by one or more local taxing jurisdiction boundaries so that a portion of the place of business of the seller is located within a taxing jurisdiction and the remainder of the place of business of the seller lies outside of the taxing jurisdiction, tax is due to the local taxing jurisdictions in which the sales office is located. If there is no sales office, sales tax is due to the local taxing jurisdictions in which any cash registers are located.

(2) Job sites.

(A) Residential repair and remodeling; new construction of an improvement to realty. When a contractor is improving real property under a separated contract, and the job site is crossed by the boundaries of one or more local taxing jurisdictions, the local taxes due on any separately stated charges for taxable items incorporated into the real property must be allocated to the local taxing jurisdictions based on the total square footage of the real property improvement located within each jurisdiction, including the square footage of any standalone structures that are part of the construction, repair, or remodeling project. For more information about tax due on materials used at residential and new construction job sites, refer to §3.291 of this title (relating to Contractors).

(B) Nonresidential real property repair and improvement. When taxable services are performed to repair, remodel, or restore nonresidential real property, including a pipeline, transmission line, or parking lot, that is crossed by the boundaries of one or more local taxing jurisdictions, the local taxes due on the taxable services, including materials and any other charges connected to the services performed, must be allocated among the local taxing jurisdictions based upon the total mileage or square footage, as appropriate, of the repair, remodeling, or restoration project located in each jurisdiction. For more information about tax due on materials used at nonresidential real property repair and remodeling job sites, refer to §3.357 of this title (relating to Nonresidential Real Property Repair, Remodeling, and Restoration; Real Property Maintenance).

(i) Sellers' and purchasers' responsibilities for collecting or accruing local taxes.

(1) Sale consummated in Texas; seller responsible for collecting local sales taxes and applicable local use taxes. When a sale of a taxable item is consummated at a location in Texas as provided by subsection (c) of this section, the seller must collect each local sales tax in effect at the location. If the total rate of local sales tax due on the sale does not reach the two percent cap, and the seller ships or delivers the item into another local taxing jurisdiction, then the seller is required to collect additional local use taxes due, if any, based on the location to which the item is shipped or delivered or at which the purchaser of the item takes possession, regardless of the location of the seller in Texas. For more information regarding local use taxes, refer to subsection (d) of this section.

(2) Out-of-state sale; seller engaged in business in Texas. Except as provided in paragraph (3) of this subsection, when a sale is not consummated in Texas, a seller who is engaged in business in this state is required to collect and remit local use taxes due, if any, on orders of taxable items shipped or delivered at the direction of the purchaser into a local taxing jurisdiction in this state based upon the location in this state to which the item is shipped or delivered or at which the purchaser of the item takes possession as provided in subsection (d) of this section.

(3) Local use tax rate for remote sellers.

(A) A remote seller required to collect and remit one or more local use taxes in connection with a sale of a taxable item must compute the amount using:

(i) the combined tax rate of all applicable local use taxes based on the location to which the item is shipped or delivered or at which the purchaser of the item takes possession; or

(ii) at the remote seller's election, the single local use tax rate published in the *Texas Register.*

(B) A remote seller that is storing tangible personal property in Texas to be used for fulfillment at a facility of a marketplace provider that has certified that it will assume the rights and duties of a seller with respect to the tangible personal property, as provided for in §3.286 of this title, may elect the single local use tax rate under subparagraph (A)(ii) of this paragraph.

(C) Notice to the comptroller of election and revocation of election.

(i) Before using the single local use tax rate, a remote seller must notify the comptroller of its election using a form prescribed by the comptroller. A remote seller may also notify the comptroller of the election on its use tax permit application form. The remote seller must use the single local use tax rate for all of its sales of taxable items until the election is revoked as provided in clause (ii) of this subparagraph.

(ii) A remote seller may revoke its election by filing a form prescribed by the comptroller. If the comptroller receives the notice by October 1, the revocation will be effective January 1 of the following year. If the comptroller receives the notice after October 1, the revocation will be effective January 1 of the year after the following year. For example, a remote seller must notify the comptroller by October 1, 2020, for the revocation to be effective January 1, 2021. If the comptroller receives the revocation on November 1, 2020, the revocation will be effective January 1, 2022.

(D) Single local use tax rate.

(i) The single local use tax rate in effect for the period beginning October 1, 2019, and ending December 31, 2019, is 1.75%.

(ii) The single local use tax rate in effect for the period beginning January 1, 2020, and ending December 31, 2020, is 1.75%.

(E) Annual publication of single local use tax rate. Before the beginning of a calendar year, the comptroller will publish notice of the single local use tax rate in the *Texas Register* that will be in effect for that calendar year.

(F) Calculating the single local use tax rate. The single local use tax rate effective in a calendar year is equal to the estimated average rate of local sales and use taxes imposed in this state during the preceding state fiscal year. As soon as practicable after the end of a state fiscal year, the comptroller must determine the estimated average rate of local sales and use taxes imposed in this state during the preceding state fiscal year by:

(i) dividing the total amount of net local sales and use taxes remitted to the comptroller during the state fiscal year by the total amount of net state sales and use tax remitted to the comptroller during the state fiscal year;

(ii) multiplying the amount computed under clause (i) of this subparagraph by the rate provided in Tax Code, §151.051; and

(iii) rounding the amount computed under clause (ii) of this subparagraph to the nearest .0025.

(G) Direct refund. A purchaser may request a refund based on local use taxes paid in a calendar year for the difference between the single local use tax rate paid by the purchaser and the amount the purchaser would have paid based on the combined tax rate for all applicable local use taxes. Notwithstanding the refund requirements under §3.325(a)(1) of this title (relating to Refunds and Payments Under Protest), a non-permitted purchaser may request a refund directly from the comptroller for the tax paid in the previous calendar year, no earlier than January 1 of the following calendar year within the statute of limitation under Tax Code, 111.104 (Refunds).

(H) Marketplace providers. Notwithstanding subparagraph (A) of this paragraph, marketplace providers may not use the single local use tax rate and must compute the amount of local use tax to collect and remit using the combined tax rate of all applicable local use taxes.

(4) Purchaser responsible for accruing and remitting local taxes if seller fails to collect.

(A) If a seller does not collect the state sales tax, any applicable local sales taxes, or both, on a sale of a taxable item that is consummated in Texas, then the purchaser is responsible for filing a return and paying the tax. The local sales taxes due are based on the location in this state where the sale is consummated as provided in subsection (c) of this section.

(B) A purchaser who buys an item for use in Texas from a seller who does not collect the state use tax, any applicable local use taxes, or both, is responsible for filing a return and paying the tax. The local use taxes due are based on the location where the item is first stored, used, or consumed by the purchaser.

(C) For more information about how to report and pay use tax directly to the comptroller, see §3.286 of this title.

(5) Local tax is due on the sales price of a taxable item, as defined in Tax Code, §151.007, in the report period in which the taxable item is purchased or the period in which the taxable item is first stored, used, or otherwise consumed in a local taxing jurisdiction.

(6) A purchaser is not liable for additional local use tax if the purchaser pays local use tax using the rate elected by an eligible remote seller according to paragraph (3) of this subsection. The remote seller must be identified on the comptroller's website as electing to use the single local use tax rate. A purchaser must verify that the remote seller is listed on the comptroller's website. If the remote seller is not listed on the comptroller's website, the purchaser will be liable for additional use tax due in accordance to paragraph (4) of this subsection.

(j) Items purchased under a direct payment permit.

(1) When taxable items are purchased under a direct payment permit, local use tax is due based upon the location where the permit holder first stores the taxable items, except that if the taxable items are not stored, then local use tax is due based upon the location where the taxable items are first used or otherwise consumed by the permit holder.

(2) If, in a local taxing jurisdiction, storage facilities contain taxable items purchased under a direct payment exemption certificate and at the time of storage it is not known whether the taxable items will be used in Texas, then the taxpayer may elect to report the use tax either when the taxable items are first stored in Texas or are first removed from inventory for use in Texas, as long as use tax is reported in a consistent manner. See also §3.288(i) of this title (relating to Direct Payment Procedures and Qualifications) and §3.346(g) of this title.

(3) If local use tax is paid on stored items that are subsequently removed from Texas before they are used, the tax may be recovered in accordance with the refund and credit provisions of §3.325 of this title and §3.338 of this title (relating to Multistate Tax Credits and Allowance of Credit for Tax Paid to Suppliers).

(k) Special rules for certain taxable goods and services. Sales of the following taxable goods and services are consummated at, and local tax is due based upon, the location indicated in this subsection.

(1) Amusement services. Local tax is due based upon the location where the performance or event occurs. For more information on amusement services, refer to §3.298 of this title (relating to Amusement Services).

(2) Cable services. When a service provider uses a cable system to provide cable television or bundled cable services to customers, local tax is due as provided for in §3.313 of this title. When a service provider uses a satellite system to provide cable services to customers, no local tax is due on the service in accordance with the Telecommunications Act of 1996, §602.

(3) Florists. Local sales tax is due on all taxable items sold by a florist based upon the location where the order is received, regardless of where or by whom delivery is made. Local use tax is not due on deliveries of taxable items sold by florists. For example, if the place of business of the florist where an order is taken is not within the boundaries of any local taxing jurisdiction, no local sales tax is due on the item and no local use tax is due regardless of the location of delivery. If a Texas florist delivers an order in a local taxing jurisdiction at the instruction of an unrelated florist, and if the unrelated florist did not take the order within the boundaries of a local taxing jurisdiction, local use tax is not due on the delivery. For more information about florists' sales and use tax obligations, refer to §3.307 of this title (relating to Florists).

(4)　Landline telecommunications services. Local taxes due on landline telecommunications services are based upon the location of the device from which the call or other transmission originates. If the seller cannot determine where the call or transmission originates, local taxes due are based on the address to which the service is billed. For more information, refer to §3.344 of this title (relating to Telecommunications Services).

(5)　Marketplace provider sales. Local taxes are due on sales of taxable items through a marketplace provider based on the location in this state to which the item is shipped or delivered or at which the purchaser takes possession. For more information, refer to §3.286 of this title.

(6)　Mobile telecommunications services. Local taxes due on mobile telecommunications services are based upon the location of the customer's place of primary use as defined in §3.344(a)(8) of this title, and local taxes are to be collected as indicated in §3.344(h) of this title.

(7)　Motor vehicle parking and storage. Local taxes are due based on the location of the space or facility where the vehicle is parked. For more information, refer to §3.315 of this title (relating to Motor Vehicle Parking and Storage).

(8)　Natural gas and electricity. Any local city and special purpose taxes due are based upon the location where the natural gas or electricity is delivered to the purchaser. As explained in subsection (l)(1) of this section, residential use of natural gas and electricity is exempt from all county sales and use taxes and all transit authority sales and use taxes, most special purpose district sales and use taxes, and many city sales and use taxes. A list of the cities and special purpose districts that do impose, and those that are eligible to impose, local sales and use tax on residential use of natural gas and electricity is available on the comptroller's website. For more information, also refer to §3.295 of this title (relating to Natural Gas and Electricity).

(9)　Nonresidential real property repair and remodeling services. Local taxes are due on services to remodel, repair, or restore nonresidential real property based on the location of the job site where the remodeling, repair, or restoration is performed. See also subsection (h)(2)(B) of this section and §3.357 of this title.

(10)　Residential real property repair and remodeling and new construction of a real property improvement performed under a separated contract. When a contractor constructs a new improvement to realty pursuant to a separated contract or improves residential real property pursuant to a separated contract, the sale is consummated at the job site at which the contractor incorporates taxable items into the customer's real property. See also subsection (h)(2)(A) of this section and §3.291 of this title.

(11)　Waste collection services. Local taxes are due on garbage or other solid waste collection or removal services based on the location at which the waste is collected or from which the waste is removed. For more information, refer to §3.356 of this title (relating to Real Property Service).

(l)　Special exemptions and provisions applicable to individual jurisdictions.

(1)　Residential use of natural gas and electricity.

(A)　Mandatory exemptions from local sales and use tax. Residential use of natural gas and electricity is exempt from most local sales and use taxes. Counties, transit authorities, and most special purpose districts are not authorized to impose sales and use tax on the residential use of natural gas and electricity. Pursuant to Tax Code,

§321.105, any city that adopted a local sales and use tax effective October 1, 1979, or later is prohibited from imposing tax on the residential use of natural gas and electricity. See §3.295 of this title.

(B)　Imposition of tax allowed in certain cities. Cities that adopted local sales tax prior to October 1, 1979, may, in accordance with the provisions in Tax Code, §321.105, choose to repeal the exemption for residential use of natural gas and electricity. The comptroller's website provides a list of cities that impose tax on the residential use of natural gas and electricity, as well as a list of those cities that do not currently impose the tax, but are eligible to do so.

(C)　Effective January 1, 2010, a fire control, prevention, and emergency medical services district organized under Local Government Code, Chapter 344 that imposes sales tax under Tax Code, §321.106, or a crime control and prevention district organized under Local Government Code, Chapter 363 that imposes sales tax under Tax Code, §321.108, that is located in all or part of a municipality that imposes a tax on the residential use of natural gas and electricity as provided under Tax Code, §321.105 may impose tax on residential use of natural gas and electricity at locations within the district. A list of the special purpose districts that impose tax on residential use of natural gas and electricity and those districts eligible to impose the tax that do not currently do so is available on the comptroller's website.

(2)　Telecommunication services. Telecommunications services are exempt from all local sales taxes unless the governing body of a city, county, transit authority, or special purpose district votes to impose sales tax on these services. However, since 1999, under Tax Code, §322.109(d), transit authorities created under Transportation Code, Chapter 451 cannot repeal the exemption unless the repeal is first approved by the governing body of each city that created the local taxing jurisdiction. The local sales tax is limited to telecommunications services occurring between locations within Texas. See §3.344 of this title. The comptroller's website provides a list of local taxing jurisdictions that impose tax on telecommunications services.

(3)　Emergency services districts.

(A)　Authority to exclude territory from imposition of emergency services district sales and use tax. Pursuant to the provisions of Health and Safety Code, §775.0751(c-1), an emergency services district wishing to enact a sales and use tax may exclude from the election called to authorize the tax any territory in the district where the sales and use tax is then at 2.0%. The tax, if authorized by the voters eligible to vote on the enactment of the tax, then applies only in the portions of the district included in the election. The tax does not apply to sales made in the excluded territories in the district and sellers in the excluded territories should continue to collect local sales and use taxes for the local taxing jurisdictions in effect at the time of the election under which the district sales and use tax was authorized as applicable.

(B)　Consolidation of districts resulting in sales tax sub-districts. Pursuant to the provisions of Health and Safety Code, §775.018(f), if the territory of a district proposed under Health and Safety Code, Chapter 775 overlaps with the boundaries of another district created under that chapter, the commissioners court of each county and boards of the counties in which the districts are located may choose to create a consolidated district in the overlapping territory. If two districts that want to consolidate under Health and Safety Code, §775.024 have different sales and use tax rates, the territory of the former districts located within the consolidated area will be designated as sub-districts and the sales tax rate within each sub-district will continue to be imposed at the rate the tax was imposed by the former district that each sub-district was part of prior to the consolidation.

(4)　East Aldine Management District.

(A) Special sales and use tax zones within district; separate sales and use tax rate. As set out in Special District Local Laws Code, §3817.154(e) and (f), the East Aldine Management District board may create special sales and use tax zones within the boundaries of the District and, with voter approval, enact a special sales and use tax rate in each zone that is different from the sales and use tax rate imposed in the rest of the district.

(B) Exemptions from special zone sales and use tax. The sale, production, distribution, lease, or rental of; and the use, storage, or other consumption within a special sales and use tax zone of; a taxable item sold, leased, or rented by the entities identified in clauses (i) - (vi) of this subparagraph are exempt from the special zone sales and use tax. State and all other applicable local taxes apply unless otherwise exempted by law. The special zone sales and use tax exemption applies to:

*(i)* a retail electric provider as defined by Utilities Code, §31.002;

*(ii)* an electric utility or a power generation company as defined by Utilities Code, §31.002;

*(iii)* a gas utility as defined by Utilities Code, §101.003 or §121.001, or a person who owns pipelines used for transportation or sale of oil or gas or a product or constituent of oil or gas;

*(iv)* a person who owns pipelines used for the transportation or sale of carbon dioxide;

*(v)* a telecommunications provider as defined by Utilities Code, §51.002; or

*(vi)* a cable service provider or video service provider as defined by Utilities Code, §66.002.

(5) Imposition of city sales tax and transit tax on certain military installations; El Paso and Fort Bliss. Pursuant to Tax Code, §321.1045 (Imposition of Sales and Use Tax in Certain Federal Military Installations), for purposes of the local sales and use tax imposed under Tax Code, Chapter 321, the city of El Paso includes the area within the boundaries of Fort Bliss to the extent it is in the city's extraterritorial jurisdiction. However, the El Paso transit authority does not include Fort Bliss. See Transportation Code, §453.051 concerning the Creation of Transit Departments.

(m) Restrictions on local sales tax rebates and other economic incentives. Pursuant to Local Government Code, §501.161, Section 4A and 4B development corporations may not offer to provide economic incentives, such as local sales tax rebates authorized under Local Government Code, Chapters 380 or 381, to persons whose business consists primarily of purchasing taxable items using resale certificates and then reselling those same items to a related party. A related party means a person or entity which owns at least 80% of the business enterprise to which sales and use taxes would be rebated as part of an economic incentive.

(n) Prior contract exemptions. The provisions of §3.319 of this title (relating to Prior Contracts) concerning definitions and exclusions apply to prior contract exemptions.

(1) Certain contracts and bids exempt. No local taxes are due on the sale, use, storage, or other consumption in this state of taxable items used:

(A) for the performance of a written contract executed prior to the effective date of any local tax if the contract may not be modified because of the tax; or

(B) pursuant to the obligation of a bid or bids submitted prior to the effective date of any local tax if the bid or bids and contract entered into pursuant thereto are at a fixed price and not subject to withdrawal, change, or modification because of the tax.

(2) Annexations. Any annexation of territory into an existing local taxing jurisdiction is also a basis for claiming the exemption provided by this subsection.

(3) Local taxing jurisdiction rate increase; partial exemption for certain contracts and bids. When an existing local taxing jurisdiction raises its sales and use tax rate, the additional amount of tax that would be due as a result of the rate increase is not due on the sale, use, storage, or other consumption in this state of taxable items used:

(A) for the performance of a written contract executed prior to the effective date of the tax rate increase if the contract may not be modified because of the tax; or

(B) pursuant to the obligation of a bid or bids submitted prior to the effective date of the tax rate increase if the bid or bids and contract entered into pursuant thereto are at a fixed price and not subject to withdrawal, change, or modification because of the tax.

(4) Three-year statute of limitations.

(A) The exemption in paragraph (1) of this subsection and the partial exemption in paragraph (3) of this subsection have no effect after three years from the date the adoption or increase of the tax takes effect in the local taxing jurisdiction.

(B) The provisions of §3.319 of this title apply to this subsection to the extent they are consistent.

(C) Leases. Any renewal or exercise of an option to extend the time of a lease or rental contract under the exemptions provided by this subsection shall be deemed to be a new contract and no exemption will apply.

(5) Records. Persons claiming the exemption provided by this subsection must maintain records which can be verified by the comptroller or the exemption will be lost.

(6) Exemption certificate. An identification number is required on the prior contract exemption certificates furnished to sellers. The identification number should be the person's 11-digit Texas taxpayer number or federal employer's identification (FEI) number.

The agency certifies that legal counsel has reviewed the proposal and found it to be within the state agency's legal authority to adopt.

Filed with the Office of the Secretary of State on April 8, 2024.

TRD-202401427
Jenny Burleson
Director, Tax Policy
Comptroller of Public Accounts
Earliest possible date of adoption: May 19, 2024
For further information, please call: (512) 475-2220

♦ ♦ ♦

# TITLE 43. TRANSPORTATION

# PART 3. MOTOR VEHICLE CRIME PREVENTION AUTHORITY

# APPENDIX D

# TITLE 34. PUBLIC FINANCE

## PART 1. COMPTROLLER OF PUBLIC ACCOUNTS

### CHAPTER 3. TAX ADMINISTRATION
### SUBCHAPTER O. STATE AND LOCAL SALES AND USE TAXES

**34 TAC §3.334**

The Comptroller of Public Accounts adopts the repeal of §3.334, concerning local sales and use taxes, without changes to the proposed text as published in the April 19, 2024, issue of the *Texas Register* (49 TexReg 2440). The rule will not be republished. The comptroller repeals existing §3.334 to replace it with new §3.334. The repeal of §3.334 will be effective the date the new §3.334 takes effect.

*Brief explanation of the rulemaking.*

It has been called to the comptroller's attention that the October 27, 2023, notice of proposed rulemaking did not contain a statement of fiscal implications for small businesses or rural communities as required by Government Code, Chapter 2006. See (48 TexReg 6340) (October 27, 2023). Therefore, the comptroller repeals the adopted rule as proposed in the October 27, 2023, notice of proposed rulemaking. The comptroller is simultaneously readopting the text of the rule effective on January 5, 2024, with amendments, under the same number and title, with the repeal to be effective as of the date the adopted rule.

*Comments*

The comptroller received comments from James Harris on behalf of the Coalition for Appropriate Sales Tax Law and its members, the cities of Coppell, Carrollton, Desoto, Farmers Branch, Humble, Kilgore, Lancaster, and Lewisville, in favor of the repeal of all revisions to the rule, starting with the version adopted in May 2020. The comptroller addresses the criticisms of the revisions in §3.334 in the preamble of the new §3.334, which the comptroller will adopt to be effective concurrently with this repeal.

*Statement of the statutory or other authority under which the rulemaking is adopted.*

The repeal is adopted under Tax Code, §§111.002 (Comptroller's Rule; Compliance; Forfeiture), 321.306 (Comptroller's Rules), 322.203 (Comptroller's Rules), and 323.306 (Comptroller's Rules), which authorize the comptroller to adopt rules to implement the tax statutes.

*Sections or articles of the code affected.*

The repeal affects Tax Code, §151.0595 (Single Local Tax Rate for Remote Sellers); Tax Code, Chapter 321, Subchapters A, B, C, D, and F; Tax Code, Chapter 322; and Tax Code, Chapter 323.

The agency certifies that legal counsel has reviewed the adoption and found it to be a valid exercise of the agency's legal authority.

Filed with the Office of the Secretary of State on June 14, 2024.

TRD-202402640

Jenny Burleson
Director, Tax Policy Division
Comptroller of Public Accounts
Effective date: July 4, 2024
Proposal publication date: April 19, 2024
For further information, please call: (512) 475-2220



**34 TAC §3.334**

The Comptroller of Public Accounts adopts new §3.334, concerning local sales and use taxes, without changes to the proposed text as published in the April 19, 2024, issue of the *Texas Register* (49 TexReg 2442). The rule will not be republished. The comptroller adopts new §3.334 to replace the existing §3.334 that the comptroller is repealing. The new §3.334 includes the text of existing §3.334, with the addition of subsection (b)(6) and supporting definitions.

In addition to soliciting written comments, the comptroller held a public hearing on May 9, 2024. The comptroller received oral and/or written comments regarding adoption of the rule from the following persons:

John Christian, Ryan, LLC, against the rule.

TJ Gilmore, Mayor of the City of Lewisville, against the rule.

Jim Harris, on behalf of the Coalition for Appropriate Sales Tax Law Enactment (CASTLE) and its members, the cities of Coppell, Farmers Branch, Grand Prairie, Humble, Kilgore, Lancaster, and Lewisville, against the rule.

John Kroll, HMWK, against the rule.

Mike Land, City Manager of the City of Coppell, against the rule.

Wes Mays, Mayor of the City of Coppell, against the rule.

Stephan L. Sheets, Attorney for the City of Round Rock, against the rule.

Rich Whitehead, Mayor of the City of Helotes, against the rule.

*Summary of the Principal Reasons For and Against Adoption of the Rule*

The comptroller's principal reason for adoption of the rule is to provide guidance to taxpayers and auditors regarding the application of the local sales and use tax consummation statutes.

The principal reasons alleged against adoption are: that the rule is not needed, that the rule will hurt cities and taxpayers, that the rule is a departure from prior comptroller policy, that the stated reasons for adoption have no factual basis, that the rule is inconsistent with the local sales and use tax consummation statutes, and that the notice of rulemaking did not comply with the requirements of the Administrative Procedure Act.

The subsequent discussion provides the reasons for adopting the rule without changes related to the comments received.

*Summary of the Factual Bases for the Rule - Background*

In January 2020, the comptroller initiated rulemaking to update its local sales and use tax rule. The comptroller subsequently adopted amendments in 2020, 2023, and 2024. (49 TexReg 53) (January 5, 2024), (48 TexReg 391) (January 27, 2023), (45 TexReg 3499) (May 22, 2020). The amendments implemented House Bill 1525, 86th Legislature, 2019, which placed local sales and use tax collection responsibilities on marketplace providers.

The amendments also implemented House Bill 2153, 86th Legislature, 2019, which set a single local use tax rate that remote sellers may elect to use. The amendments also expanded the local sales tax collection responsibilities of sellers based on the United States Supreme Court decision in *South Dakota v. Wayfair, Inc.,* 138 S. Ct. 2080 (June 21, 2018). These amendments have been noncontroversial.

The rulemaking made other revisions to the text, which are now the subject of litigation in Cause No. D-1-GN-21-003198, *City of Coppell, Texas, et al. v. Glenn Hegar,* in the 201st District Court of Travis County Texas. The Plaintiff cities claim that the agency did not comply with the rulemaking procedures in Government Code, §2001.024 and Government Code, Chapter 2006. The comptroller initiated this rulemaking to address those claims by proposing the readoption of the rule, with amendments, along with a more complete statement of the elements required by Government Code, §2001.024 and Government Code, Chapter 2006.

The comptroller is addressing comments received in the current rulemaking, as well as the prior local tax rulemakings in 2020, 2023, and 2024. The orders adopting the prior rulemakings are available for inspection in the *Texas Register,* and contain additional explanations that augment this document.

*Summary of the Factual Bases for the Rule - Subsection (a)(18) - The definition of "place of business of the seller."*

Local sales and use taxes are generally sourced to where a sale or use is "consummated." Tax Code, §321.203 and §321.205. There are about three dozen sourcing provisions. *Id.* And, there are three potential locations where local sales tax can be soured: the location where the order was received, the location where the order was fulfilled, and the location where the order was delivered to the customer. *Id.* The sourcing outcome can be affected by whether an order is placed in person at, received at, or fulfilled at a seller's "place of business" in Texas.

Tax Code, §321.002(3)(A) uses 82 words to define "place of business of the retailer":

"(3)(A) 'Place of business of the retailer' means an established outlet, office, or location operated by the retailer or the retailer's agent or employee for the purpose of receiving orders for taxable items and includes any location at which three or more orders are received by the retailer during a calendar year. A warehouse, storage yard, or manufacturing plant is not a 'place of business of the retailer' unless at least three orders are received by the retailer during the calendar year at the warehouse, storage yard, or manufacturing plant."

The term "place of business of the retailer" is a term of art because the term is more limited than its plain and ordinary meaning. Many business activities can be conducted at a location without that location becoming a "place of business" for local tax sourcing. The definition specifically includes the concept of receiving orders for taxable items. For example, the corporate headquarters of a company may not be a "place of business" if no orders are received there. Additionally, a location is not a "place of business" simply because it receives orders. If that were the case, the legislature could have defined the phrase with those very few words, which can be counted on one hand. And, the final sentence indicates that business locations such as warehouses, storage yards, and manufacturing plants may not be "places of business."

Ultimately, the statutory test is a combination of elements -- whether a facility is an established outlet, office, or location operated by a seller for the purpose of receiving orders for taxable items. The statutory references to an "established outlet, office, or location," operation "by the retailer or the retailer's agent or employee," and "receiving orders for taxable items" all suggest that the presence of sales personnel is a reasonable criterion for evaluating whether a facility is a "place of business."

Subsection (a)(18) defines "place of business of the seller" as follows:

"(18) Place of business of the seller - general definition--A place of business of the seller must be an established outlet, office, or location operated by a seller for the purpose of receiving orders for taxable items from persons other than employees, independent contractors, and natural persons affiliated with the seller. An 'established outlet, office, or location' usually requires staffing by one or more sales personnel. The term does not include a computer server, Internet protocol address, domain name, website, or software application. The 'purpose' element of the definition may be established by proof that the sales personnel of the seller receive three or more orders for taxable items at the facility during the calendar year. Additional criteria for determining when a location is a place of business of the seller are provided in subsection (b) of this section for distribution centers, manufacturing plants, storage yards, warehouses and similar facilities; kiosks; and purchasing offices. An outlet, office, facility, or any location that contracts with a retail or commercial business to process for that business invoices, purchase orders, bills of lading, or other equivalent records onto which sales tax is added, including an office operated for the purpose of buying and selling taxable goods to be used or consumed by the retail or commercial business, is not a place of business of the seller if the comptroller determines that the outlet, office, facility, or location functions or exists to avoid the tax legally due under Tax Code, Chapters 321, 322, and 323 or exists solely to rebate a portion of the tax imposed by those chapters to the contracting business. An outlet, office, facility, or location does not exist to avoid the tax legally due under Tax Code, Chapters 321, 322, and 323 or solely to rebate a portion of the tax imposed by those chapters if the outlet, office, facility, or location provides significant business services, beyond processing invoices, to the contracting business, including logistics management, purchasing, inventory control, or other vital business services."

The first sentence of subsection (a)(16) states: "A place of business of the seller must be an established outlet, office, or location operated by a seller for the purpose of receiving orders for taxable items from persons other than employees, independent contractors, and natural persons affiliated with the seller." This definition tracks the statutory definition but adds a qualifier from the prior rule that allows a facility to make in-house courtesy sales without becoming a place of business.

The second sentence of the definition of "place of business of the seller" in subsection (a)(16) states: "An 'established outlet, office, or location' usually requires staffing by one or more sales personnel." The word "usually" clarifies that the presence of sales personnel is not an absolute requirement, but rather, an important factor that will often determine whether an outlet, office, or location is a "place of business." In subsequent subsections of the rule, the comptroller describes some examples.

The comptroller is adding the sales personnel language to provide an objective criterion for buyers, sellers, and auditors to consider. Does a facility have sales personnel? If it does, it is likely

a "place of business" -- an established outlet, office, or location operated by a seller for the purpose of receiving orders for taxable items. If the facility does not have sales personnel, it is likely not a "place of business."

The reference to sales personnel is also consistent with the general objectives of the local tax statute. "It is a fundamental principle of statutory construction and indeed of language itself that words' meanings cannot be determined in isolation but must be drawn from the context in which they are used." *TGS-NOPEC Geophysical Co. v. Combs,* 340 S.W.3d 432, 441 (Tex. 2011). The context for the "place of business" definition is not limited to the consummation statutes. It also extends to the sales tax permit requirement. The requirement of a sales tax permit for each "place of business" suggests that presence of sales personnel is a reasonable factor to consider.

The third sentence in the definition of "place of business" in subsection (a)(16) states: "The term does not include a computer server, Internet protocol address, domain name, website, or software application." This sentence is consistent with the concept that a "place of business" usually requires the presence of personnel to receive the order. Even a broad, every-day usage of the term "place of business" does not include computer servers, Internet protocol addresses, and websites. Many sellers house their computer servers at a co-location facility or rent computer server space at a managed hosting site. An ordinary person would not consider the physical locations of these computer servers to be places of business of the seller. Similarly, an ordinary person would not perceive an Internet protocol address, a domain name, or a website as an "established outlet, office, or location" so as to constitute a place of business in ordinary usage. And, in this statutory context, which is narrower than ordinary usage, the comptroller has concluded that the legislature could not have intended that the receipt of an order by an automated mechanical device would make the device an "established outlet, office or location operated by the retailer."

In addition to being a reasonable interpretation of the statute and consistent with precedent, the comptroller's interpretation that computer servers and the software applications that run on the servers are not places of business, is a practical interpretation that will facilitate uniformity and ease of administration for taxpayers and auditors. Website orders can be received at multiple physical addresses - any locations that have Internet access. A website order is sent to an Internet protocol (IP) address. An IP address is not a permanent physical address. It is a series of numbers assigned to a device, such as a computer server. Websites may use dynamic IP addresses that are assigned by the network upon connection and that change over time. The public IP address of a website may simply be routing orders to different, private IP addresses. Load balancers may change the IP addresses that communicate with customers. Conversely, multiple websites may be hosted at a single IP address.

The computer server receiving an order may belong to the seller or it may belong to a third party. The computer server may be situated on the seller's premises, it may be situated at a co-location facility operated by a third party, or it may be situated at a web hosting facility operated by a third party. The computer server may be one of multiple servers that serve the same website from different physical addresses as part of a cloud distribution network. The computer server may route the order to multiple other servers for load balancing purposes. Conversely, a single computer server may serve multiple websites. Also, the seller may or may not know the physical address of the server receiving the order. The physical locations of computer servers that receive website orders are often random, variable, and uncertain. The best way to treat computer servers consistently and coherently is to uniformly recognize that they are not "established" places of business of the seller.

The fourth sentence of the definition of "place of business of the seller" in subsection (a)(16) states: "The 'purpose' element of the definition may be established by proof that sales personnel of the seller received three or more orders for taxable items at the facility during the calendar year." This language is consistent with the statutory language that a "'place of business of the retailer' ... includes any location at which three or more orders are received by the retailer during a calendar year."

The remaining sentences of the definition of "place of business of the seller" are noncontroversial.

Mr. Gilmore, Mr. Kroll, Mr. Land, and Mr. Mays do not believe that this definition simplifies local tax sourcing. However, the comptroller is under no illusions that the definition will eliminate all ambiguities. In some instances, the determination will depend upon the particular facts. But in many instances, it will be clear. And, the rule also makes clear that mere hardware installations are not "places of business of the seller." To that extent, the rule will help taxpayers understand how the comptroller interprets and intends to apply the statute.

*Summary of the Factual Bases for the Rule - Subsection (b)(5) - A facility without sales personnel is usually not a "place of business of the seller."*

Subsection (b)(5) provides:

"(5) A facility without sales personnel is usually not a 'place of business of the seller.' A vending machine is not an 'established outlet, office, or location,' and does not constitute a 'place of business of the seller.' Instead, a vending machine sale is treated as a sale by an itinerant vendor. See subsections (a)(10) and (c)(6) of this section. However, a walk-in retail outlet with a stock of goods available for immediate purchase through a cashier-less point of sale terminal at the outlet would be an 'established outlet, office, or location' so as to constitute a 'place of business of the seller' even though sales personnel are not required for every sale. A computer that operates an automated shopping cart software program is not an 'established outlet, office, or location,' and does not constitute a 'place of business of the seller.' A computer that operates an automated telephone ordering system is not an 'established outlet, office, or location,' and does not constitute a 'place of business of the seller.'"

Subsection (b)(5) provides examples of the application of the definition of "place of business of the seller," and the factual bases for subsection (b)(5) are the same as the for the definition. In addition, the treatment of vending machines is consistent with the treatment of vending machines in prior versions of the rule.

*Reasons Why the Comptroller Disagrees With Commenters' Submissions and Proposals - Subsections (a)(10) and (b)(5).*

Some commenters asserted that a "place of business" does not have to be operated for the purpose of receiving orders for taxable items. According to the comments submitted by CASTLE:

"The statutory definition of 'place of business,' Tax Code, §321.002(3)(A), describes five different place of business categories: established outlets; established offices; established locations operated by the retailer or the retailer's agent or employee for the purpose of receiving orders for taxable items;

any location at which three or more orders are received by the retailer during a calendar year; and warehouses, storage yards, or manufacturing plants that receive three or more orders in a calendar year. Tax Code, §321.002(a)(3)(A). The first two categories need not have as a purpose receipt of orders and do not need to receive orders to be a place of business."

CASTLE further commented that the function of an "established office" is "business." This interpretation would mean that any facility operated by a seller for a business purpose would be a "place of business" -- executive offices, administrative offices, research and development laboratories, maintenance facilities, vehicle garages, etc. The comptroller rejects this interpretation as unreasonable. The 1979 legislation, which adopted the definition of "place of business," required each "place of business" to have a sales tax permit. See 66th Legislature, 1979, Ch. 624, §3. That requirement is now in Tax Code, §321.303. It is unreasonable to think that the legislature intended that a maintenance facility would be required to have a sales tax permit. A more reasonable interpretation is that a "place of business," whether it is an outlet, office, or location, "must be operated by a seller for the purpose of receiving orders for taxable items," as the rule requires.

Mr. Mays and other commenters also alleged that there is no reason for the comptroller to amend its rule. But, CASTLE's interpretation of the "purpose" requirement illustrates the need for clarification. The CASTLE interpretation may work at cross-purposes with other commenters who claim the right to source all their sales to their "single place of business." If every taxpayer facility with a business purpose is in fact a "place of business" as CASTLE suggests, many of these commenters may have multiple places of businesses. The adopted rule states the comptroller's interpretation, and sets the stage for a definitive court resolution of the conflict between competing commenters.

Mr. Christian commented on the portion of the definition of "place of business" that excludes orders from "employees, independent contractors, and natural persons affiliated with the seller." He commented that the language was "extra-statutory." The comptroller disagrees. The language has been in the rule since 2014, when it was adopted without adverse comment. It allows a facility to make in-house courtesy sales to workers at the facility without the facility becoming a place of business. Courtesy sales to workers are insufficient to conclude that a facility was established for the purpose of receiving orders.

Mr. Christian and other commenters observed that the statutory definition of "place of business" does not mention sales personnel. However, an agency rule need not be limited to parroting the words of the statute. The courts have said that a rule may not impose additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions. *State Office of Pub. Util. Counsel v. Pub. Util. Comm'n of Tex.,* 131 S.W.3d 314, 321 (Tex. App.--Austin 2004, pet. denied). The implication of that statement is that a rule may impose burdens, conditions, or restrictions that are consistent with the relevant statutory provisions. *E.g., id.* at 342 (court approved "formulaic means" not specified in the statute). Previous tax cases have approved comptroller rules that articulated requirements that were not explicitly stated in the statute. *Perry Homes v. Strayhorn,* 108 S.W.3d 444, 448 (Tex. App.--Austin 2003, no pet.); *DuPont Photomasks, Inc. v. Strayhorn,* 219 S.W.3d 414, 422 (Tex. App.--Austin 2006, pet. denied). The reference to sales personnel in the rule is consistent with the statutory reference to a

retailer's employee in the definition of "place of business of the retailer."

As previously stated, the comptroller is adding the sales personnel language to provide an objective criterion for buyers, sellers, and auditors to consider. Does a facility have sales personnel? If it does, it is likely a "place of business" -- an established outlet, office, or location operated by a seller for the purpose of receiving orders for taxable items. If the facility does not have sales personnel, it is likely not a "place of business." This objective criterion is supported by the previously explained legislative history of the statute.

Mr. Sheets, citing former §3.334(h)(3)(B), commented that "the prior version of Rule 3.334 recognized that an Internet order is received at a place of business while the proposed amendments cause Internet orders to be received nowhere."

The comptroller responds that the comment overstates the effect of the prior rule and misunderstands the effect of the adopted rule. Prior to the 2020 amendments, §3.334(h)(3)(B) provided:

"(B) Order received at a place of business in Texas, fulfilled at a location that is not a place of business. *When an order that is placed* over the telephone, *through the Internet,* or by any means other than in person *is received by the seller at a place of business in Texas,* and the seller fulfills the order at a location that is not a place of business of the seller in Texas, such as a warehouse or distribution center, the sale is consummated at the place of business at which the order for the taxable item is received."

(41 TexReg 260, 265) (2016) (former 34 TAC §3.334(h)(3), emphasis added); (39 TexReg 9597, 9606) (2014) (former 34 TAC §3.334(h)(3), emphasis added).

The former language only meant that a place of business may receive an order through the Internet, or any other method of communication except in-person communication. For example, a sales representative at a place of business in Texas could receive an order through the Internet in the form of a VOIP call or an email. But, the former language did not mean that every Internet order is automatically received at a place of business, as illustrated by the following comptroller rulings before and after the comptroller adopted §3.334 in 2014.

Comptroller Letter Ruling (STAR Accession No.) 200510723L (2005) stated:

"The location of the server does not create a 'place of business' for purposes of local tax collection."

And Comptroller Letter Ruling (STAR Accession No.) 200605592L (2006) similarly stated:

"The location of the server does not create a 'place of business' for purposes of local tax collection."

And Comptroller Letter Ruling (STAR Accession No.) 201906015L (2019) similarly stated:

"COMPANY operates **************'s online marketplace (Website) and various apps used by Texas customers to make online orders. ... Orders placed on the Website or through COMPANY's apps and processed and routed by servers are not received at a place of business."

Furthermore, the adopted rule does not mean that Internet orders are received "nowhere." Internet orders, such and VOIP calls and emails may be received at a place of business. And under subsection (b)(5), an Internet order received by an auto-

mated shopping cart is received somewhere - at the computer server -- but, that somewhere is not a "place of business of the seller."

*Summary of the Factual Bases for the Rule - Subsections (b)(1) and (c)(7) - Distributions centers, manufacturing plants, storage yards, and warehouses, and when and where an order is "received."*

Subsection (b)(1) provides:

"(1) Distribution centers, manufacturing plants, storage yards, warehouses, and similar facilities.

(A) A distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller for the purpose of selling taxable items where sales personnel of the seller receive three or more orders for taxable items during the calendar year from persons other than employees, independent contractors, and natural persons affiliated with the seller is a place of business of the seller. Forwarding previously received orders to the facility for fulfilment does not make the facility a place of business.

(B) If a location that is a place of business of the seller, such as a sales office, is in the same building as a distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller, then the entire facility is a place of business of the seller."

And subsection (c)(7) provides:

"(7) The location where the order is received by or on behalf of the seller means the physical location of a seller or third party such as an established outlet, office location, or automated order receipt system operated by or on behalf of the seller where an order is initially received by or on behalf of the seller and not where the order may be subsequently accepted, completed or fulfilled. An order is received when all of the information from the purchaser necessary to the determination whether the order can be accepted has been received by or on behalf of the seller. The location from which a product is shipped shall not be used in determining the location where the order is received by the seller."

The text of subsection (c)(7) is taken from Section 3.10.1C5 of the Streamlined Sales and Use Tax Agreement (SSUTA). See https://www.streamlinedsalestax.org/docs/default-source/agreement/ssuta/ssuta-as-amended-through-05-24-23-with-hyperlinks-and-compiler-notes-at-end.pdf.

In its 2014 rulemaking, the comptroller proposed a definition of "receive," but deleted the proposed definition in response to concerns stated in oral and written comments. See (39 TexReg 4179) (May 30, 2014) (proposed rule amendment) and (39 TexReg 9598) (December 5, 2014) (adopted rule amendment).

In its January 2023 rulemaking, the comptroller again declined to adopt a definition of "receive" and instead, addressed the two circumstances that were most prominently debated - automated website orders and fulfillment warehouses. Subsection (b) of the adopted rule articulated the comptroller's interpretation that an automated website "receives" the order and that a fulfillment warehouse does not "receive" the order when it is forwarded from the website to the warehouse. See (48 TexReg 400) (January 27, 2023).

Since then, it has become apparent that other circumstances also require a clear articulation of the comptroller's interpretation of the term "received." Thus, the comptroller is adopting a general standard that is applicable to all situations, as well as to automated website orders and fulfillment warehouses.

The adopted standard comports with the ordinary usage of the terms, as evidenced by the fact that the standard has been approved by twenty-four states under the Streamlined Sales Tax Agreement. The adopted standard will also promote uniformity with those states that have elected or will elect origin-based sourcing.

*Reasons Why the Comptroller Disagrees With Commenters' Submissions and Proposals - Subsections (b)(1) and (c)(7).*

Most of the commenters are concerned with the effect of the subsections on fulfillment warehouses and similar facilities. Subsection (b)(1)(A) provides: "Forwarding previously received orders to a facility for fulfillment does not make the facility a place of business." Subsection (c)(7) similarly provides: "The location where an order is received ... means the physical location ... where an order is initially received ... and not where the order may be subsequently accepted, completed or fulfilled."

Subsection (c)(7) explicitly limits receipt to the location where the order is initially received, ruling out intermediate and final locations where an order might be accepted, completed, or fulfilled. Subsection (c)(7) also explicitly states the criteria for determining when an order is received: "An order is received when all of the information from the purchaser necessary to the determination whether the order can be accepted has been received by or on behalf of the seller."

CASTLE commented that the modifier "initially" is not present in the portion of definition of "place of business" that refers to the location at which orders are "received." CASTLE, and Kyle Kasner in a previous rulemaking proceeding, also commented that the consummation statute in Tax Code, §321.203 sometimes refers to where the retailer "first receives" the order, implying that an order can be "received" at more than one place.

CASTLE also argued that the dictionary defines "receive" as "to take into one's possession, to take delivery of a thing, to get, or to come by," and a fulfillment warehouse cannot fulfill an order unless it gets or comes by the order. This argument may seem reasonable in the abstract, but not in context. When the statute and its legislative history are considered as a whole, the proper construction is the opposite - a fulfillment warehouse does not receive an order for purposes of the local sales tax statutes merely because fulfillment information has been sent to the warehouse.

With regard to statutory construction, the Texas Supreme Court has stated: "We must analyze statutory language in its context, considering the specific sections at issue as well as the statute as a whole. {Citation omitted}. While 'it is not for courts to undertake to make laws "better" by reading language into them,' we must make logical inferences when necessary 'to effect clear legislative intent or avoid an absurd or nonsensical result that the Legislature could not have intended.'" *Castleman v. Internet Money Ltd.,* 546 S.W.3d 684, 688 (Tex. 2018), quoting *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n,* 518 S.W.3d 318, 338 (Tex. 2017).

Considering the local sales tax statute sections as a whole, the term "received" must be limited to the location where an order is initially received. This construction effects the clear legislative intent and avoids an absurd or nonsensical result that the legislature could not have intended.

The legislature did not define "receiving," "received," or "order." So, the terms must be construed in the context in which they

are used. One context is the definition of "place of business of the retailer" in Tax Code, §321.002(3)(A). A "place of business of a retailer" is a location operated "for the purpose of receiving orders." One might say, as CASTLE does, that a purpose of a fulfillment warehouse is to receive the order because receipt is a necessary step in fulfillment. However, one might also reasonably say that while a sales office is operated for the "purpose of receiving orders," a fulfillment warehouse without sales personnel is not operated for such a purpose - the purpose is only fulfillment, which does not require the receipt of the entire order containing price and payment terms. The only necessary information is delivery information - the product description, quantity, and delivery location. Because there are at least two reasonable interpretations, the terms in this context are ambiguous.

In another context the meaning becomes clearer. That context is the consummation statute in Tax Code, §321.203. Consider Tax Code, §321.203(d):

"(d) If the retailer has more than one place of business in this state and Subsections (c) and (c-1) do not apply, the sale is consummated at:

(1) the place of business of the retailer in this state where the order is received; or

(2) if the order is not received at a place of business of the retailer, the place of business from which the retailer's agent or employee who took the order operates."

Assume a situation in which the retailer has multiple retail stores in Texas (more than one place of business in the state), but a customer calls in an order to a Texas sales office and the order is fulfilled from a location outside of Texas, so that Tax Code, §321.203(c) and (c-1) indisputably do not apply. Also assume that information from the order is forwarded to the retailer's executive office in Texas for approval, to the retailer's Texas credit office for a credit check, to the retailer's Texas manufacturing facility for assembly, to the retailer's Texas storage lot for bundled shipping to a fulfillment center, to the retailer's fulfillment center for fulfillment to the customer, to the retailer's Texas accounting office for billing, and to the retailer's Texas controller for collection on the account.

In the sense proposed by CASTLE, all these locations "received" the "order" to complete their assigned tasks. But this interpretation leads to absurd results. If the "order" was "received" at multiple locations, so that each location became a "place of business," it would be impossible to identify the particular location where the local tax should be sourced.

Furthermore, Tax Code, §321.203(d) refers to "*the* place of business ... where the order is received," indicating that there is a singular location where the order is received. The most reasonable singular location, and perhaps the only reasonable singular location, is where the information necessary to accept the order is initially received as provided in subsection (c)(7). In the example above, the location where the order is received would be the Texas sales office.

This example regarding Tax Code, §321.203(d) also illustrates the need for additional clarity. Subsection (b)(1)(A) explicitly provides that a fulfillment center is not a "place of business" simply because orders may be forwarded to the facility for fulfillment. But subsection (b)(1)(A) does not explicitly eliminate the possibility that other locations are "places of business," such as locations where orders are accepted or otherwise completed. Subsection (c)(7) explicitly eliminates those possibilities. There is a single

location where an order is received - the initial location where all the information necessary for acceptance has been received. With this clarification, the consummation statute can be applied with greater certainty.

CASTLE commented: "For all practical purposes an order placed on a website is typically received at the same time at various locations, including fulfillment centers." However, for the practical purpose of sourcing local tax, there is a single location where a website order is initially received - the Web server. According to a report from the group's own expert, Amit Basu: "...the Buyer places the online order by communicating with a Web server that manages the Seller's Web site. ... The Web server transmits the order electronically to the Seller's e-Commerce software program."

Mr. Kroll commented that it may be impossible to determine the location of initial receipt: "Some companies will have multiple redundant server/data center operations spread across multiple geographic locations." The comptroller agrees. As pointed out in the 2020 rulemaking, a computer server may be situated on the seller's premises, it may be situated at a co-location facility operated by a third party, or it may be situated at a web hosting facility operated by a third party. The computer server may be one of multiple servers that serve the same website from different physical addresses as part of a cloud distribution network. The computer server may route the order to multiple other servers for load balancing purposes. Conversely, a single computer server may serve multiple websites. The seller may or may not know the physical address of the server receiving the order. If the seller does not even know the physical location of the server, an ordinary person would not consider the physical location of the computer server to be a place of business of the seller. So, the best way to treat these orders consistently and coherently is to treat them uniformly as being received at locations that are not places of business of the seller. If a server is not a "place of business" of the seller, then the exact location of the server does not have to be determined because the location will not determine the sourcing of local sales tax.

The comptroller's application of the statute to fulfillment centers is also supported by statutory history. Prior to 1979, the consummation statute had no provision for sourcing to where an "order" was "received," and the statute provided:

"If the retailer has more than one place of business in the State, the place or places at which retail sales, leases, and rentals are consummated shall be the retailer's place or places where the purchaser or lessee takes possession and removes from the retailer's premises the articles of tangible personal property, or if the retailer delivers the tangible personal property to a point designated by the purchaser or lessee, then the sales, leases, or rentals are consummated at the retailer's place or places of business from which tangible personal property is delivered to the purchaser or lessee." Acts 1969, 61st Leg., 2nd C.S., Ch. 1. Art. 1 §42.

In 1979, the Texas Legislature added a definition of "place of business of the retailer," which was previously undefined. The definition required that the location be operated "for the purpose of receiving orders." Acts 1979, 66th Legislature, Ch. 624, Art. 1, §3 (amended Article 1066c(B)(1)). The legislature also added a sourcing provision based on where the order is received, comparable to current Tax Code, §321.203(d):

"If neither possession of tangible personal property is taken at nor shipment or delivery of the tangible personal property is

made from the retailer's place of business within this State, the sale, lease, or rental is consummated at the retailer's place of business within the State where the order is received or if the order is not received at a place of business of the retailer, at the place of business from which the retailer's salesman who took the order operates."

Acts 1979, 66th Legislature, Ch. 624, Art. 1, §3 (amended Article 1066c(B)(1)(c)). Like current Tax Code, §321.203(d), the legislature referred to "*the* place of business ... where the order is received," contemplating a single location, and not multiple locations. And like the current statute, the 1979 sourcing statute would be unworkable if an "order" could be "received" at multiple locations where order information might be sent for processing.

The 1979 amendments were originally set to expire on August 31, 1981. But, following an October 2, 1980, Interim Report of the House Ways and Means Committee, the legislature made the 1979 amendments permanent. Acts 1981, 67th Legislature, Ch. 838, §1.

Mr. Kroll commented that the comptroller "misremembers the legislative history." The comptroller disagrees. During the 1979 session of the legislature, a House Study Group analysis stated that the "bill is necessary to protect the state from possible consequences of the pending court suits." The analysis specifically referenced *"Dunigan Tool and Supply v. Bullock"* as one of those suits. The analysis is available at the Legislative Reference Library website at https://lrl.texas.gov/scanned/hroBillAnalyses/66-0/SB582.pdf.

In the *Dunigan* litigation, sales personnel took orders that were forwarded to pipe storage facilities where the orders were fulfilled. At the time of the 1979 legislation, the district court had ruled that the transactions should be sourced to the pipe storage facilities. *Bullock v. Dunigan Tool & Supply Co.,* 588 S.W.2d 633, 635 (Tex. Civ. App. - Austin, Sept. 6, 1979, writ ref'd n.r.e.). Therefore, when the 1979 House Study Group bill analysis stated that the bill was intended to protect the state from the consequences of the Dunnigan litigation, the analysis meant that the legislation was intended to reduce the circumstances in which transactions would be sourced to fulfillment warehouses, which at the time were often located in rural areas not subject to local sales tax. The legislature accomplished this objective by adding a definition of "place of business" that was limited to a location operated "for the purpose of receiving orders," and by adding a provision for sourcing transactions to where the order was received. Acts 1979, 66th Legislature, Ch. 624, Art. 1, §3.

Mr. Kasner in a previous rulemaking proceeding commented that the proposed rule reverses the effect of the *Dunigan* decision. He is correct, because the rule attempts to follow the subsequent legislation, which was intended to reverse the effect of the Dunigan decision.

In the subsequent October 2, 1980, Interim Report of the House Ways and Means Committee, the committee considered whether to allow the recently adopted statutory definition of "place of business" to expire. The committee described the consequence: "The location of sale would no longer be tied to permitted outlets, salesmen's locations, or sales offices." Interim Report at 20. The committee understood that the phrase "operated for the purpose of receiving orders" meant sales activities and not ancillary activities necessary to subsequently effectuate the sale.

To be clear, under the 1979 legislation and today, a fulfillment warehouse could be and can be a "place of business." The legislature set a low threshold: "A warehouse, storage yard, or manufacturing plant may not be considered a 'place of business of the retailer' unless three or more orders are received by the retailer in a calendar year at such warehouse, storage yard, or manufacturing plant." Acts 1979, 66th Legislature, Ch. 624, Art. 1, §3. A typical warehouse, storage yard, or manufacturing plant would almost certainly process more than three orders in a calendar year. So, this explicit threshold requirement is an additional indication that the legislature did not intend for these facilities to automatically be "places of business" simply because they processed order information that was previously received at other locations. Instead, the legislature set a low threshold yet still expected these facilities to engage in at least some sales activities.

Mr. Gilmore commented: "This is a major revision to a state practice that has been in place for more than 50 years." CASTLE commented that the amendment is "inconsistent with his {the comptroller's} pre-2019 application of the statutory definition of 'place of business.'" The comptroller disagrees with these comments.

First, the comptroller's treatment of fulfillment warehouses goes as far back as Comptroller's Decision No. 15,654 (1985), which stated (emphasis added):

"But it seems to the administrative law judge that the legislature was amending the law if not entirely in reaction to the then-pending case of *Bullock v. Dunigan Tool & Supply Co.,* 588 S.W.2d 633 (Tex. Civ. App.-Texarkana, writ ref'd n.r.e.), at least partly in reaction to that case. And if that be so, then the legislature did not want warehousing and storage facilities (many of which are outside city limits) to be the places where sales were consummated for local sales tax purposes unless orders were actually received there by personnel working there, but wanted the office location out of which the salesman operated to be the place where the sales were consummated."

CASTLE commented: "The Comptroller misreads the decision." But, the text of the decision speaks for itself: "the legislature ... wanted the office location out of which the salesman operated to be the place where the sales were consummated."

Second, the text of former §3.334(h)(3) indicated that a fulfillment center is not automatically a "place of business" for local sourcing (emphasis added):

"(3) Consummation of sale. The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in this state, regardless of whether they have a place of business in Texas or multiple places of business in the state.

...

(B) Order received at a place of business in Texas, fulfilled at a location that is not a place of business. When an order that is placed over the telephone, through the Internet, or by any means other than in person is received by the seller at a place of business in Texas, and the seller *fulfills the order at a location that is not a place of business of the seller in Texas,* such as a warehouse or distribution center, the sale is consummated at the place of business at which the order for the taxable item is received.

...

(D) Order fulfilled within the state at a location that is not a place of business. When an order is received by a seller at any location other than a place of business of the seller in this state, and the seller *fulfills the order at a location in Texas that is not a place of business of the seller,* then the sale is consummated at the

location in Texas to which the order is shipped or delivered, or the location where it is transferred to the purchaser."

(41 TexReg 260, 265) (2016) (former 34 TAC §3.334(h)(3), emphasis added); (39 TexReg 9597, 9606) (2014) (former 34 TAC §3.334(h)(3), emphasis added).

Third, the consummation rules in former §3.334(h)(3) were augmented with an explicit provision for fulfillment centers, which the former rule referred to as "distribution centers" (emphasis added):

"(2) Distribution centers, manufacturing plants, storage yards, warehouses, and similar facilities.

(A) A distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller at which the seller receives three or more orders for taxable items during the calendar year is a place of business.

(B) If a salesperson who receives three or more orders for taxable items within a calendar year is assigned to work from, or to work at, a distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller, *then* the facility is a place of business.

(C) If a location that is a place of business of the seller, such as a sales office, is in the same building as a distribution center, manufacturing plant, storage yard, warehouse, or similar facility operated by a seller, *then* the entire facility is a place of business of the seller."

(41 TexReg 260, 263) (2016) (former 34 TAC §3.334(e)(2), emphasis added); (39 TexReg 9597, 9605) (2014) (former 34 TAC §3.334(e)(2), emphasis added).

If a distribution center were automatically a "place of business" for local tax sourcing as the Plaintiff cities contend, subparagraphs (B) and (C) would not be required - there would be no need for a salesperson or a sales office to "then" make the distribution center a "place of business" for local tax sourcing purposes.

Fourth, in addition to its rule, the comptroller distributed Publication 94-105, sometimes called the "Local Sales and Use Tax Bulletin - Guidelines for Collecting Local Sales and Use Tax," or "Tax Topics - Guidelines of Collecting Local Sales and Use Tax" (Guidelines). These Guidelines were posted on the comptroller's website and indexed in the comptroller's State Tax Automated Research System. Since at least 2007, the Guidelines referred to a "location within the state that is not a place of business (such as a warehouse or distribution center)." E.g., STAR Accession No. 200902596L (February 2009). The Guidelines were intended as a general guide and not as a comprehensive resource. But, an ordinary reader would not walk away with the impression that a taxpayer's fulfillment center was automatically a "place of business" for purposes of local tax sourcing.

Fifth, in 2016, the comptroller rewrote the Guidelines to be even more specific regarding fulfillment centers: "The warehouse from which the person ships those items is not a place of business, unless the warehouse separately qualifies as a place of business." STAR Accession No. 201606995L (June 1, 2016).

And, sixth, in 2019, a comptroller letter ruling discussed fulfillment centers, referring to the former rule, then in effect: "Scenario One: Taxpayer Retailer operates fulfillment centers in Texas that are not open to the public. ... When an order is received at a location that is not a place of business and is *fulfilled in Texas at a location that is not a place of business,* the

sale is consummated at the location in Texas to which the order is shipped. See §3.334(h)(3)(D). For Scenario One, local sales and use tax is due based on the location where the order is delivered." STAR Accession No. 201906015L (June 13, 2019) (emphasis added).

Each of these documents, which predate the rulemaking, and which the comptroller indexed and made available for public inspection on the State Tax Automated Research (STAR) System, is consistent with the statement in the rule that the location from which a product is shipped shall not be used in determining the location where the order is received by the seller.

*Reasons Why the Comptroller Disagrees With Commenters' Submissions and Proposals - The use of language from the SSUTA in subsection (c)(7).*

In the rulemaking that adopted subsection (c))(7), the comptroller received comments that are discussed below.

Mr. Kroll commented: "The Texas Legislature, (the entity with constitutional responsibility for the state's Tax Policy), has had nine regular sessions to adopt the SSUTA's preferred origin sourcing model found in SSUTA 3.10.1. The Legislature has not acted, even in 2013 when then Senator Hegar was chairing the Senate Finance, Subcommittee on Fiscal Matters with Tax policy responsibility."

CASTLE similarly commented: "the Legislature, in general, rejected the Comptroller's efforts to become a member and be subject to the Agreement, and, more specifically, declined to adopt the language of 3.10.1 and change the definition of what is a 'place of business.'"

Mr. Land commented: "By not adopting the agreement, the legislature was rejecting the very language the Comptroller proposes to adopt..."

Clyde Hairston, Mayor of the City of Lancaster, commented: "Rule changes refer to the Streamline Sales and Use Tax Agreement. States participating in this agreement do not seem to have similar economic issues as the State of Texas. If the intent of the rule change is to position the state to participate in the Sales and Use Tax Agreement, further research is needed to better support the rationale for this action."

And, Rolin McPhee, City Manager of the City of Longview, commented: "This sentiment runs counter to the story of Texas. Yes, we should look to and learn from other states, but Texas should lead and not follow. We should not implement statewide policies because 'everyone else is doing it.'"

David Bristol, Mayor of the City of Prosper, had similar comments.

Although the legislature declined to adopt the SSUTA, it would be an overstatement to suggest that the legislature specifically rejected the language of a single subsection of the SSUTA. As CASTLE pointed out: "Therefore, prior to December 31, 2007, the Legislature had to agree to the quoted 3.10.1 language, as a step in allowing Texas to be subject to the Agreement. But doing so would have required not only that the Legislature radically revise the statutory definition of 'place of business' but make many other changes to the sections of the Tax Code addressing sales and use tax."

Texas has a unique, composite consummation statute, in which sales are sometimes sourced to where the order is received, sometimes sourced to where the order is fulfilled, and sometimes sourced to where the order is delivered. Adoption of the SSUTA

would require fundamental changes to this composite consummation statute, which the comptroller is not advocating or promoting. However, there is one area of overlap. Both systems use the receipt of an order as a factor in sourcing. In this area of overlap, it is entirely appropriate to consider how the SSUTA does it.

The comptroller has considered the language in the SSUTA and concluded that it is a reasonable and practical method of determining where and when an order is received. And, the SSUTA language has the added benefit of being a concept that other states have acknowledged, and a concept with which many taxpayers will already be familiar.

*Summary of the Factual Bases for the Rule - Subsection (c) - Application of the consummation rules.*

Subsection (c) states in relevant part:

"The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in Texas, regardless of whether they have no place of business in Texas, a single place of business in Texas, or multiple places of business in Texas."

The language of subsection (c) tracks the language in the prior 2014 and 2016 versions of the rule:

"The following rules, taken from Tax Code, §321.203 and §323.203, apply to all sellers engaged in business in this state, regardless of whether they have a place of business in Texas or multiple places of business in the state."

(41 TexReg 260, 265) (2016) (former 34 TAC §3.334(h)(3); (39 TexReg 9597, 9606) (2014) (former 34 TAC §3.334(h)(3)).

*Reasons Why the Comptroller Disagrees With Commenters' Submissions and Proposals - Subsection (c).*

Mr. Sheets commented that the rule changes how Internet orders are sourced for retailers with a single place of business in Texas. However, the language of subsection (c) has the same effect as the language in the prior 2014 and 2016 versions of the rule - no special treatment for vendors with a single "place of business."

Mr. Sheets commented that the rule conflicts with Tax Code, §321.203(b), which provides:

"(b) If a retailer has only one place of business in this state, all of the retailer's retail sales of taxable items are consummated at that place of business except as provided by Subsection (e)."

Tax Code, §321.203(b) describes the consummation principles for a seller that has only one place of business in the state. In the comptroller's view, those principles are consistent with the treatment of other sellers and do not require special treatment in the rule.

As a matter of statutory construction, Tax Code, §321.203(b) should be viewed in the context of the statute as a whole. *Castleman v. Internet Money Ltd.,* 546 S.W.3d 684, 688 (Tex. 2018). When the statute is considered as a whole, the only reasonable interpretation is that all retail sales associated with a single place of business are consummated at that single place of business, regardless of whether the order was placed in person there, the order was received there from a purchaser at another location, or the order was fulfilled there. But, the statute cannot reasonably mean that an order with no connection to that place of business would be consummated there.

Tax Code, §321.203 establishes a hierarchy among places of business involved in a transaction, subject to certain exceptions. The hierarchy is described in a summary chart in the Comptroller's Guide for Sellers. See https://comptroller.texas.gov/taxes/publications/94-105.php (Local Sales and Use Tax Collection - A Guide for Sellers). If an order is fulfilled from a place of business of the seller in Texas, the sale is consummated at that location even if the order is received at another place of business in Texas (except for orders received in person). Conversely, an order is consummated at the place of business of the seller in Texas where the order is received only if the order was not fulfilled from a place of business in Texas (except for orders received in person). Subsection (c) of the comptroller rule reflects this hierarchy.

The statutory provision in Tax Code, §321.203(b), for a seller with a single place of business in Texas, is simply a recognition that the hierarchy is not required in those circumstances. The outcome will be the same regardless of whether the order is received, fulfilled, or received and fulfilled from that place of business, and regardless of whether the order is placed at that location in person - the sale will be consummated at that place of business.

But the place of business must have a discrete connection to the sale for the sale to be consummated there. Tax Code, §321.203(b) cannot reasonably be interpreted to mean that a sale is consummated at the seller's single place of business in Texas, even if that place of business did not receive the order from the customer, did not fulfill the order to the customer, and was not the location where the order was delivered.

Suppose a reseller has a single place of business, located in City A, that consists only of a sales office. The reseller also has a fully-automated shopping website hosted by a server in City B that receives and processes an order from a customer in City C. The order is then fulfilled from a third-party manufacturer's warehouse in City D and shipped to the customer in City C. To make the customer in City C pay local sales tax to City A, a jurisdiction that had no relation to the customer or the transaction, would be an unreasonable reading of the statute that the Legislature could not have intended. See, *Castleman v. Internet Money Ltd.,* 546 S.W.3d 684, 688 (Tex. 2018) (making "logical inferences" necessary "to avoid an absurd or nonsensical result that the Legislature could not have intended.").

Another rule of statutory construction is that compliance with the constitutions of this State and the United States is intended. Government Code, §311.021(a). In the tax arena, as elsewhere, the United States Constitution requires due process. In tax cases, the United States Supreme Court has stated that due process "centrally concerns the fundamental fairness of governmental activity." *N. Carolina Dep't of Revenue v. The Kimberley Rice Kaestner 1992 Family Tr.,* 139 S. Ct. 2213, 2219, (2019), quoting *Quill v. North Dakota,* 504 U.S. 298, 312 (1992).

The "due course of law" provision of the Texas constitution provides protections similar to, and in some instances, greater than the protections in the federal due process clause. *Patel v. Tex. Dep't of Licensing & Regulation,* 469 S.W.3d 69, 86-87 (Tex. 2015) ("the Texas due course of law protections in Article I, §19, for the most part, align with the protections found in the Fourteenth Amendment to the United States Constitution. But, ... Section 19's substantive due course provisions undoubtedly were intended to bear at least some burden for protecting individual rights that the United States Supreme Court determined were not protected by the federal Constitution.").

A statute violates the Texas due course of law protection if the "statute's actual, real-world effect as applied to the challenging party could not arguably be rationally related to, or is so burdensome as to be oppressive in light of, the governmental interest." *Id.* at 87.

The actual, real-world effect of Mr. Sheet's interpretation could not arguably be rationally related to, or is so burdensome as to be oppressive to taxpayers in light of, the governmental interest in local taxation. Specifically, there is no rational connection or sufficient government interest to make a purchaser in City C pay sales tax to City A simply because the vendor arranged its business such that it had a single sales office in City A that had nothing to do with the transaction.

Mr. Sheets commented that procedural due process requirements do not apply because Tax Code, §321.203(b) is the result of legislative action. However, the comptroller's statutory interpretation is based on substantive due process. See, *Patel*, 469 S.W.3d at 75.

Mr. Sheets also proposes to add a "special" exception for sellers with a single place of business in Texas. The comptroller declines to make the proposed revisions for the reasons stated in the preceding paragraphs. The City of Round Rock is challenging the comptroller's interpretation in the pending litigation. Again, it is appropriate to state the comptroller's interpretation in the rule so that those who disagree may challenge the interpretation in court.

*Summary of the Factual Bases for the Rule - Subsection (b)(4) - Order received by a salesperson who is not at a place of business when the salesperson receives the order.*

Subsection (b)(4) provides:

"(4) An order that is received by a salesperson who is not at a place of business of the seller when the salesperson receives the order is treated as being received at the location from which the salesperson operates. Examples include orders that a salesperson receives by mail, telephone, including Voice over Internet Protocol and cellular phone calls, facsimile, and email while traveling. The location from which the salesperson operates is the principal fixed location where the salesperson conducts work-related activities. The location from which a salesperson operates will be a place of business of the seller only if the location meets the definition of a 'place of business of a seller' in subsection (a)(16) of this section on its own, without regard to the orders imputed to that location by this paragraph."

Tax Code, §321.203(d) provides for consummation of a local sale at the place of business "from which the retailer's agent or employee who took the order operates." Prior to the 2020 amendment, the rule did not define the location from which a salesperson operates. The third sentence of subsection (b)(4) now provides in part: "The location from which the salesperson operates is the principal fixed location from which the salesperson conducts work-related activities..." A physical connection between the salesperson and the place of business is a reasonable interpretation of the location from which a salesperson operates.

The final sentence of subsection (b)(4) clarifies that the principal fixed location from which the salesperson conducts work-related activities may or may not be a place of business of the seller, depending upon whether the location meets the definitional requirements of subsection (a)(16). For example, if an entrepreneur conducts sales operations from the entrepreneur's residence, the entrepreneur will be operating out of a place of business of the seller. But if a person performs contract telemarketing from the person's residence, the person will not be operating out of a place of business of the seller because the residence is not "operated by the seller," as required by subsection (a)(16).

*Reasons Why the Comptroller Disagrees With Commenters' Submissions and Proposals - Subsection (b)(4).*

In the rulemaking that adopted subsection (b)(4), Mr. Kroll commented that subsection (b)(4) "no longer imputes the order to the place of business where the employee is assigned, and that the new policy does not accurately or easily reflect the mobile workforce of today." And Brian Pannell, North America Tax Director for Dell Inc., commented that subsection (b)(4) deviates from Tax Code, §321.203(d)(2) and "effectively changes sourcing rules for salespersons who are assigned to regional places of business but do their principal work-related activities at other locations."

The comptroller disagrees with these comments. Tax Code, §321.203(d) does not impute an order to the location where a salesperson is "assigned." Instead, the statute provides that in certain circumstances, an order may be imputed to the "place of business from which the retailer's agent or employee who took the order operates." And, although an order may be imputed to a place of business of the retailer if the agent or employee operates out of that place of business, the statute does not mandate that an agent or employee be assigned to, or operate out of, a place of business. If an agent or employee does not operate out of a place of business, Tax Code, §321.203(d) has no application. And, it would be unreasonable to allow a vendor to source sales to a place of business by merely "assigning" a salesperson to that location in the absence of any physical connection.

*Summary of the Factual Bases for the Rule - Subsection (b)(6) -small and micro-businesses.*

The comptroller adds subsection (b)(6) to the former rule:

"If a small business or a micro-business operates a single location out of which it conducts all of its business activities, the comptroller will presume that the location is a place of business of the seller."

The comptroller also adds following supporting definitions to subsection (a):

"Independently owned and operated business--a self-controlling entity that is not a subsidiary of another entity or otherwise subject to control by another entity, and that is not publicly traded."

"Micro-business--a legal entity, including a corporation, partnership, or sole proprietorship, that:

(A) is formed for the purpose of making a profit;

(B) is independently owned and operated; and

(C) has not more than 20 employees."

"Small business--a legal entity, including a corporation, partnership, or sole proprietorship, that:

(A) is formed for the purpose of making a profit;

(B) is independently owned and operated; and

(C) has fewer than 100 employees or less than $6 million in annual gross receipts."

The definition of "independently owned and operated business" is taken from Government Code, Chapter 2006, Small Busi-

nesses and Rural Communities Impact Guidelines, updated in December 2017.

The definitions of "micro-business" and "small business" are taken from Government Code, Chapter 2006.

The comptroller cannot make a location a "place of business" by rule if the statute does not allow it. But, the agency can presume that a location is a "place of business" based on indicative facts, such as a small, independent business that conducts all of its business operations out of a single location.

*Reasons Why the Comptroller Disagrees With Commenters' Submissions and Proposals - Subsection (b)6).*

Mr. Sheets commented that the subsection does nothing to reduce the adverse economic effects on small and microbusinesses. Mr. Land commented that there is no rational policy reason for treating businesses differently based upon size or revenue, and Mr. Gilmore questioned the reasoning behind the differentiation. CASTLE commented that the presumption is contrary to the law and factually unsupported. And, Mr. Christian commented that the presumption should be expanded.

The comptroller responds that the agency routinely uses presumptions in applying statutes, and the courts have honored them. A word search of the Texas Administrative Code produces over 60 instances in which the comptroller rules use presumptions. For example, the Austin Court of Appeals recognized that "repainting is presumed to be a taxable activity unless the taxpayer affirmatively shows that the repainting meets the specific requisites of maintenance as set out in the rule." *GATX Terminals Corp. v. Rylander,* 78 S.W.3d 630, 635 (Tex. App. - Austin 2002, no pet.); 34 TAC §3.357(b)(8).

The rational policy reason for special treatment, and the size and revenue requirements have been mandated by the Texas Legislature in Government Code, Chapter 2006. And, the parameters are appropriate for the presumption. It is reasonable to assume that a small business or a micro-business that operates a single location out of which it conducts all of its business activities will receive three or more orders per calendar year at that location, making that location a place of business of the seller. It is less reasonable to make that assumption if the business operates out of more than one location, or if the business is an affiliate of another, creating the possibility that the order receipt and order fulfillment may occur in different locations.

*Summary of the Factual Bases for the Rule - Subsections (c)(2)(B)(ii), (d)(2), and (i) - Seller's obligation to collect local use tax.*

Subsection (c)(2)(B)(ii) provides that a remote seller that is required to collect state use tax must also collect local use tax. Subsection (d)(2) and subsection (i) provide that a non-remote seller is responsible for collecting local use tax regardless of the location of the seller in Texas. Physical presence in the local jurisdiction is no longer required. These expansions of the local sales tax collection responsibilities of sellers are based on the United States Supreme Court decision in *South Dakota v. Wayfair, Inc.,* 138 S. Ct. 2080 (June 21, 2018).

The comptroller received no negative submissions or proposals regarding these subsections.

*Summary of the Factual Bases for the Rule - Subsection (i)(3) - Single local tax option for remote sellers.*

Subsection (i)(3) implements House Bill 2153, 86th Legislature, 2019, which sets a single local use tax rate that remote sellers may elect to use.

The comptroller received no negative submissions or proposals regarding this subsection.

*Summary of the Factual Bases for the Rule - Subsection (k)(5) - Marketplace sales.*

Subsection (k)(5) implemented House Bill 1525, 86th Legislature, 2019, which places local sales and use tax collection responsibilities on marketplace providers.

The comptroller received no negative submissions or proposals regarding this subsection.

*Reasons Why the Comptroller Disagrees With Commenters' Submissions and Proposals - Public benefits and costs.*

Mr. Christian commented that there will be a significant fiscal implication for businesses that must invest in reprogramming software for enhanced local tax compliance, and the economic cost to the public must be estimated. Mr. Gilmore, Mr. Land, Mr. Sheets, and Mr. Mays also commented that the rule will increase business compliance costs.

The comptroller acknowledges that there may be additional compliance costs, since it is conceivable that the rule may cause some vendors to realize that they are noncompliant. If the vendors come into compliance by changing from single-location reporting to multiple-location reporting, their compliance burden may increase. And if vendors change from multiple-location reporting to single-location reporting, their compliance burden may diminish.

The total net economic cost cannot be reliably estimated for reasons explained in the preamble to the proposed rule. The comptroller cannot determine the number of vendors that would change from single-location report to multiple-location reporting. Furthermore, the cost of compliance with the statute cannot be a factor in the rulemaking because compliance with the statute is required with or without the rule.

*Reasons Why the Comptroller Disagrees With Commenters' Submissions and Proposals - Revenue Effect*

The preamble to the proposed rule explained the methodology that the comptroller used to estimate the revenue effect. Mr. Mays, Mr. Sheets, Mr. Gilmore, Mr. Land, and CASTLE all commented that the analysis of the revenue impact on cities was insufficient, but did not identify any errors in the assumptions that the agency used in the estimate.

CASTLE contends that "there must be a dollar amount specific to each local government or a dollar amount that can be easily calculated from the methodology used by the Comptroller to generate an estimate." The comptroller responds that Government Code, §2001.024 has never been interpreted by any agency or any court to require individual estimates. There are over 1,700 local governments in Texas with a local sales tax. In all prior rulemakings, the comptroller has never estimated the loss of or increase in local sales tax revenue for each local government in Texas with a local sales tax. And, the comptroller is unaware of any other agency that has made individual estimates for each local government.

Furthermore, the statute does not require the comptroller to articulate a methodology for individual estimates that the agency is not required to make. If an individual jurisdiction wants to con-

duct its own investigation, the preamble to the proposed rule explained the data that the jurisdiction would have to obtain, and the preamble explained how a consultant used the data in his study. See, (49 TexReg 2440, 2443) (April 19, 2024).

CASTLE suggests that the comptroller could develop a sample of local governments. The comptroller responds that Government Code, §2001.024 does not require sampling. Furthermore, an aggregate estimate based on sample of individual jurisdictions would do little to tell individual jurisdictions how they would be affected.

Mr. Sheets suggested that the comptroller could have undertaken alternatives, such as making estimates for the top twenty most populated jurisdictions or making estimates for the cities involved in the lawsuit. The comptroller responds that Government Code, §2001.024 does not require selective, individual estimates.

The Administrative Procedure Act only requires a fiscal note showing "the estimated loss or increase in revenue to the state or to local governments as a result of enforcing or administering the rule." Government Code, §2001.024(a)(4)(C). The comptroller has done that. In addition, the rulemaking process has disclosed the types of cities and taxpayers that may be most affected - cities receiving substantial tax revenues from fulfillment centers, such as the CASTLE group, and cities receiving substantial tax revenues from taxpayers sourcing all their sales to a single location, such as the City of Round Rock.

*Reasons Why the Comptroller Disagrees With Commenters' Submissions and Proposals - Local employment impact statement.*

CASTLE commented that the comptroller "fails to provide a non-conclusory explanation of why the impact cannot be determined." The comptroller disagrees. The explanation is stated in the preamble of the proposed rule.

*Reasons Why the Comptroller Disagrees With Commenters' Submissions and Proposals - Government growth impact statement.*

CASTLE comments that the preamble to the proposed rule "fails to discuss in any meaningful way" the government growth statement required by Government Code, §2001.0221. Comptroller Rule 11.1(d) states that an agency shall "reasonably describe" the effect on government growth. 34 TAC §11.1(d). Historically, the reasonable descriptions published by the comptroller, as well as other agencies, consist of statements of no effect without explanation, and statements of effect with brief explanations. The comptroller followed the historical approach in this rulemaking.

CASTLE comments that the rule will create or eliminate a government program if a local government loses significant local sales tax revenue. The comptroller responds that the rule itself does not create or eliminate a government program. The creation or elimination of local government programs is at the discretion of local governments.

CASTLE also comments that "the Comptroller has already admitted that there will be a decrease in the fees he receives." The comptroller acknowledges that to the extent that transactions previously sourced within an incorporated municipality would be sourced to an unincorporated area without a cumulative local tax rate levied by municipal (pursuant to a limited purpose annexation agreement), county, and/or special purpose taxing authorities commensurate with the cumulative local tax rate levied by the municipal, county, and/or special purpose taxing authorities

applicable where the transactions were formerly sourced, there would be a reduction in aggregate local sales tax levies and consequent reduction in state service charge revenues under Tax Code, §§321.503, 322.303, and 323.503.

*Statement of the statutory or other authority under which the rule is adopted.*

Tax Code, §§111.002 (Comptroller's Rule; Compliance; Forfeiture), 321.306 (Comptroller's Rules), 322.203 (Comptroller's Rules), and 323.306 (Comptroller's Rules) authorize the comptroller to adopt rules to implement the tax statutes.

*Sections or articles of the code affected.*

Tax Code, §151.0595 (Single Local Tax Rate for Remote Sellers); Tax Code, Chapter 321, Subchapters A, B, C, D, and F; Tax Code, Chapter 322; and Tax Code, Chapter 323 are affected.

The agency certifies that legal counsel has reviewed the adoption and found it to be a valid exercise of the agency's legal authority.

Filed with the Office of the Secretary of State on June 14, 2024.

TRD-202402641
Jenny Burleson
Director, Tax Policy Division
Comptroller of Public Accounts
Effective date: July 4, 2024
Proposal publication date: April 19, 2024
For further information, please call: (512) 475-2220



# CHAPTER 5. FUNDS MANAGEMENT (FISCAL AFFAIRS)
# SUBCHAPTER D. CLAIMS PROCESSING-- PAYROLL

## 34 TAC §5.46

The Comptroller of Public Accounts adopts amendments to §5.46 concerning deductions for paying membership fees to certain state employee organizations, without changes to the proposed text as published in the May 3, 2024, issue of the *Texas Register* (49 TexReg 2985). The rule will not be republished.

The amendments add a definition of CAPPS in new subsection (a)(1) and renumber the subsequent provisions accordingly.

The amendments to subsections (b)(1)(C) and (b)(2)(B) add a second method of establishing, changing or cancelling a payroll deduction for state employee organization membership fees. These provisions currently allow a state employee to establish, change or cancel a payroll deduction by submitting a written authorization form to the employer's human resource officer or payroll officer. The amendments to these provisions also allow a state employee to establish, change or cancel a payroll deduction by submitting an electronic authorization through CAPPS.

The amendments to subsection (b)(2)(D) make a conforming change to require state agencies to notify the affected eligible organization if a state employee submits an electronic authorization form through CAPPS cancelling a payroll deduction for state employee organization membership fees.

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kyle Counce on behalf of Kyle Counce
Bar No. 24082862
kyle.counce@oag.texas.gov
Envelope ID: 106158073
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Hancock  Cross Appellant Amended Brief
Status as of 9/29/2025 7:22 AM CST

Associated Case Party: City of Coppell, Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Richard Phillips | 24032833 | Rich.Phillips@hklaw.com | 9/26/2025 7:45:27 PM | SENT |
| Reed Randel | 24075780 | Reed.Randel@hklaw.com | 9/26/2025 7:45:27 PM | SENT |
| Stephen Fink | 7013500 | Stephen.Fink@hklaw.com | 9/26/2025 7:45:27 PM | SENT |
| James Harris | 9065400 | jim.harris@hklaw.com | 9/26/2025 7:45:27 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Bryan Dotson | 24072769 | bryan.dotson@chamberlainlaw.com | 9/26/2025 7:45:27 PM | SENT |
| Cynthia Bourland | 790343 | bourland@bourlandlaw.com | 9/26/2025 7:45:27 PM | SENT |
| Brandon L.King | | brandon.king@hklaw.com | 9/26/2025 7:45:27 PM | SENT |

Associated Case Party: Glenn Hegar, in his official capacity as Texas Comptroller of Public Accounts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Kyle Counce | 24082862 | Kyle.Counce@oag.texas.gov | 9/26/2025 7:45:27 PM | SENT |